McNUTT LAW GROUP LLP
SCOTT H. McNUTT (CSBN 104696)
SHANE J. MOSES (CSBN 250533)
MARIANNE M. DICKSON (CSBN 249737)
188 The Embarcadero, Suite 800
San Francisco, California 94105
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

MICHAEL ST. JAMES (CSBN) 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Ste. 1004
San Francisco CA 94104
Telephone: (415) 391-7566
Facsimile: (415) 391-7568

Proposed Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>Round Table Pizza Inc.,<br><br>    Debtor. | Case Nos.   11-41431 RLE<br>                11-41432 RLE<br>                11-41433 RLE<br>                11-41434 RLE<br><br>Chapter 11 |
| In re<br><br>Round Table Development Co.,<br><br>    Debtor. | **MOTION FOR APPROVAL TO ASSUME EXECUTORY INSURANCE AND PREMIUM FINANCING AGREEMENTS**<br><br>Judge:   Hon. Roger Efremsky<br>Date:    February 11, 2011<br>Time:   10:30 a.m. |
| In re<br><br>The Round Table Franchise Corp.,<br><br>    Debtor. | Place:  United States Bankruptcy Court<br>         1300 Clay Street<br>         Oakland, California |
| In re<br><br>Round Table Pizza Nevada LLC,<br><br>    Debtor. | |

## I. INTRODUCTION

Round Table Pizza, Inc., the parent corporation, and two subsidiaries, The Round Table Franchise Corporation, which operates the franchise business, and Round Table Development Company, which operates the company-owned stores; and Round Table Pizza Nevada LLC, which is wholly owned by Round Table Development Company, the joint debtors and debtors in possession in the above captioned Chapter 11 reorganization cases (collectively "Round Table" or the "Debtor"), hereby jointly move the Court for an order authorizing the assumption of insurance premium and financing agreements (the "Insurance Financing Motion").

This Insurance Financing Motion is based on the Memorandum of Points and Authorities set forth herein, the NOTICE OF HEARING ON FIRST DAY MOTIONS (the "Omnibus Notice"), the DECLARATION OF J. ROBERT MCCOURT IN SUPPORT OF FIRST DAY MOTIONS (the "Omnibus Declaration") filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Insurance Financing Motion. By a separate application, Debtors have requested an order shortening time for notice and setting a hearing on this matter and other "first day" motions on an expedited basis.

## II. JURISDICTION

On February 9, 2011 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California.

The Court has jurisdiction over this case and this Insurance Financing Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409(a).

The statutory basis for the relief requested herein is § 365(a) of the Bankruptcy Code.

## III. FACTS

**A.  Background**

Round Table's first restaurant opened in Menlo Park, California in 1959. Over the past 50 years, Round Table has grown to dominate the Northern California market for pizza, to become a

major West Coast chain, with nearly 500 stores in seven States, and to engage in international franchise development.

During the same period, Round Table diversified from acting exclusively as a franchisor to also operating company owned stores, ultimately acquiring and developing 140 company-owned stores and swelling its employee base from 70 to a peak of over 3,000 employees.

During the decade prior to the Great Recession, Round Table enjoyed tremendous growth. Between 1997 and 2006, revenues grew from $15 million to $120 million per year, and operating profits grew from $4.3 million to $10.5 million. In February of 2007, Round Table obtained a new credit facility. Although Round Table restructured its business to adjust to the Great Recession, the terms of the credit facility could not be met by that restructured business. Efforts to renegotiate the terms of the credit facility were unsuccessful.

A fuller presentation of Round Table's background, the circumstances which led to the instant Chapter 11 filing, and Round Table's expectations regarding its reorganization is set forth in the Omnibus Declaration.

In connection with Round Table's Employee Stock Option Plan (the "ESOP"), an independent appraiser valued Round Table at $45 million approximately one year ago. Round Table engaged in marketing efforts immediately prior to the Petition Date, which confirmed a value in that range. General Electric Capital Corporation ("GECC") / Prudential Insurance of America ("Prudential") are owed $30 million in the aggregate, suggesting that Round Table should generate a significant recovery to creditors, and potentially a recovery to the ESOP which holds its equity as well.

**B.      Intended Reorganization**

There are two core aspects to Round Table's business: acting as a franchisor to independent third party owner-operators, and operating company-owned stores.

