1 | MCNUTT LAW GROUP LLP
SCOTT H. MCNUTT (CSBN 104696)
2 | SHANE J. MOSES (CSBN 250533)
MARIANNE M. DICKSON (CSBN 249737)
3 | 188 The Embarcadero, Suite 800
San Francisco, California 94105
4 | Telephone: (415) 995-8475
Facsimile: (415) 995-8487

MICHAEL ST. JAMES (CSBN) 95653
6 | ST. JAMES LAW, P.C.
155 Montgomery Street, Ste. 1004
7 | San Francisco CA 94104
Telephone: (415) 391-7566
8 | Facsimile: (415) 391-7568

Proposed Attorneys for Debtors

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>Round Table Pizza Inc.,<br><br>Debtor. | Case Nos. 11-41431 RLE<br>11-41432 RLE<br>11-41433 RLE<br>11-41434 RLE<br><br>Chapter 11 |
| In re<br><br>Round Table Development Co.,<br><br>Debtor. | **MOTION FOR ORDER AUTHORIZING DEBTORS TO HONOR PRE-PETITION GIFT CERTIFICATES AND PROMOTIONS** |
| In re<br><br>The Round Table Franchise Corp.,<br><br>Debtor. | Judge: Hon. Roger Efremsky<br>Date: February 11, 2011<br>Time: 10:30 a.m.<br>Place: United States Bankruptcy Court<br>1300 Clay Street<br>Oakland, California |
| In re<br><br>Round Table Pizza Nevada LLC,<br><br>Debtor. | |

# I. INTRODUCTION

Round Table Pizza Inc., the parent corporation, and two subsidiaries, The Round Table Franchise Corporation, which operates the franchise business, and Round Table Development Company, which operates the company-owned stores; and Round Table Pizza Nevada LLC, which is wholly owned by Round Table Development Company, the joint debtors and debtors-in-possession in the above captioned Chapter 11 reorganization cases (collectively "Round Table" or the "Debtor"), hereby jointly move the Court for an order authorizing Round Table to continue to accept and honor pre-petition customer gift certificates and promotions (the "Customer Practices Motion").

This Customer Practices Motion is based on the Memorandum of Points and Authorities set forth herein, the NOTICE OF HEARING ON FIRST DAY MOTIONS (the "Omnibus Notice"), the DECLARATION OF J. ROBERT MCCOURT IN SUPPORT OF FIRST DAY MOTIONS (the "Omnibus Declaration") filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Customer Practices Motion. By a separate application, Debtor has requested an order shortening time for notice and setting a hearing on this matter and other "first day" motions on an expedited basis.

# II. JURISDICTION

On February 9, 2011 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United Stated Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California.

The Court has jurisdiction over this case and this Motion Pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409(a).

The statutory bases for the relief requested herein are sections 105, and 959(b) of the Bankruptcy Code and section 1749.6 of the California Civil Code.

## III. FACTS

**A.   Background**

Round Table's first restaurant opened in Menlo Park, California in 1959. Over the past 50 years, Round Table has grown to dominate the Northern California market for pizza, to become a major West Coast chain, with nearly 500 stores in seven States, and to engage in international franchise development.

During the same period, Round Table diversified from acting exclusively as a franchisor to also operating company-owned stores, ultimately acquiring and developing 140 company-owned stores and swelling its employee base from 70 to a peak of over 3,000 employees.

During the decade prior to the Great Recession, Round Table enjoyed tremendous growth. Between 1997 and 2006, revenues grew from $15 million to $120 million per year, and operating profits grew from $4.3 million to $10.5 million. In February of 2007, Round Table obtained a new credit facility. Although Round Table restructured its business to adjust to the Great Recession, the terms of the credit facility could not be met by that restructured business. Efforts to renegotiate the terms of the credit facility were unsuccessful.

A fuller presentation of Round Table's background, the circumstances which led to the instant Chapter 11 filing, and Round Table's expectations regarding its reorganization is set forth in the Omnibus Declaration.

In connection with Round Table's Employee Stock Option Plan (the "ESOP"), an independent appraiser valued Round Table at $45 million approximately one year ago. Round Table engaged in marketing efforts immediately prior to the Petition Date, which confirmed a value in that range. General Electric Capital Corporation ("GECC") / Prudential Insurance of America ("Prudential") are owed $30 million in the aggregate, suggesting that Round Table should generate a significant recovery to creditors, and potentially a recovery to the ESOP which holds its equity as well.

**B. Intended Reorganization**

There are two core aspects to Round Table's business: acting as a franchisor to independent third party owner-operators, and operating company-owned stores.

There are currently 355 franchised stores, with 148 franchisees. The franchise base is highly diversified: 91% of the franchisees own five stores or less, and only two franchisees own 20 to 25 stores. Management believes that the franchise segment of Round Table's business is sound, produces stable profits and does not require material reorganization.

Round Table operates 128 company-owned stores. Although most of them are profitable, a number of the stores have been unable to operate profitably in the current economic environment, generating significant losses. Over the first four to six months of its Chapter 11 case, Round Table intends to close unprofitable stores and to renegotiate leases with respect to its marginal stores. Within four to six months, Round Table expects that its remaining base of company-owned stores will be stable and profitable.

