1 MCNUTT LAW GROUP LLP
SCOTT H. MCNUTT (CSBN 104696)
2 SHANE J. MOSES (CSBN 250533)
MARIANNE M. DICKSON (CSBN 249737)
3 188 The Embarcadero, Suite 800
San Francisco, California 94105
4 Telephone: (415) 995-8475
Facsimile: (415) 995-8487
5
MICHAEL ST. JAMES (CSBN) 95653
6 ST. JAMES LAW, P.C.
155 Montgomery Street, Ste. 1004
7 San Francisco CA 94104
Telephone: (415) 391-7566
8 Facsimile: (415) 391-7568

9
Proposed Attorneys for Debtor
10

11 UNITED STATES BANKRUPTCY COURT

12 NORTHERN DISTRICT OF CALIFORNIA

13 OAKLAND DIVISION

| | |
|---|---|
| 14 In re | Case Nos. 11-41431 RLE |
| 15 Round Table Pizza Inc., | (Jointly Administered with Case Nos. 11-41432 RLE, 11-41433 RLE, and |
| 16 Debtor. | 11-41434 RLE) |
| 17 | Chapter 11 |
| 18 | |
| 19 | **MOTION FOR ORDERS RESPECTING REAL PROPERTY LEASES** |
| 20 | Judge: Hon. Roger Efremsky |
| 21 | Date: March 11, 2011 Time: 10:30 a.m. |
| 22 | Place: United States Bankruptcy Court 1300 Clay Street, 2nd Floor |
| 23 | Oakland, California |
| 24 | **Respondents: Landlords** **Listed On Following Page** |

TO: THE HON. ROGER EFREMSKY; OFFICE OF THE UNITED STATES TRUSTEE; GENERAL ELECTRIC CAPITAL CORPORATION/PRUDENTIAL INSURANCE COMPANY OF AMERICA; THE 20 LARGEST CREDITORS; OTHER PARTIES IN INTEREST AND THE FOLLOWING RESPONDENTS:

1207 - 1211 BURLINGAME AVE. LLC
AIG BAKER CARSON CITY, LLC
AIG BAKER CARSON CITY, LLC C/O NEVADA STATE BANK
APPLE VALLEY COMMONS I, LLC
APPLE VALLEY COMMONS I, LLC C/O LEWIS OPERATING CORP.
BANK OF AMERICA NEVADA C/O ASSIGNOR: CAMELOT FOOD, LTD.
BANK OF AMERICA NEVADA C/O REAL ESTATE INDUSTRIES DIVISION
BAUGH CORP.
BAUGH CORP. C/O TEXAN COMMERCIAL CAPITAL, LLC
BDC FIVE MILE PLAZA, L.P.
BERNIE, LLC
BERNIE, LLC C/O PIONEER PROPERTIES
BROOKHAVEN LLC
BURNS FAMILY LLC II C/O CAMBRIDGE GROUP LTD.
BURNS FAMILY LLC II C/O CAMELOT FOODS, LTD.
C&K MARKET, INC.
CENTER WEST MANAGEMENT, INC.
CHIU FAMILY TRUST
CHIU FAMILY TRUST C/O ASSIGNOR: ANTIOCH ENTERPRISES, INC.
COX FAMILY PARTNERSHIP C/O COUNTRY WEST SHOPPING CENTER
COX FAMILY PARTNERSHIP C/O SAITO COMPANY
CP6OC, LLC C/O COLUMN FINANCIAL, INC.
CP6OC, LLC C/O CREDIT SUISSE
CP6OC, LLC C/O KEYCORP REAL ESTATE CAPITAL MARKETS, INC.
CP6OC, LLC C/O ORIX REAL ESTATE CAPITAL MARKETS, LLC
CP6OC, LLC C/O WEST VALLEY PROPERTIES
CREDIT MARKETS REAL ESTATE CORPORATION
CREDIT MARKETS REAL ESTATE CORPORATION C/O ASSIGNOR: CAMELOT FOODS, LTD.
DAHA INVESTMENTS
DAHA INVESTMENTS C/O WELLS FARGO BANK
DARLENE G. IERULLI & GIL DASILVA
DARLENE G. IERULLI & GIL DASILVA C/O ASSIGNORE: CASTLE MANAGEMENT GROUP
DAYTON DELTA, LLC C/O THE HONE COMPANY
DBO DEVELOPMENT NO. 29
DE ANZA COUNTRY SHOPPING CENTER
DELBERT AND ALICE VALLA TRUST
DELBERT H. VALLA AND ALICE VALLA 1987 TRUST C/O ASSIGNOR: ROAN INC. GODFATHER'S PIZZA, INC.
DONAHUE SCHRIBER REALTY GROUP, L.P.

