WILLIAM W. HUCKINS (Bar No. 201098)
IVAN M. GOLD (Bar No. 121486)
ALLEN MATKINS LECK GAMBLE
  MALLORY & NATSIS LLP
Three Embarcadero Center, 12th Floor
San Francisco, CA 94111-4074
Phone: (415) 837-1515
Fax: (415) 837-1516

Attorneys for Objecting Landlords

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>ROUND TABLE PIZZA, INC.,<br><br>Debtor. | Case No. 11-41431 RLE<br><br>Chapter 11<br><br>(s. Jointly Administered with Case Nos. 11-41432, 11-41433 and 11-41434)<br><br>**LIMITED OPPOSITION TO DEBTORS' MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL**<br><br>Date: February 24, 2011<br>Time: 1:30 p.m.<br>Dept: U.S. Bankruptcy Court<br>      1300 Clay Street, 2nd Floor<br>      Oakland, California |

Landlord-creditors Manteca Stadium Park, L.P., Palo Alto Bayshore Investors, LLC, Transwestern Concord Corporate Centre, L.P., TRC MM, LLC, and landlords affiliated with Kimco Realty Corporation and Regency Centers (collectively, "Objecting Landlords") respectfully submit the following limited opposition to Debtors' *Motion For Order Authorizing Use of Cash Collateral* [Docket No. 6] ("Cash Collateral Motion"). Debtors' Cash Collateral Motion seeks authority to use cash on hand and cash generated from the operation of their businesses which constitute the cash collateral (within the meaning of Section 363(a) of the Bankruptcy Code) of pre-petition lenders General Electric Credit Corporation and The Prudential Insurance Company of America (collectively, "GECC/Prudential" or "Lenders").

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

804547.01/SF

LIMITED OPPOSITION TO DEBTORS' MOTION FOR ORDER AUTHORIZING
USE OF CASH COLLATERAL

Case: 11-41431   Doc# 72   Filed: 02/18/11   Entered: 02/18/11 15:18:33   Page 1 of 8

Objecting Landlords do not generally object to granting Debtors the authorization to use cash collateral to maintain and fund Debtors' operations, but submit their limited objection to address certain issues raised by the Cash Collateral Motion and the proposed cash collateral and operating budget, Exhibit B to the Declaration of J. Robert McCourt In Support of First Day Motions [Docket No. 13] (the "Budget"), that are of critical importance to Objecting Landlords and to seek clarification of the relief sought by the Cash Collateral Motion.

As discussed below, any further interim order or final order allowing Debtors to use cash collateral should expressly provide:

(a) approval of the use of cash collateral and the Budget is not an endorsement or approval of Debtors' view of its obligation to pay February "stub rent" on a timely basis under Bankruptcy Code section 365(d)(3); and

(b) any replacement lien in favor of GECC/Prudential should not extend to any lien on or security interest in Debtors' real property leases.

## FACTUAL BACKGROUND

Objecting Landlords are the lessors of either debtors Round Table Pizza, Inc. or Round Table Development Company with respect to Debtors' headquarters in Concord, California and multiple restaurant locations in California and Oregon. Other than the Concord headquarters lease, each of Debtors' leases with Objecting Landlords are for nonresidential real property in a "shopping center" as that term is used in Bankruptcy Code section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3rd Cir. 1990).

On February 9, 2011, Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The cases are jointly administered. Debtors continue to operate their businesses and manage their affairs as debtors in possession under Bankruptcy Code section 1107(a) and 1108.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-2-
LIMITED OPPOSITION TO DEBTORS' MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

804547.01/SF

Case: 11-41431   Doc# 72   Filed: 02/18/11   Entered: 02/18/11 15:18:33   Page 2 of 8

### DEBTOR'S APPARENT TREATMENT OF FEBRUARY STUB RENT IN THE BUDGET SHOULD NOT BE CONSTRUED AS ENDORSEMENT OF DEBTORS' VIEW OF THEIR OBLIGATIONS UNDER BANKRUPTCY CODE SECTION 365(d)(3)