There are currently 355 franchised stores, with 148 franchisees. The franchise base is highly diversified: 91% of the franchisees own five stores or less, and only two franchisees own

20 to 25 stores. Management believes that the franchise segment of Round Table's business is sound, produces stable profits and does not require material reorganization.

Round Table operates 128 company-owned stores. Although most of them are profitable, a number of the stores have been unable to operate profitably in the current economic environment, generating significant losses. Over the first 4 to 6 months of its Chapter 11 case, Round Table intends to close unprofitable stores and to renegotiate leases with respect to its marginal stores. Within 4 to 6 months, Round Table expects that its remaining base of company-owned stores will be stable and profitable.

Round Table expects to have maximized the value of the chain, through store closings and lease renegotiations, by the conclusion of the initial phase of its reorganization, after which it intends to complete its reorganization by embarking on one of two paths.

If it appears that an appropriate value can be realized for the benefit of all of its constituencies through a sale, Round Table is amenable to engaging in that process.

On the other hand, if problems in the economy and the credit industry make it impossible to realize an appropriate value for the company this year, Round Table will propose a Plan of Reorganization which restructures its debt so that it can operate successfully for a period of perhaps five years, by the conclusion of which it would expect to sell the business or refinance the debt.

**C.    The Insurance Policies**

Round Table maintains almost a dozen insurance policies in the operation of their business, including worker's compensation, commercial general liability, property insurance, and directors and officers coverage. The aggregate annual cost for the insurance premiums is approximately $2.3 million, which is financed through the following four entities: (a) Flatiron Capital, (b) Fireman's Fund Insurance, (c) Edgewood Partners Insurance Center, and (d) Imperial Credit Corporation. A list of the insurance policies and their respective financing entity is attached hereto as **Exhibit A**.

Because of the nature of Round Table's business operations and the value of its assets, it cannot afford to be without the coverage provided by these policies. In addition, cancellation of

the various insurance coverage would be a default under the Credit Agreement (the "Credit Agreement") with Debtors' secured lenders GECC and Prudential. Moreover, if Round Table's worker's compensation coverage lapses, Round Table would be in violation of state law.

## IV. RELIEF REQUESTED

Round Table requests that this Court approve the assumption of the insurance and premium financing agreements described above, conditioned upon the curing of all defaults thereunder, if any, as provided under Bankruptcy Code § 365.

## V. BASIS FOR RELIEF REQUESTED

Section 365 of the Bankruptcy Code provides, in pertinent part, as follows:

(a) except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the [debtor-in-possession], subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) if there has been a default in an executory contract or unexpired lease of the debtor, the [debtor-in-possession] may not assume such contract or lease unless, at the time of assumption of such contract or lease, the [debtor-in-possession] –

(A) cures, or provides adequate assurance that the [debtor-in-possession] will promptly cure, such default . . . .;

(B) compensates, or provides adequate assurance that the [debtor-in-possession] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

The standard applied for approval of assumption of an executory contract is the "business judgment" standard, which requires the debtor to provide a sufficient showing that the performance of the contract would be advantageous to the estate and that the estate will be able to perform the contract. If both questions are resolved in the affirmative, the debtor is normally allowed to assume the contract, regardless of opposition to the assumption by the other party to the

contract.  In re Del Grosso, 115 B.R. 138 (B. N. D. Ill. 1990); In re Chi-Feng Huang, 23 B.R. 798 (9th Cir. 1982).

Round Table must have insurance to properly maintain their business operations and comply with its obligations under the Credit Agreement.  For example, under California law, all employers must maintain worker's compensation coverage.  Round Table's commercial general liability policy provides coverage for any accidents or "slip and falls" that may occur at any restaurants operated by Round Table.  Maintaining existing insurance coverage is vital to reducing the estates' exposure to unnecessary additional losses.

## VI. **CONCLUSION**

WHEREFORE, Round Table requests that the Court enter its order approving the assumption of the insurance and premium financing agreements described above, conditioned upon the curing of all defaults thereunder, if any; and any other relief as it deems just and appropriate.

DATED: February 9, 2011                         Respectfully submitted,

                                              McNUTT LAW GROUP LLP

By:      /s/ *Scott H. McNutt*
        Scott H. McNutt
        Proposed Attorneys for Debtors