Round Table expects to have maximized the value of the chain, through store closings and lease renegotiations, by the conclusion of the initial phase of its reorganization, after which it intends to complete its reorganization by embarking on one of two paths.

If it appears that an appropriate value can be realized for the benefit of all of its constituencies through a sale, Round Table is amenable to engaging in that process.

On the other hand, if problems in the economy and the credit industry make it impossible to realize an appropriate value for the company this year, Round Table will propose a Plan of Reorganization which restructures its debt so that it can operate successfully for a period of perhaps five years, by the conclusion of which it would expect to sell the business or refinance the debt.

For either reorganization to succeed, the loyalty and support of Round Table's customers will be essential.

**C. Customer Promotions and Gift Cards**

Round Table, like most retail food chains, routinely publishes various coupons and promotional offers as part of its marketing efforts. Round Table also has a gift certificate program

whereby customers can purchase gift certificates that can be redeemed at any Round Table location.

Promotional offers are an important component of Round Table's marketing. Further, Round Table believes that not honoring its pre-petition promotions and coupons could significantly damage customer goodwill. Customers who have purchased or received gift certificates quite simply expect to be able to redeem them at any time at any Round Table. Maintaining the goodwill of these customers is necessary for a successful reorganization.

## IV. **RELIEF REQUESTED**

By this Motion, Round Table requests that the Court authorize it to continue to honor, in the ordinary course of business, all promotional offers, coupons, and gift certificates issued pre-petition.

## V. **AUTHORITY FOR RELIEF**

It is important that Round Table continue to honor all gift certificates and promotions. As with any retail business, especially in an extremely competitive sector, customer goodwill and loyalty are critical to Round Table. A successful reorganization requires that Round Table maintain customer goodwill. Continuing to honor gift certificates and other promotions will help maintain Round Table's goodwill with its customers. On the other hand, it would be extremely detrimental to that goodwill to dishonor either promotional offers or gift cards.

Under applicable non-bankruptcy law, the funds represented by gift certificates are not property of the estate. Section 1749.6 of the California Civil Code provides that:

> (a) A gift certificate constitutes value held in trust by the issuer of the gift certificate on behalf of the beneficiary of the gift certificate. The value represented by the gift certificate belongs to the beneficiary, or to the legal representative of the beneficiary to the extent provided by law, and not to the issuer.
>
> (b) An issuer of a gift certificate who is in bankruptcy shall continue to honor a gift certificate issued prior to the date of the bankruptcy filing on the grounds that the value of the gift certificate constitutes trust property of the beneficiary.

Cal. Civ. Code § 1749.6.

Thus, under California law the value represented by a gift certificate is not property of the

1 estate, but rather is held in trust for the certificate holder as beneficiary.  See id.  The Bankruptcy
2 Code is clear that property which the debtor holds only legal title to, but not an equitable interest
3 in, is not property of the estate.  11 U.S.C. § 541(d).  Further, the Code requires that the debtor
4 comply with all applicable non-bankruptcy law.  See 11 U.S.C. § 959(b).  Although there is no
5 case law directly on point, this should include the directive of Civil Code section 1749.6 to
6 continue to honor gift certificates.

In addition, even if gift certificates were not considered value held in trust pursuant to Civil Code section 1749.6, they would be entitled to priority under section 507(a)(7), as deposits for personal, family, or household use.  See In re WW Warehouse, Inc., 313 B.R. 588 (Bankr. D. Del. 2004); see also Salazar v. McDonald (In re Salazar), 430 F.3d 992, 996 (9th Cir. 2005) (citing In re WW Warehouse favorably).  Consequently, honoring a gift certificate at most would be an alteration in timing, rather than amount, of payment.  Such an alteration of timing is of minimal significance to other creditors in comparison with the need to maintain customer goodwill.

In addition to the above, relief is justified under section 105 on the basis that any small benefit gained by delaying honoring gift certificates is far outweighed by the value to the estate of maintaining customer goodwill.  Gift certificate holders will ultimately have to be paid, pursuant to section 507(a)(7) or Civil Code section 1749.6.  Authorization to honor pre-petition promotional offers and coupons is similarly justified under section 105.  It is unlikely that any benefit would be gained by not honoring them, as the business they were intended to generate would most likely simply be lost.  On the other hand, the loss of goodwill resulting from temporarily dishonoring gift certificates and promotions would be detrimental to the going concern value of the business.

As discussed above, Round Table should be authorized to continue its customer practices pursuant to sections 105, 507(a)(7), and 959(b) of the Bankruptcy Code and section 1749.6 of the California Civil Code.

/ / /

/ / /

/ / /

## VI. CONCLUSION

**WHEREFORE,** Round Table respectfully requests that Court enter an Order:

1. Authorizing Round Table to continue to honor, in the ordinary course of business, all promotional offers and coupons issued pre-petition.

2. Authorizing Round Table to continue to honor gift certificates issued pre-petition.

3. For such other relief as the Court finds just and proper.

DATED: February 9, 2011　　　　　　McNUTT LAW GROUP LLP

By: _____/s/ *Scott H. McNutt*_____
　　　Scott H. McNutt
　　　Proposed Attorneys for Debtors