| | |
|---|---|
| 1 | DONAHUE SCHRIBER REALTY GROUP, L.P. C/O ASSIGNOR: CASTLE MANAGEMENT, INC. |
| 2 | FAIRFIELD OPPORTUNITY GROUP #1, L.P. C/O REYNOLDS & BROWN |
| 3 | FIREHOUSE PLAZA PARTNERS |
| 4 | FIREHOUSE PLAZA PARTNERS C/O ASSIGNOR: PIE PEDDLERS INC. |
| 5 | FIREHOUSE PLAZA PARTNERS C/O PRISKE-JONES CO. |
| 6 | FIRST RIVERBANK LP C/O BROWMAN DEVELOPMENT CO. |
| 7 | FOOTHILL OAKS SHOPPING CENTER, INC. C/O AIM PROPERTY MANAGEMENT |
| 8 | FOOTHILL OAKS SHOPPING CENTER, INC. C/O ASSIGNOR: FOUR D. ENTERPRISES INC. |
| 9 | FOOTHILL OAKS SHOPPING CENTER, INC. C/O CITIGROUP GLOBAL MARKET REALTY |
| 10 | FRANK MISSION MARKETPLACE, LLC C/O ASSIGNORE: TOYON, INC. |
| 11 | FRANK MISSION MARKETPLACE, LLC C/O NEWMARK MERRILL COMPANIES, LLC |
| 12 | FREEPORT FARMS DEVELOPMENT CO., LLC |
| 13 | GABRIELSON AND CO. |
| 14 | GAGLIARDI FAMILY TRUST & GAGLIARDI BROTHERS |
| 15 | GENERAL ELECTRIC CREDIT EQUITIES, INC. |
| 16 | GEWEKE VIII, L.P. |
| 17 | GMS FIVE, LLC |
| 18 | GREEN VALLEY CORPORATION |
| 19 | GREENWICH CAPITAL FINANCIAL PRODUCTS, INC. C/O GREENWICH CAPITAL FINANCIAL PRODUCTS, INC. |
| 20 | HALL STREET CROSSING, LLC C/O NORIS & STEVENS, INC. |
| 21 | HARRIS-WINKLE BUILDING, LTD. C/O TOWN & COUNTRY PROPERTIES |
| 22 | HERITAGE SQUARE PROPERTIES, LLC |
| 23 | HERITAGE SQUARE PROPERTIES, LLC C/O CITIGROUP |
| 24 | J & D WOODWARD VILLAGE, LLC C/O SIEGEL & CO. |
| 25 | J & P PROPERTIES |
| 26 | J. BENJAMIN MCGREW, CPM, CCIM C/O M&A THANG |
| 27 | J. BENJAMIN MCGREW, CPM, CCIM C/O MANAGEWEST, INC. |
| 28 | J. BENJAMIN MCGREW, CPM, CCIM C/O WELLS FARGO BANK, N.A. |
| | JB MANAGEMENT, LP |
| | JB MANAGEMENT, LP C/O ASSIGNOR: CASTLE MANAGEMENT, INC. |
| | JB MANAGEMENT, LP C/O DB PRICATE WEALTH MORTGAGE LTD. |
| | JOHN C. MAJOR FAMILY 2000 TRUST |
| | JOHN C. MAJOR FAMILY 2000 TRUST C/O BANK OF HEMET COMMERCIAL LENDING |
| | K&G SEABRIDGE I, LLC C/O FIRST BANK |
| | K&G SEABRIDGE I, LLC C/O KAHL AND GOVEIA COMMERCIAL REAL ESTATE, INC. |
| | K&G SEABRIDGE I, LLC C/O LASALLE BANK NATIONAL ASSOC. |
| | K&G SEABRIDGE I, LLC C/O VOSS, COOK & THEL LLP |
| | KERMAN SHOPPING PLAZA LLC |