As part of the relief sought by the Cash Collateral Motion, Debtors seek authority to use the proceeds of cash collateral "in the ordinary course of its business and consistent with the Budget, as revised and extended from time to time." (See Cash Collateral Motion at 7: 8-9 and Budget.) The Budget is a 13-week weekly cash flow forecast for the weeks ending February 13, 2011 through May 8, 2011. While containing a category for "Rent &CAM" for rent and related charges and expenses for Debtors' leased locations commencing the week ending February 27, 2011 (presumably March 2011 rent and charges), Debtors' Budget apparently does not provide for current payment of any amounts on account of rent for the post-petition portion of the month of February 2011 (i.e., February 9-28, 2011), frequently referred to as "stub rent." While the Budget contains a line item for the week ending April 3, 2011 described as "Lease Cure Claims," as set forth in Debtors' recently-filed Motion For Orders Respecting Real Property Leases [Docket No. 39], Debtors seek to postpone payment of February stub rent "until Round Table determines payment to be appropriate." (Notice of Hearing on Motion For Orders Respecting Real Property Leases [Docket No. 41] at 8: 14-15.)

Bankruptcy Code section 365(d)(3) requires a debtor in possession to timely perform all obligations under an unexpired nonresidential lease pending the decision to assume or reject. If the debtor fails to timely perform any lease obligations that accrued during the post-petition, pre-rejection period, the lessor is entitled to an administrative priority claim for the unperformed obligations. In re Pacific-Atlantic Trading Co., 27 F.3d 401, 403-405 (9th Cir. 1994). The Ninth Circuit has "interpreted § 365(d)(3) broadly, consistent with its purpose of ensuring immediate payment of lease obligations to protect landlords pending the trustee's [or debtor-in-possession's] decision to assume or reject a lease." In re LPM Corporation, 300 F.3d 1134, 1138 (9th Cir. 2002). The Ninth Circuit also held that Section 365(d)(3) "does not require the lessor to take any action" to secure priority treatment for post-petition, pre-rejection rent. In re Pacific-Atlantic Trading Co., supra, 27 F.3d at 405.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-3-
LIMITED OPPOSITION TO DEBTORS' MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

804547.01/SF
Case: 11-41431    Doc# 72    Filed: 02/18/11    Entered: 02/18/11 15:18:33    Page 3 of 8

Numerous bankruptcy courts have followed pre-1984 practice of prorating debtor's lease obligations to cover the post-petition, pre-rejection period, regardless of billing date. This so-called "pro-ration" or "accrual" approach has been described as the rule in the "majority of courts." In re Phar-Mor, Inc., 290 B.R. 319, 323-324 (Bankr. N.D. Ohio 2003) ("The majority of courts that have considered this general issue have followed the pre-1984 practice of prorating both a debtor's real estate tax obligations and periodic rent payments due pursuant to a lease, regardless of the billing date."); see In re Stone Barn Manhattan, LLC, 398 B.R. 359 (Bankr. S.D.N.Y. 2008).

In In re TreeSource Industries, Inc., 363 F.3d 994, 998 (9th Cir. 2004), the Ninth Circuit endorsed the pro-ration approach under Section 365(d)(3), opining that that tax and rent obligations arise when those obligations accrue, and not upon the performance of the obligations, such as a billing or payment date. Indeed, there are numerous reported examples of the application of the pro-ration approach to post-petition lease obligations by bankruptcy courts within the Ninth Circuit. See, e.g., In re National Refractories & Minerals Corp., 297 B.R. 614, 619 (Bankr. N.D. Cal. 2003); In re Ernst Home Center, Inc., 209 B.R. 955, 963-964 (Bankr. W.D. Wash. 1997) (finding that the competing "billing date" theory "produces results that are inconsistent with the priority and distribution schemes under the Bankruptcy Code"); In re RB Furniture, Inc., 141 B.R. 706, 712 (Bankr. C.D. Cal. 1992).[1]

Debtors' Motion For Orders Respecting Real Property Leases makes it clear that seeks to postpone payment of February 2011 stub rent, notwithstanding available funds for such payment

---

[1] Under cases adopting the "billing date" or "performance date" approach to Debtors' post-petition lease obligations, Debtors would have no obligation under Section 365(d)(3) to make payment on account of its lease obligations until March 1, 2011, the next "billing date. See, e.g., In re Montgomery Ward Holding Corp., 268 F.3d 205, 209 (3d Cir. 2001).