| | |
|---|---|
| 1 | KIMCO REALTY CORPORATION |
| 2 | KIMCO REALTY CORPORATION |
| 3 | LAKHA PROPERTIES - SACRAMENTO, LLC C/O PREMIER CENTERS MGMT. |
| 4 | LAKHA PROPERTIES - TEMECULA TC, LLC |
| 5 | LAKHA PROPERTIES - TEMECULA TC, LLC C/O ASSIGNOR: JAQUELINE LOVELL |
| 6 | LAKHA PROPERTIES - TEMECULA TC, LLC C/O PREMIER CENTERS MGMT., INC. |
| 7 | LAKHA PROPERTIES - TEMECULA TC, LLC C/O US BANK NA |
| 8 | LANDVALUE 77, LLC |
| 9 | LEVINE INVESTMENTS LIMITED PARTNERSHIP |
| 10 | LEVON INVESTMENTS, LLC C/O INVESTEC REAL ESTATE COMPANIES |
| 11 | LINK PIAZZO/SPORTSMAN CORNER |
| 12 | LORAN AND PATRICIA WRIGHT |
| 13 | LORAN AND PATRICIA WRIGHT C/O ASSIGNOR: CASTLE MANAGEMENT GROUP |
| 14 | LOUIE AND DOLORES JIMENEZ |
| 15 | MANTECA STADIUM LP C/O KITCHELL DEVELOPMENT CO. |
| 16 | MANUEL CATANIA |
| 17 | MANUEL CATANIA C/O ASSIGNOR: R. SLICE/RON KARP |
| 18 | MARGARET TAM |
| 19 | MARK G. MITCHELL ET AL. |
| 20 | MARY'S VINEYARD |
| 21 | MCHENRY SQUARE INVESTORS, LLC C/O BRENTWOOD DEVELOPMENTS |
| 22 | MCHENRY SQUARE INVESTORS, LLC C/O MERLIN PIZZA ENTERPRISES |
| 23 | MCJ INVESTMENTS |
| 24 | MENLO MANAGEMENT COMPANY |
| 25 | MERCEY SPRINGS 152 PARTNERS, LLC |
| 26 | MIRA LOMA INVESTORS LLC C/O PACIFIC CAPITAL MANAGEMENT, INC. |
| 27 | ML-SOUTHGATE LLC C/O BRAD MANAGEMENT |
| 28 | ML-SOUTHGATE LLC C/O IXIS REAL ESTATE CAPITAL CORP. |
| | MONTAIR ASSOCIATES, LLC C/O ASSIGNOR: BIBET ENTERPRISES, INC. |
| | MONTAIR ASSOCIATES, LLC C/O CASTLE MANAGEMENT GROUP |
| | MP ELKO, LLC C/O MERIDIAN PACIFIC, LTD. |
| | MUIR STATION CENTER C/O GALLAGHER & MIERSCH |
| | N & A VENTURES, INC. |
| | N & A VENTURES, INC. C/O BANK OF THE WEST |
| | NF MERCED-LH, LLC / NF MERCED-CONN., LLC |
| | NOMOTO INVESTMENTS, LLC C/O THE HERITAGE SHOPPING CENTER |
| | OAK PARK PROPERTIES |
| | OAK PARK PROPERTIES C/O CASTLE MANAGEMENT INC. |
| | OKADA BROS., INC. |
| | OLIVE TREE REALTY, LLC |
| | OPTIMUS PROPERTY MANAGEMENT, LLC |
| | OPTIMUS PROPERTY MANAGEMENT, LLC C/O WELLS FARGO BANK, N.A. |
| | PAN PACIFIC (SUNSET MALL), LLC |