A number of other cases have criticized the performance date approach as ignoring the rehabilitative purposes of the Bankruptcy Code and creating inconsistencies with its priority and distribution schemes. See, e.g., In re Kmart Corporation, 286 B.R. 345, 349 (Bankr. N.D. Ill. 2002); In re Furr's Supermarkets, Inc., 283 B.R. 60, 69-70 (10th Cir. BAP 2002). Indeed, even in one of the leading cases endorsing the performance date approach, the bankruptcy court acknowledged that the landlords would nevertheless have an administrative expense claim for the "stub" period under Bankruptcy Code section 503(b) based on the post-petition use and occupancy of the leased premises. In re HQ Global Holdings, Inc., 282 B.R. 169 (Bankr. D. Del. 2002); see also In re ZB Company, Inc., 302 B.R. 316, 319 (Bankr. D. Del. 2003) ("It is beyond dispute that all of the Debtors' landlords whose properties are occupied and used post-petition have valid administrative claims.").

in the Budget, and Debtors' assertion that it seeks to "continue[] to pay its operating expenses in the ordinary course of business." (Cash Collateral Motion at 7: 13-16.) Debtors are effectively compelling landlords to extend it credit, while the leased premises are being used by Debtors in the operation of their business. See In re Warehouse Club, Inc., 184 B.R. 316, 317 (Bankr, N.D. Ill. 1995) ("The purpose of § 365(d)(3) is to prevent landlords from becoming involuntary post-petition creditors of the bankruptcy estate."). Under the proposed Budget, landlords, including Objecting Landlords, are having their administrative claims treated differently from other administrative claimants who, under the Budget, are being paid on a current basis. See In re Lazar, 83 F.3d 306, 308-309 (9th Cir. 1996) ("Under the Bankruptcy Code, administrative expense creditors must be treated equally and the court should not set up its own order of priorities.")[2]

This Court's approval of the Cash Collateral Motion, on either a continuing interim or final basis, and accompanying Budget, should not be construed as approval or endorsement of the Debtors' approach to its post-petition rent obligations. Any order approving the Cash Collateral Motion and the Budget should be without prejudice to (1) any administrative priority claims and requests for current payment under Section 365(d)(3) that landlords, including Objecting Landlords, might assert with respect to the post-petition portion of unpaid February rent and charges, (2) any opposition to Debtors' Motion for Orders Respecting Real Property Leases, scheduled for hearing on March 11, 2011, or (3) any request by landlords for adequate protection for the post-petition use and occupancy of their premises leased to Debtors under Bankruptcy Code section 363(e).

**THE SCOPE OF THE REPLACEMENT LIEN SOUGHT BY THE CASH COLLATERAL MOTION NEEDS TO BE CLARIFIED**

The scope of replacement lien to be granted in favor of Lenders as adequate protection for Debtors' post-petition use of cash and the potential diminution in the value of the Lenders' collateral is described as a "replacement lien against [Debtors'] post-petition assets (other than

---

[2] In contrast, the Budget provides for regular payment of "Debtor's Counsel and Advisors" and "Accounting Outsourcing," while no payment is made on account of the use and occupancy of Debtor's restaurants for 20 days of the month of February 2011.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP
804547-01/34
-5-
LIMITED OPPOSITION TO DEBTORS' MOTION FOR ORDER AUTHORIZING
USE OF CASH COLLATERAL
Case: 11-11431    Doc# 72    Filed: 02/18/11    Entered: 02/18/11 15:18:33    Page 5 of 8

rights arising under Chapter 5) with the same nature extent, validity and enforceability as its pre-petition lien." (Cash Collateral Motion at 8: 3-6.) At the February 11, 2011 "first day" hearing regarding Debtors' interim use of cash collateral, counsel for GECC/Prudential sought a broader replacement lien on all of Debtors' post-petition assets (other than avoidance actions), thus potentially extending to Debtors' leasehold interests. The term "Collateral" under Debtors' pre-petition Credit Agreement dated as of February 28, 2007, as amended, is apparently broadly defined. (See Page 11 of Credit Agreement, Docket No. 54.)

The potential grant of a security interest in Debtors' leases, i.e., leasehold mortgages, to secure financing would violate prohibitions on the assignment, mortgage or pledge of Debtors' leasehold interest contained in its leases with Objecting Landlords and the plain language of Bankruptcy Code section 365(d)(3) requiring that the Debtors perform all obligations of their leases (including the obligation not to assign or transfer any interest therein) pending the decision to assume or reject. See In re Cukierman, 265 F.3d 846, 850 (9th Cir. 2001) ("Congress made the provision for trustee [or debtor-in-possession] compliance broad, extending it to cover all the obligations under a lease.").