| | |
|---|---|
| 1 | PAN PACIFIC (SUNSET MALL), LLC |
| 2 | PAN PACIFIC (SUNSET MALL), LLC C/O KIMCO REALTY CORP. |
| | PAN PACIFIC RETAIL PROPERTIES, INC. |
| 3 | PCF PROPERTIES, LLC |
| | PHILLIPS EDISON AND CO., LTD. |
| 4 | PK 1 SUNSET ESPLANADE, LLC |
| 5 | PK 1 SUNSET ESPLANADE, LLC C/O KIMCO REALTY CORP. |
| | PK II CENTURY CENTER, LP |
| 6 | PK II CENTURY CENTER, LP C/O KIMCO REALTY CORP. |
| | PK II CENTURY CENTER, LP C/O TICON PIZZA ENTERPRISES |
| 7 | PK II TANASBOURNE VILLAGE, L.P. |
| 8 | PK II TANASBOURNE VILLAGE, L.P. C/O ASSIGNORE: CASTLE MANAGEMENT, INC. |
| 9 | PK II TANASBOURNE VILLAGE, L.P. C/O KIMCO REALTY CORPORATION |
| 10 | PK II TANASBOURNE VILLAGE, L.P. C/O NEW YORK LIFE INVESTMENT MGMT. |
| | PK SALE LLC |
| 11 | PK SALE LLC C/O KIMCO REALTY CORP. |
| 12 | POWAY TOWN & COUNTRY |
| | POWAY TOWN & COUNTRY C/O WALL STREET DEV. - LA JOLLA INC. |
| 13 | RANCHO BERNARDO PLAZA, LLC C/O CAPITAL GROWTH PROPERTIES, INC. |
| 14 | RANCHO BERNARDO PLAZA, LLC C/O PEDROTTI ENTERPRISES, INC. |
| | RANCHO PENASQUITOS TOWNE CENTER I LLC |
| 15 | RANCHO PENASQUITOS TOWNE CENTER I LLC C/O KIMCO REALTY CORP. |
| | RAPSON & COLVIN, LLP |
| 16 | REGENCY CAHAN-CLOVIS, LLC |
| 17 | REGENCY CAHAN-CLOVIS, LLC C/O REGENCY CENTERS CORP. |
| | REGENCY CENTERS, L.P. |
| 18 | REGENCY CENTERS, L.P., C/O REGENCY CENTERS CORP. |
| | RIDGEVIEW TOWN CENTER, LLC C/O J.L. MANAGEMENT CO. |
| 19 | RITE AID CORPORATION |
| 20 | RITE AID CORPORATION C/O RT OF SAN RAMON |
| | ROIC NORWOOD CENTER, LLC C/O RETAIL OPPORTUNITY INVESTMENTS CORP. |
| 21 | ROIC OREGON, LLC |
| 22 | ROTER INVESTMENTS OF NEVADA |
| 23 | ROTER INVESTMENTS OF NEVADA C/O CITY MANAGEMENT CORPORATION |
| | ROTER INVESTMENTS OF NEVADA C/O WELLS FARGO |
| 24 | RUBIO HOLDINGS, LLC C/O JADE ENTERPRISES |
| | S.W.S. ASSOCIATES, LLC |
| 25 | S.W.S. ASSOCIATES, LLC |
| 26 | S.W.S. ASSOCIATES, LLC C/O ASSIGNOR: CASTLE MANAGEMENT |
| | SAND CREEK CROSSING, LLC |
| 27 | SAND CREEK CROSSING, LLC C/O COLLIERS INTL. ASSET MANAGEMENT |
| | SAVE MART MANAGEMENT COMPANY |
| 28 | SB TOWNE CENTRE, LLC |