For example, Section XII.A of the Debtor Round Table Pizza, Inc.'s Office Lease Agreement for its headquarters premises at 1320 Willow Pass Road, Avenue, Concord, California (lessor Transwestern Concord Corporate Centre, L.P.) provides generally that "Tenant shall not assign, sublease, transfer or encumber any interest in this Lease …" without the prior written consent of the landlord. Such a restriction is enforceable under California law. See Cal. Civil Code §§1995.210, 1995.250.

Similarly, Section 11.01 of Round Table Development Company's Lease Agreement for premises at the Central Valley Marketplace, Ceres, California (lessor Palo Alto Bayshore Investors, LLC) provides, in pertinent part, that "Tenant shall not transfer, assign, sublet, enter into license or concession agreements, change ownership or hypothecate this Lease or Tenant's interest in and to the Premises without first procuring the written consent of Landlord."

Section 20 of Round Table Development Company's Shopping Center Lease for premises at the Gateway at Donner Pass shopping center in Truckee, California (lessor Gateway at Donner

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

-6-
LIMITED OPPOSITION TO DEBTORS' MOTION FOR ORDER AUTHORIZING
USE OF CASH COLLATERAL

804547.01/SF

Case: 11-41431    Doc# 72    Filed: 02/18/11    Entered: 02/18/11 15:18:33    Page 6 of 8

Pass, LP) similarly provides, in pertinent part, that "Tenant shall not (i) assign or transfer all or any portion of its legal or equitable interest in this Lease or the Leased Premises" without the landlord's prior consent.

If Debtors improperly purported to transfer interests in any leases pre-petition, but the Lenders failed to perfect their interests, such transfers should not be within the scope of any purported replacement lien. Landlords should not have to guess as to whether GECC/Prudential contend Lenders have a perfected security interest in Debtors' leasehold interests nor should Debtors' landlords potentially be subjected to the cost, uncertainty and distraction of future litigation in state courts over whatever contentions Lenders may later make regarding Debtors' leases following a default by the Debtors.

If Lenders seeks a lien on Debtors' leasehold interests as part of its replacement lien under any final order approving the Cash Collateral Motion, it should be required to make this clear. (To date, no proposed order has been filed by either Debtors or Lenders.) Objecting Landlords would oppose any attempt to mortgage, hypothecate or otherwise encumber Debtors' leasehold interests in contravention of the terms of Debtors' leases. Neither Debtor nor its Lenders have offered any authority permitting an assignment of Debtor's interest in its real property leaseholds, in the form of a replacement lien in connection with the Debtors' post-petition use of cash collateral, contrary to express lease restrictions and Bankruptcy Code section 365(d)(3).

A lien on the potential proceeds of the disposition of Debtors' leases more than adequately protects the Lenders' interests, while remaining consistent with the terms of the underlying leases. The "bonus value" of the leases has been recognized as property of the bankruptcy estate (see, e.g., In re Ernst Home Center, Inc., 209 B.R. 974, 985-986 (Bankr. W.D. Wash. 1997) and a security interest in that bonus value, in the form of a lien on the proceeds of the prospective disposition of leases, strikes a balance between the Lenders' interests, Debtors' need for authorization to use cash collateral, and the landlords' rights under the leases and the Bankruptcy Code.

## **JOINDER**

To the extent not inconsistent with the foregoing, Objecting Landlords join in any opposition to Debtors' Cash Collateral Motion filed by Debtors' other landlords.

## **CONCLUSION**

Approval of the Cash Collateral Motion should not be construed as approval or endorsement of Debtors' approach to its post-petition lease obligations reflected in the proposed Budget. The proposed scope of the Lenders' replacement lien should be clarified to plainly limit the scope of any lien on Debtors' real property leaseholds to the proceeds of their prospective disposition by the Debtors.

Dated: February 18, 2011

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: /s/ William W. Huckins
WILLIAM W. HUCKINS
Attorneys for Objecting Landlords

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

-8-
LIMITED OPPOSITION TO DEBTORS' MOTION FOR ORDER AUTHORIZING
USE OF CASH COLLATERAL

Case: 11-41431  Doc# 72  Filed: 02/18/11  Entered: 02/18/11 15:18:33  Page 8 of 8