| | |
|---|---|
| 1 | SCHEMCO HOLDINGS, LLC |
| 2 | SCHEMCO HOLDINGS, LLC C/O BREKKE REAL ESTATE |
| | SEENO ENTERPRISES, LLC C/O SIERRA PACIFIC PROPERTIES |
| 3 | SEVEN SPRINGS LIMITED PARTNERSHIP C/O NAI ALLIANCE COMMERCIAL |
| | SHAMI VALLEY WEST, LLC |
| 4 | SHAMI VALLEY WEST, LLC C/O BANK OF THE WEST |
| | SHAMROCK VILLAGE ASSOCIATES, LLC C/O COUNTRYWIDE COMMERCIAL |
| 5 | SHAMROCK VILLAGE ASSOCIATES, LLC C/O DOERKEN PROPERTIES, INC. |
| 6 | SIERRA PACIFIC PROPERTIES, INC. |
| | SIERRA PACIFIC PROPERTIES, INC. C/O ASSIGNOR: ANTIOCH ENTERPRISES |
| 7 | SIERRA PACIFIC PROPERTIES, INC. C/O NORTHWESTER MUTUAL LIFE |
| | SIFTON/ORCHARDS, LLC |
| 8 | SIFTON/ORCHARDS, LLC C/O ERIC FULLER & ASSOC. |
| 9 | SOUTHTOWNE CROSSING, LLC |
| | SPARKS GALLERIA INVESTORS, LLC |
| 10 | SPARKS GALLERIA INVESTORS, LLC  C/O KEY BANK NATIONAL ASSOCIATION |
| 11 | SPARKS GALLERIA INVESTORS, LLC C/O ARTESIA MORTGAGE CAPITAL |
| 12 | SRS-BROADWAY ASSOCIATES |
| | STERLING SAVINGS BANK C/O ASSIGNOR: CASTLE MANAGEMENT INC. |
| 13 | STERLING SAVINGS BANK C/O INTERVEST |
| | STEVEN AND KATHY GARMAN C/O ASSIGNOR: SHASTA PIZZA ADVENTURES |
| 14 | STEVEN AND KATHY GARMAN C/O REDDING MALL PROPERTIES |
| 15 | STONEHENGE MANTECA LLC C/O STONEHEDGE PROPERTY GROUP |
| | STONEHENGE MANTECA, LLC C/O TRIGILD, INC. |
| 16 | SUNSET PLAZA PARTNERSHIP |
| 17 | TENGOLSKI PARTNERS C/O MOUNTAIN WEST JENNINGS LLC |
| | THAYMA T. DEMSKI |
| 18 | THAYMA T. DEMSKI C/O SOLOMAN, GRINDLE ET AL. |
| | THE MATTESON COMPANIES |
| 19 | THE MATTESON COMPANIES C/O MORGAN STANLEY MORTGAGE CAPITAL, INC. |
| 20 | THOMPSON & PARTNERS, LIMITED |
| 21 | TOWN CENTRE INVESTORS |
| | TRANSWESTERN CONCORD CORP. CENTRE, L.P. |
| 22 | TRANSWESTERN CONCORD CORP. CENTRE, L.P. C/O ALLEN MATKINS ET AL. |
| 23 | TRANSWESTERN CONCORD CORP. CENTRE, L.P. C/O TRANSWESTERN INVESTMENT CO. |
| 24 | TRUEMAN E. VROMAN |
| | TSAKOPOULOS FAMILY TRUST |
| 25 | TSAKOPOULOS FAMILY TRUST C/O WELLS FARGO BANK |
| 26 | TSE VIRGINIA HILL LP C/O ASSIGNOR: CASTLE MANAGEMENT |
| | TSE VIRGINIA HILL LP C/O CARDOZA PROPERTIES INC. |
| 27 | VICTORIAN SQUARE ASSOCIATES, LLC |
| | VIOLA OGDEN |
| 28 | WATT - TURNER, LLC |

WATT - TURNER, LLC C/O MORGAN STANLEY MORTGAGE CAPITAL, INC.
WATT/FAIRFIELD ASSOCIATES LIMITED PARTNERSHIP
WATT-ELKHORN CENTER C/O GIANULIAS PROPERTY MANAGEMENT
WCH PROPERTY MANAGEMENT, LLC
WCH PROPERTY MANAGEMENT, LLC
WEINGARTEN STONERIDGE, LLC C/O WEINGARTEN REALTY INVESTORS
WEST TOWN ASSOCIATES
WEST TOWN ASSOCIATES C/O ASSIGNEE: CAMELOT FOODS
WESTERN REAL ESTATE INVESTMENT CO. C/O ALL CALIFORNIA REALTY
WHITTAKER/NORTHWEST PARTNERS III, LP
WOLLFE-REED CENTER
ZUCKERMAN CONSTRUCTION CO.
ZUCKERMAN CONSTRUCTION CO. C/O PIZZA PUCK ENT.

## I. INTRODUCTION

Round Table Pizza, Inc., Round Table Franchise Corporation, Round Table Development Company and Round Table Pizza of Nevada, LLC, the joint debtors and debtors in possession in the above captioned Chapter 11 reorganization cases (collectively "Round Table" or "Debtor"), hereby jointly move the Court for an (1) approving lease rejection procedures, (2) extending the time for assumption or rejection of leases, and (3) approving their policies respecting "Stub Rent" (the "Landlords Motion").

This Landlords Motion is based on the Memorandum of Points and Authorities set forth herein, the NOTICE OF HEARING ON LANDLORDS MOTION (the "Notice"), the DECLARATION OF KEITH DAVIS IN SUPPORT OF LANDLORDS MOTION filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Landlords Motion.

## II. JURISDICTION

On February 9, 2011 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United Stated Code in the United States Bankruptcy Court for the Northern District of California.

The Court has jurisdiction over this case and this Landlords Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409(a).

The statutory bases for the relief requested herein are §§ 105(a), 365 and 503 of the Bankruptcy Code.

## III. FACTS

A.   **Background**

Round Table's first restaurant opened in Menlo Park, California in 1959. Over the past 50 years, Round Table has grown to dominate the Northern California market for pizza, to become a major West Coast chain, with nearly 500 stores in seven States, and to engage in international

franchise development.

During the same period, Round Table diversified from acting exclusively as a franchisor to also operating company owned stores, ultimately acquiring and developing 140 company-owned stores and swelling its employee base from 70 to a peak of over 3,000 employees.

During the decade prior to the Great Recession, Round Table enjoyed tremendous growth. Between 1997 and 2006, revenues grew from $15 million to $120 million per year, and operating profits grew from $4.3 million to $10.5 million. In February of 2007, Round Table obtained a new credit facility. Although Round Table restructured its business to adjust to the Great Recession, the terms of the credit facility could not be met by that restructured business. Efforts to renegotiate the terms of the credit facility were unsuccessful.

A fuller presentation of Round Table's background, the circumstances which led to the instant Chapter 11 filing, and Round Table's expectations regarding its reorganization is set forth in the Declaration of Rob McCourt in Support of First Day Motions.

In connection with its Employee Stock Option Plan ("ESOP"), an independent appraiser valued Round Table at $45 million approximately one year ago. Round Table engaged in marketing efforts immediately prior to the Petition Date, which confirmed a value in that range. General Electric Capital Corporation / Prudential Insurance Company of America ("GECC / Prudential") is owed $30 million, suggesting that Round Table should generate a significant recovery to creditors, and potentially a recovery to the ESOP which holds its equity as well.

**B.     Intended Reorganization**

There are two core aspects to Round Table's business: acting as a franchisor to independent third party owner-operators, and operating company-owned stores.

There are currently 355 franchised stores, with 148 franchisees. The franchise base is highly diversified: 91% of the franchisees own five stores or less, and only two franchisees own 20 to 25 stores. Management believes that the franchise segment of Round Table's business is sound, produces stable profits and does not require material reorganization.

Round Table operates 128 company-owned stores. Although most of them are profitable,

a number of the stores have been unable to operate profitably in the current economic environment, generating significant losses. Over the first 4 to 6 months of its Chapter 11 case, Round Table intends to close unprofitable stores and to renegotiate leases with respect to its marginal stores. Within 4 to 6 months, Round Table expects that its remaining base of company-owned stores will be stable and profitable.

Round Table expects to have maximized the value of the chain, through store closings and lease renegotiations, by the conclusion of the initial phase of its reorganization, after which it intends to complete its reorganization by embarking on one of two paths.

If it appears that an appropriate value can be realized for the benefit of all of its constituencies through a sale, Round Table is amenable to engaging in that process.

On the other hand, if problems in the economy and the credit industry make it impossible to realize an appropriate value for the company this year, Round Table will propose a Plan of Reorganization which restructures its debt so that it can operate successfully for a period of perhaps five years, by the conclusion of which it would expect to sell the business or refinance the debt.

## C. The Landlord Relationships

Round Table is a party to 128 leases of company-owned stores ("Store Leases") and a lease of its corporate headquarters (the "Headquarters Lease"). Collectively, the real property leases are referred to as the "Leases." In the aggregate, rent under the Leases accrued at the rate of approximately $1 million per month pre-petition. Until February 2011, all of the Leases were current. Round Table failed to pay February rent, but intends to resume timely paying rent commencing in March, except with respect to Closed Stores (defined below).

Round Table divides the Store Leases and the associated company stores into three categories. The bulk of the stores are profitable and operate pursuant to leases which are viable on a long-term basis, and these stores will be retained (the "Retained Leases").

Approximately 30 stores are clearly unprofitable and cannot plausibly be restructured so as to become profitable; Round Table plans to close these stores within the next several weeks

("Closed Stores").

Finally, there are a number of stores that are "on the bubble" between being retained and being closed (the "Bubble Leases")  Whether the Bubble Stores are retained or closed will be determined in the first four to six months of this reorganization, principally based on whether the underlying lease can be restructured.

## IV. LEGAL CONTEXT

### A. Stub Rent

"Stub Rent" refers to the rent that accrues in the partial first month of a bankruptcy case. For example, Round Table filed its Chapter 11 case on February 9, 2011, and as a consequence approximately two thirds of the rent for February accrued post-bankruptcy.

There are two legal issues associated with stub rent: whether it is a post-bankruptcy obligation at all ("pro-ration"), and if it is, when it should be paid.

Currently, a majority of courts approve pro-ration and treat stub rent as an administrative claim. In re Furr's Supermarkets, Inc., 283 B.R. 60, 68 (10th Cir. BAP 2002) (adopting pro-ration); and *see*, In re Handy Andy Home Improvement Centers, Inc., 144 F.3d 1125 (7th Cir.1998) (seminal pro-ration case).  Although there is authority contrary to pro-ration which would allow Round Table to treat all of February rent as a pre-petition debt because it first came due pre-petition; *e.g.*, In re Montgomery Ward Holding Corp., 268 F.3d 205 (3rd Cir.2001); Round Table is willing to accept the view more favorable to the Landlords and agree that the portion of the rent which accrued post-bankruptcy should be treated as a post-bankruptcy claim and afforded "administrative rent" status.

Round Table is willing to adopt pro-ration, however, only if post-bankruptcy rent is also pro-rated up to the date the lease rejection occurs.  All of the courts which have adopted pro-ration for stub rent have also applied it to the rejection month, so as to avoid a "patently unfair result." In re Stone Barn Manhattan LLC, 398 B.R. 359, 367 (Bankr. S.D.N.Y. 2008); and *see*, Victoria Kothari, "11 U.S.C. § 365(D)(3): A Conceptual Status Argument for Proration" 13 AM. BANKR. INST. L. REV. 297, 349 (2005), referring to a contrary result as "absurd."  For example, if a lease is

rejected effective March 9, 2011, Round Table believes that it would be unfair and inappropriate to allow the Landlord *both* February Stub Rent *and all* of March rent; instead, the Landlord should enjoy a pro-rated administrative rent claim for a portion of February and a portion of March. Through this Landlords Motion, Round Table seeks a determination that pro-ration will be applied to both Stub Rent and rent due in the month the lease is rejected.

Unlike the rent that first comes due after the bankruptcy case is filed, however, most courts treat stub rent as an "ordinary" administrative claim, rather than as a claim entitled to the peculiar benefits of Section 365(d). In re Goody's Family Clothing Inc., 610 F.3d 812 (3d Cir. 2010); In re ZB Company, Inc., 302 B.R. 316, 319 (Bankr.D.Del.2003); In re UAL Corp., 291 B.R. 121 (Bankr.N.D.Ill.2003); *but see*, Stone Barn, *supra* (straining to incorporate stub rent into the payment terms of Section 365(d)(3)).

Although Round Table agrees that Stub Rent should be treated as an administrative claim and hence must ultimately be paid in full, there is no set time for the payment of administrative claims in a Chapter 11 case, other than upon confirmation of a Plan of Reorganization or, in the case of stub rent, upon assumption of the applicable lease. *See, generally,* J. Kate Stickles and Patrick J. Reilley, "Stub Rent: The Third Circuit's Decision in Goody's" 29 AM. BANKR. INST. J. 22 (October, 2010) ("An administrative-expense claim under § 503(b)(1), however, need not be 'timely paid.' Therefore, despite the award of an administrative claim for stub rent, a landlord may not be paid until the lease is assumed or a plan is confirmed.")

Unless the Court orders otherwise, Round Table believes that the timing of the payment of administrative claims generally and of Stub Rent in specific is a matter confided to its business judgment. In general, Round Table believes that creditors and its estate are better served by conserving cash in the early days of its reorganization and thus by deferring the payment of Stub Rent. In re Midway Airlines Corp., 406 F.3d 229, 242 (4th Cir. 2005) ("In most situations the courts prefer to postpone payment of the administrative claim until confirmation of a plan or the distribution in a liquidation.") Furthermore, as discussed above, Round Table contemplates engaging in negotiations with its Landlords, and believes that the ability to offer to accelerate the payment of Stub Rent could be used in those negotiations for the benefit of the estate. Through

this Landlords Motion, Round Table seeks confirmation that the timing of its payment of Stub Rent shall remain subject to the exercise of its reasonable business judgment.

### B. Assumption or Rejection

Ultimately, Round Table must "assume" or "reject" every lease. If a lease is assumed Round Table must cure all defaults, consisting primarily or exclusively of the payment of February 8, 2011 rent, and must comply with the lease going forward. Assumption essentially assures the Landlord that the lease is unaffected by the bankruptcy case. If Round Table rejects the lease, Round Table must surrender possession of the premises and the Landlord may file a claim for damages, as limited by the "landlord's cap" contained in the Bankruptcy Code; 11 U.S.C. § 502(b)(6); which will ultimately be paid at the same time and to the same extent as all general unsecured pre-bankruptcy creditors.

Unless and until a lease is rejected, Round Table requests that the Landlord's rights be preserved without the need to file a Proof of Claim or any other action.

### C. Deadline to Assume or Reject

Round Table believes that its creditors and its estates would be best served by deferring assumption of leases until the conclusion of its reorganization, which Round Table anticipates will occur in calendar year 2011. Unfortunately, the Bankruptcy Code sets arbitrary deadlines for the assumption or rejection of all leases. 11 U.S.C. § 365(d)(4). The initial deadline is 120 days after the bankruptcy case is filed, but that deadline may be extended for 90 days by the Court, and through this Landlords Motion, Round Table seeks that extension. Unless Landlords agree to the contrary, the extended deadline of 210 days after the filing of the bankruptcy case represents an absolute deadline, and all leases must be assumed or rejected by that date, which Round Table computes to be September 7, 2010.

### D. Rejection Procedures

For a variety of reasons, Round Table can suffer significant loss, including loss of cash revenues, if its business is operated by disaffected employees. As a consequence, Round Table

ordinarily notifies employees and managers of a store closing only on the day that the store is closed. Round Table believes that it is important that it not provide advance notice of store closings, e.g., through filings with the Court.

Ordinarily, Round Table can remove its equipment, furniture and other goods and restore the premises to broom clean condition within about a week. Upon completion of those efforts, Round Table proposes to deliver to the Landlord a confirmation that the lease has been rejected, the premises have been surrendered, and the Landlord is free to deal with the premises and any remaining property on site in its discretion. A proposed form for such a Surrender Notice is attached hereto as **Exhibit A**. Round Table believes that as a general matter the date on which the Landlord receives the Surrender Notice should be treated as the effective date of the Rejection; *e.g.*, for the purposes of pro-rating rent for that month. In re At Home, 392 F.3d 1064 (9th Cir. 2004) (Court has discretion to approve retroactive effective date for lease rejection).

Round Table acknowledges that Landlords have a right to contest rejection of the lease or the effective date of any rejection. Round Table proposes that Landlords be given 21 days from the date of receipt of the Surrender Notice within which to file such an Objection with the Court, which Round Table will thereafter set for a timely hearing in accordance with L.B.R. 9014-1(c)(3).

Round Table intends to engage in negotiations with its Landlords respecting the Retained Leases, the Bubble Leases and the Closed Store Leases. To the extent that Round Table and a Closed Store Landlord can reach agreement on the amount of the Landlord's rejection damages claim, Round Table proposes to allow the claim in such agreed amount. Round Table believes that it will enjoy efficiencies if it is able to address all issues with a Landlord at the time of lease rejection.

## V. **RELIEF REQUESTED**

Through this Motion, Round Table seeks an Order of the Court granting the following relief:

1. Preserving each Landlord's rights, without any need to file a Proof of Claim or any

other papers with the Court, unless and until the Landlord receives a Surrender Notice

2. Extending the deadline to assume or reject leases by 90 days, through and including September 7, 2011.

3. Adopting pro-ration for both the month of February and the month in which any lease is rejected.

4. Confirming that Stub Rent is only an administrative claim, and that the timing of payment of Stub Rent is subject to the Debtor's reasonable business judgment.

5. Authorizing the Debtor to reject leases from time to time in its discretion, with such rejection effective upon delivery to the Landlord of a Surrender Notice in the form attached hereto, provided that the Landlord shall have 21 days after receipt of such Surrender Notice to file a Motion contesting either the rejection or its effective date.

6. Permitting the Debtor to abandon property on rejected lease premises and authorizing the Debtor to waive the automatic stay with respect to such property, all without prejudice to the rights of third parties including equipment lessors or lien holders.

7. Permitting Landlords, following receipt of a Surrender Notice, to offset their security deposits against any damages they have suffered.

8. Confirming that the Debtor may agree with the Landlord to allow a claim for rejection damages in its reasonable business judgment.

DATED: February 16, 2011  Respectfully submitted,

McNutt Law Group LLP

By: */s/ Marianne M. Dickson*
Marianne M. Dickson
Proposed Attorneys for Debtor