LATHAM & WATKINS LLP
Gregory O. Lunt (CA Bar No. 173297)
355 South Grand Avenue
Los Angeles, California 90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
gregory.lunt@lw.com

BINGHAM McCUTCHEN LLP
William Bates (CA Bar No. 063317)
1900 University Avenue
East Palo Alto, CA 94303-2223
Telephone: (650) 849.4400
Facsimile: (650) 849.4800
bill.bates@bingham.com

*Attorneys for General Electric Capital Corporation,
as Agent*

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re | CASE NO. 11-41431 (RLE) |
| **ROUND TABLE PIZZA, INC.,**[1] | Chapter 11 (Jointly Administered) |
| | **OBJECTION OF GENERAL ELECTRIC CAPITAL CORPORATION, AS AGENT ON BEHALF OF THE PREPETITION SECURED LENDERS, TO DEBTORS' MOTION FOR ORDER AUTHORIZING USE OF CASH COLLATERAL** |
| Debtors. | |
| | Date: March 11, 2011 |
| | Time: 10:30 a.m. |
| | Place: U.S. Bankruptcy Court |
| | 1300 Clay Street, Ctrm. 201 |
| | Oakland, CA |
| | Judge: Hon. Roger L. Efremsky |

---

[1] The Debtors in these chapter 11 cases include: Round Table Pizza Inc., Round Table Development Co., The Round Table Franchise Corp. and Round Table Pizza Nevada, LLC (each a "Guarantor" under the Prepetition Facility).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 1 of 26

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

      A.    Prepetition Secured Credit Facility ............................................................. 2

      B.    Debtors' Prepetition Financial Performance .............................................. 4

      C.    Prepetition Sale Process .............................................................................. 4

      D.    The Debtors' Cash Collateral Motion, Requested Use of
           Cash Collateral and Proposed Adequate Protection of the
           Prepetition Lenders' Interests ..................................................................... 5

ARGUMENT ..................................................................................................................... 6

    I.    The Debtors' Proposed Terms Governing Cash Collateral Use Fail
         to Adequately Protect the Prepetition Lenders' Interests in Such
         Cash Collateral.............................................................................................. 6

      A.    The Purported Equity Cushion Relied Upon the Debtors
           Does Not Adequately Protect the Prepetition Lenders'
           Interests Because it is Highly Speculative, if it Exists at All.................... 8

      B.    The Debtors' Projected Absence of Diminution in Cash
           During the Initial Budget Period Offers No Protection of
           the Prepetition Lenders' Interests Because the Budget Is
           Inaccurate, Freely Modifiable and Does Not Limit the
           Debtors' Proposed Cash Collateral Use.................................................... 12

      C.    Replacement Liens on Only "Like-Kind" Collateral Do Not
           Provide Any Additional Protection of the Prepetition
           Lenders' Interests in Cash Collateral....................................................... 15

    II.    The Prepetition Lenders Are Entitled to Cash Payments as
         Adequate Protection.................................................................................... 17

    III.    The Debtors' Use of the Prepetition Lenders' Cash Collateral
         Should Be Conditioned Upon the Prepetition Lenders Receiving
         Adequate Protection Provided in the Prepetition Lenders' Proposed
         Form of Order. ............................................................................................ 18

    IV.    Reservation of Rights................................................................................. 21

CONCLUSION................................................................................................................. 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 2 of
26

# TABLE OF AUTHORITIES

**Page**

## CASES

*In re Asyst Technologies, Inc.*,
    Case No. 09-43246 (Bankr. N.D. CA May 21, 2009) .......................................................... 20

*In re Bear River Orchards*,
    56 B.R. 976 (Bankr. E.D. Calif. 1986) ............................................................................... 7

In re Cavanaugh L.P., 2009 WL 1525992 at *12 (Bankr. D. Mont. 2009) ............................... 18

*In re Ctr. Wholesale, Inc.*,
    759 F.2d 1440 (9th Cir. 1985) .......................................................................................... 16

In re Double Eagle Construction, Inc., 188 B.R. 406, 410 (Bankr. W.D. Miss.
    1995) ................................................................................................................................ 18

In re First Barnstable Corp., 108 B.R. 372, 377 (Bankr. D. Mass. 1989)................................. 17

*In re High Sky, Inc.*,
    15 B.R. 332 (Bankr. M.D. Pa. 1981) ................................................................................ 9

*In re Kenny Kar Leasing, Inc.*,
    5 B.R. 304 (Bankr. C.D. Cal. 1980)................................................................................. 7

*In re Kirkland Cattle Co.*,
    Case No. 06-10630(AJ) (Bankr. N.D. CA, Jan. 5, 2007) ................................. 17, 19, 20

*In re Kirkland Knightsbridge, LLC*,
    Case No. 06-10628(AJ) (Bankr. N.D. CA, Dec. 15, 2006) ................................. 17, 19, 20, 21

*In re Los Gatos Hotel Corp.*,
    Case No. 10-63135 (Bankr. N.D. CA Jan. 11, 2011) ...................................................... 13, 21

*In re Mickeler*,
    9 B.R. 121 (Bankr. M.D. Fl. 1981) .................................................................................. 8

In re Murel Holding Corp., 75 F.2d 941 (2d Cir. 1935) ......................................................... 18

*In re O.P. Held, Inc.*,
    74 B.R. 777 (Bankr. N.D.N.Y. 1987) .............................................................................. 7

*In re Pacific Lifestyle Homes, Inc.*,
    Case No. 08-45328, 2009 Bankr. LEXIS 711 (Bankr. W.D. Wash. Mar. 16,
    2009) .......................................................................................................................... 7, 16

*In re Pacific Lifestyle*,
    2009 Bankr. LEXIS 711 (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 53,
    reprinted in 1978 U.S. Code Cong. & Ad. News 5787) ..................................... 15, 16, 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

ii

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 3 of
26

*In re Pacific Metro LLC,*
   Case No. 10-55788(RLE) (Bankr. N.D. CA, Jul. 27, 2010) ................................ 17, 19, 20, 21

*In re San Jose Airport Hotel,*
   Case No. 09-51045(RLE) (Bankr. N.D.CA, Feb. 23, 2009) ..................................... 17, 19, 20

*In re Stoecker,*
   114 B.R. 980 (Bankr. N.D. Ill. 1990) ................................................................. 9

*In re Stoney Creek Techs., LLC,*
   364 B.R. 882 (Bankr. E.D. Pa. 2007) ................................................................. 9

*In re Tripath Technology, Inc.,*
   Case No. 07-50358 (Bankr. N.D. CA Mar. 28, 2007) ................................. 13, 19, 21

*In re Williams,*
   61 B.R. 567 (Bankr. N.D. Tex. 1986) ................................................................. 8

*In re YL West 87th Holdings I LLC,*
   423 B.R. 421 (Bankr. S.D.N.Y. 2010) ............................................................... 8

*Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group),*
   16 F.3d 552  (3d Cir. 1994) ................................................................. 7, 9, 15, 16

**STATUTES**

11 U.S.C. § 361 ................................................................................................. 7, 14

11 U.S.C. § 362 ...................................................................................................... 8

11 U.S.C. § 363 ................................................................................................. 8, 16

11 U.S.C. § 363(c) ............................................................................................ passim

11 U.S.C. § 363(c)(2) ............................................................................................... 6

11 U.S.C. § 363(e) ............................................................................................... 1, 7

11 U.S.C. § 363(p) ................................................................................................... 7

11 U.S.C. § 506(b) ............................................................................................. 14, 19

11 U.S.C. § 552(b)(1) ......................................................................................... 15, 16

**RULES**

Fed. R. Bankr. P. 4001(b)(1)(A) ............................................................................ 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

iii

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 4 of
26

General Electric Capital Corporation (individually, "<u>GECC</u>"), in its capacities as administrative agent and collateral agent for the Debtors' prepetition secured lenders ("<u>Agent</u>"), respectfully submits this objection (the "<u>Objection</u>") to the Debtors' *Motion for Order Authorizing Use of Cash Collateral* [Docket No. 6] (the "<u>Motion</u>") filed on February 9, 2011.[2] In support of the Objection, Agent respectfully states as follows:

## PRELIMINARY STATEMENT

The Debtors' sole source of working capital in these cases is the Prepetition Lenders' (as defined below) cash collateral. But for the use of that cash, the Debtors would be forced immediately to shut down their business operations and liquidate. Yet, while the Debtors concede that the Prepetition Lenders are entitled to adequate protection for such use, the so-called "adequate protection" that they have proposed in the Motion is entirely illusory.

The purported "equity cushion" that the Debtors primarily rely on for their adequate protection argument is based entirely on an outdated and inapplicable valuation that has not even been admitted into evidence and a sale process that has resulted in no binding commitments. The adequate protection liens they propose extend only to assets in which the Agent already has a security interest. Finally, their own budget, which they rely on to show no diminution in the Prepetition Lenders' cash collateral, shows an actual diminution in the Prepetition Lenders' cash collateral if proceeds from asset sales are excluded, as they should be. The budget is also speculative, only extends for 13-weeks and falls far short of providing the level of insurance that the Prepetition Lenders are entitled to under the Bankruptcy Code as a condition to the use of their cash collateral. In short, the Debtors have not offered the Prepetition Lenders ***any*** adequate protection.

---

[2] The Prepetition Lenders are also entitled to and hereby request adequate protection for the Debtors' use of non-cash collateral in the same form and to the same extent as set forth in Section III of this Objection pursuant to Section 363(e) of the Bankruptcy Code, which provides that "on request of an entity that has an interest in property used, sold or leased, or proposed to be used sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interests."

LATHAM&WATKINS<sup>LLP</sup> CH\1224480.14
ATTORNEYS AT LAW
LOS ANGELES

1    In exchange for this package of non-existent adequate protection, the Debtors seek

2    unlimited use of cash collateral for an indefinite period of time based on a budget that they can

3    unilaterally amend at any time and with which they do not even need to strictly comply.

4    The Prepetition Lenders are willing to consent to the use of their cash collateral on terms

5    that provide them with real adequate protection.  At a minimum, these terms must include

6    adequate protection payments, replacement liens on unencumbered assets (other than avoidance

7    actions and real estate leases) and real budget controls.  In addition, the Debtors should be

8    permitted to use cash collateral only through April 3, 2011, so that this Court and parties-in-

9    interest can assess the impact of their current store-closing initiatives.  Accordingly, the Agent

10   respectfully requests that the Court deny the Motion and condition the Debtors' continued use of

11   cash collateral on the terms set forth in Section III below.

## FACTUAL BACKGROUND

### A.    Prepetition Secured Credit Facility

14   Prior to the Petition Date, the Debtors financed their operations principally through senior

15   secured credit facilities and other related financial accommodations (the "Prepetition Credit

16   Facility") provided by GECC and The Prudential Insurance Company of America (collectively,

17   the "Prepetition Lenders") under a February 27, 2007 Credit Agreement (as amended, the

18   "Prepetition Credit Agreement").  See Motion at 4; see also *Declaration of J. Robert McCourt In*

19   *Support of First Day Motions* [Docket No. 13] (the "Omnibus Declaration") ¶¶ 19-21.  Each of

20   the Debtors is an obligor under the Prepetition Credit Agreement and all obligations of the

21   Debtors with respect to the Prepetition Credit Facility are secured by first priority security

22   interests in substantially all of the Debtors' owned and after-acquired assets (the "Collateral").

23   See Omnibus Declaration ¶ 40.

24   By mid-2010, the Debtors were in material breach of their obligations under the

25   Prepetition Credit Agreement by, among other things, failing to make required principal and

26   interest payments, failing to make certain mandatory repayments of revolving loans and failing

27   to comply with certain financial covenants in the Prepetition Credit Agreement.  See *Declaration*

28   *of Mark R. Flamm in Support of Objection of General Electric Capital Corporation, as Agent on*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES          CH\1224480.14

2

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 6 of
26

*Behalf of the Prepetition Secured Lenders, to Debtors' Motion for Order Authorizing Use of Cash Collateral* (the "Agent Declaration")[3] ¶ 4. On August 31, 2010, the Debtors and the Prepetition Lenders entered into a fourth amendment to the Prepetition Credit Agreement ("Amendment No. 4") pursuant to which the Prepetition Lenders, among other things, agreed not to apply the default rate of interest and waived the existing events of default and deferred certain principal, interest and other mandatory payments. See id. In consideration for these meaningful concessions, the Debtors agreed to lock in their existing non-default interest rates through the remainder of 2010.[4] See id.

By the end of the very next quarter, the Debtors were back in default under the Prepetition Credit Agreement by again failing to comply with certain financial covenants. See Agent Declaration ¶ 5. As of November 30, 2010, the Debtors were in default under the Prepetition Credit Agreement by failing to make required interest and principal payments. See id. As a consequence of these further events of default, the Prepetition Lenders exercised their express rights under the Prepetition Credit Agreement to terminate the Debtors' ability to borrow LIBOR loans and to charge the default rate of interest on the outstanding obligations. See id.

As of the Petition Date, the Debtors owed approximately $31.5 million to the Agent, Prepetition Lenders and other secured parties under the Prepetition Credit Facility, including approximately $29,864,656 in outstanding loans and approximately $1,630,744 in secured hedging reimbursement obligations. See Omnibus Declaration ¶ 20; Motion at 4; Agent Declaration ¶ 6.

---

[3]  The Agent Declaration was filed contemporaneously with this Objection.

[4]  Despite the Debtors' implication that the interest rate charged by the Prepetition Lenders is above market, see Motion at 5, based on the their 2010 financial performance, the Debtors' interest cost would have been exactly the same whether or not Amendment No. 4 was executed. See Agent Declaration ¶ 4. Furthermore, the Debtors assert without support that a "current market interest rate would amount to 6.5% to 7%." See Motion at 5. The Agent and Prepetition Lenders object to the admissibility of this statement as evidence at the Final Hearing or otherwise. To the extent the Debtors attempt to use this statement to demonstrate that the current interest rate under the Prepetition Credit Facility is above market, the assertion lacks foundation and is speculative and, therefore, inadmissible.

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 7 of 26

## B. Debtors' Prepetition Financial Performance

In the Motion, the Debtors allege that "[i]n connection with its [Employee Stock Option Plan ("ESOP")], an independent appraiser valued [the Debtors] at $45 million as of December 31, 2009" (the "ESOP Valuation"). See Motion at 5; see also Agent Declaration ¶ 8. According to the Omnibus Declaration of the Debtors' Chief Executive Officer, the ESOP Valuation was performed for the limited purpose of determining the amount of distributions eligible to be made by the Debtors to the equity holders through the ESOP. See Omnibus Declaration ¶ 12. The ESOP Valuation relied upon, among other things, the Debtors' historical growth and future projections, including projected 2010 revenue growth. See Agent Declaration ¶ 9.

In the more than fourteen months between the effective date of the ESOP Valuation and the commencement of these chapter 11 cases, the Debtors' financial performance has declined precipitously. According to the Omnibus Declaration, the Debtors' actual 2010 revenue of $112 million was almost 50 percent less than their projected 2010 revenue of $210 million. See Omnibus Declaration ¶¶ 22-23; Motion at 4. Likewise, the Debtors' actual 2010 EBITDA was significantly lower than the Debtors' projected 2010 EBITDA used for the ESOP Valuation. See Agent Declaration ¶ 9.

## C. Prepetition Sale Process

In June, 2010, in response to ongoing adverse economic conditions, the Debtors' management determined to sell the company and engaged an investment banker to immediately commence a sale process. See Omnibus Declaration ¶¶ 25-26. All of the proposals submitted to the Debtors that the Agent was made aware of – many of which were oral – were non-binding expressions of interest that were based on the Debtors' projected 2010 EBITDA and were subject to broad conditions, including, for example, completion of legal and financial diligence, rolling debt or securing senior debt financing and renegotiation of the ESOP. See, e.g., Agent Declaration ¶ 11. Of the two non-binding indications of interest that the Debtors allege contemplated a purchase price in excess of the senior debt owed to the Prepetition Lenders, both were conditioned upon the Prepetition Lenders rolling their debt or themselves providing the financing for the proposals. See Omnibus Declaration ¶ 27; Agent Declaration at ¶ 16.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

4

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

According to the Omnibus Declaration, all parties potentially interested in acquiring the Debtors ultimately withdrew from the process prior to the commencement of these cases, except for a "contingent opportunistic offer" delivered on the eve of bankruptcy that apparently reflected a purchase price substantially below the existing senior debt owed to the Prepetition Lenders. See Omnibus Declaration ¶¶ 27-28.

### D. The Debtors' Cash Collateral Motion, Requested Use of Cash Collateral and Proposed Adequate Protection of the Prepetition Lenders' Interests

On February 9, 2011, the Debtors' filed their Motion seeking authority to use the Prepetition Lenders' cash collateral on an interim and final basis. The Court held an interim hearing on the Motion (the "Interim Hearing") on February 11, 2011. The Debtors did not obtain the consent of the Prepetition Lenders to use cash collateral prior to the Interim Hearing.

At the conclusion of the Interim Hearing, the Court entered the *Order Authorizing Interim Use of Cash Collateral* [Docket No. 35] (the "Interim Order") granting the Debtors authority to use the Prepetition Lenders' cash collateral on an interim basis during the first three weeks of these cases in accordance with the weekly cash flow budget attached as an exhibit to the Omnibus Declaration (the "Budget").[5]

Pursuant to the *Second Order Authorizing Interim Use of Cash Collateral* [Docket No. 89] entered by this Court and stipulated to by the Debtors and the Prepetition Lenders on February 22, 2011 (the "Extension Order"), the terms of the Interim Order were extended until the next scheduled hearing before the Court on March 11, 2011 (the "Final Hearing") to provide the recently appointed creditors' committee (the "Committee") and its advisors an opportunity to evaluate the final relief requested in the Motion.

With respect to the final relief requested in the Motion, the Debtors seek authority from this Court to "freely use cash collateral in the ordinary course of its operations, generally as contemplated by the Budget as it is from time to time amended, and as otherwise contemplated by such Orders as the Court may hereafter enter." See Motion at 11 (Prayer for Relief). In

---

[5] On March 1, 2011, the Debtors sent the Prepetition Lenders a modified budget for the same period as the Budget. The Prepetition Lenders are still reviewing this revised budget, and reserve the right to raise additional objections once they have reviewed the revised budget and had an opportunity to discuss it with the Debtors.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

5

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 9 of 26

addition, the Motion requests that the Court authorize such cash collateral use for an unlimited period of time and without any limitation on the Debtors' ability to amend the Budget without further court order or consent of the Prepetition Lenders. See id. at 6, 11.

The Debtors assert in the Motion that the Agent's and Prepetition Lenders' interests in their cash collateral are adequately protected under Section 363(c) of the Bankruptcy Code by the following:[6]

- an asserted $10 million equity cushion resulting from the going concern value of the Debtors' assets and the implementation of certain store closings and lease renegotiations in the first four to six months of these cases;

- the Budget reflecting no diminution in cash during the first thirteen weeks of these cases; and

- the grant of replacement liens on the Debtors' postpetition assets (excluding avoidance actions) with the same nature, extent, validity and enforceability as the Agent's prepetition liens. See Motion at 7-8.

## ARGUMENT

**I.    The Debtors' Proposed Terms Governing Cash Collateral Use Fail to Adequately Protect the Prepetition Lenders' Interests in Such Cash Collateral.**

The Debtors request for unlimited use of the Prepetition Lenders' cash collateral for an indefinite period of time must be denied because the Debtors have failed to prove that the Prepetition Lenders' interests in cash collateral are and will be adequately protected. Section 363(c)(2) of the Bankruptcy Code prohibits the Debtors from using the Prepetition Lenders' cash collateral without their consent unless the Court, after notice and a hearing, authorizes such use in accordance with the provisions of Section 363. See 11 U.S.C. § 363(c)(2). The Debtors concede, as they must, that the Court "shall prohibit or condition such [cash collateral] use, sale,

---

[6]    In one section of the Motion the Debtors suggest that they are offering four types of adequate protection, namely (i) continued operation as a going concern; (ii) implementation of various store closings and lease renegotiations, which result in the Budget not showing any diminution in cash during the first thirteen weeks of these cases; (iii) an equity cushion; and (iv) replacement liens on "like-kind" Collateral to the same nature, extent, validity and enforceability as the Agent's prepetition liens. See Motion at 7-8. Later in the "Provision of Adequate Protection" section of the Motion, however, the Debtors state that "[t]o the extent that there is an obligation to provide adequate protection, Round Table proposes to do so in two ways [i.e., through an equity cushion and replacement liens on "like-kind" Collateral]. . . ." See id. at 10. When these provisions are read together, it appears the Debtors' proposed adequate protection consists of the three types listed in the text above.

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 10 of 26

or lease as necessary to provide adequate protection" of the Prepetition Lenders' interests in such cash collateral. See id. § 363(e); see also Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group), 16 F.3d 552, 564 (3d Cir. 1994) (lifting stay and finding that secured creditor was not adequately protected by (i) one-time cash payment, (ii) promise of future payments based upon sales proceeds, (iii) alleged increasing value of collateral and (iv) replacement liens on like-kind collateral); In re Pacific Lifestyle Homes, Inc., Case No. 08-45328, 2009 Bankr. LEXIS 711, at *21-*22 (Bankr. W.D. Wash. Mar. 16, 2009) (denying use of cash collateral based upon finding that lender was not adequately protected by (i) cash payments of interest, (ii) replacement liens on like-kind collateral and (iii) alleged increasing value of the collateral, and finding that the debtor's projections of future profitability were unrealistic and speculative); In re Kenny Kar Leasing, Inc., 5 B.R. 304, 308 (Bankr. C.D. Cal. 1980) (denying use of cash collateral based upon finding secured lender was inadequately protected, and noting that "[a]gainst the theme of adequate protection in the use of the secured creditor's collateral, the statute and legislative history repeat and emphasize the right of secured creditors to realization of the value of the collateral and the right to be protected against decrease in the value of the interests affected."). The determination of adequate protection is a question of fact for which the Debtors bear the burden of proof. See 11 U.S.C. § 363(p); see also In re Bear River Orchards, 56 B.R. 976, 979 (Bankr. E.D. Calif. 1986) (finding secured creditor not adequately protected because value of collateral (walnut crops) would deteriorate over time, and stating that determination of adequate protection is a question of fact for trial court).

While the Bankruptcy Code does not define "adequate protection," it provides the following non-exhaustive list of methods by which a debtor may adequately protect a secured creditor's interests in collateral: (i) periodic cash payments; (ii) additional or replacement liens; or (iii) other relief resulting in the "indubitable equivalent" of the secured creditor's interest in such property. See id § 361; see also In re Pacific Lifestyle, 2009 Bankr. LEXIS 711 at *22. In addition, a secured creditor's interest in cash collateral is entitled to heightened protection because such interest can be more rapidly dissipated by a debtor than other less liquid types of property. See, e.g., In re O.P. Held, Inc., 74 B.R. 777, 782 (Bankr. N.D.N.Y. 1987) ("[W]hat

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

7

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 11 of 26

may constitute adequate protection for purposes of addressing a motion to lift stay pursuant to Code § 362, is not necessarily adequate to authorize a debtor's use of cash collateral, as the latter may be rapidly dissipated."); <u>In re Williams</u>, 61 B.R. 567, 575 (Bankr. N.D. Tex. 1986) ("The difference in treatment afforded to unencumbered pre-petition cash and that afforded to 'cash collateral' arises not from any inherent limitation of bankruptcy law but from the risk that a debtor may quickly dissipate a creditor's cash collateral in a bankruptcy reorganization."); <u>In re Mickeler</u>, 9 B.R. 121, 123 (Bankr. M.D. Fl. 1981) ("Congress in enacting § 363 of the Code gave a special treatment to 'cash collateral' for the obvious reason that cash collateral is highly volatile, subject to rapid dissipation and requires special protective safeguards in order to ensure that a holder of a lien on 'cash collateral' is not deprived of its collateral through unprotected use by the Debtor.").

For the reasons stated below, the Debtors' proposed "protection" of the Prepetition Lenders' interests in cash collateral – i.e. a highly speculative equity cushion, a fatally flawed cash projection and replacement liens solely on "like-kind" collateral – is no protection at all, let alone adequate protection required under Section 363(c) of the Bankruptcy Code. As a result, the Court should deny the Debtors' Motion and instead enter a final order authorizing cash collateral usage in accordance with the terms and conditions set forth in Section III of this Objection, which the Agent will incorporate into a proposed form of order it will tender to the Court for entry at the Final Hearing (the "<u>Prepetition Lenders' Proposed Form of Order</u>").

**A.      The Purported Equity Cushion Relied Upon the Debtors Does Not Adequately Protect the Prepetition Lenders' Interests Because it is Highly Speculative, if it Exists at All.**

The Debtors principally rely on the purported existence of "an equity cushion of at least $10 million" to adequately protect the Prepetition Lenders' interests in their cash collateral. <u>See</u> Motion at 7, 10. If an equity cushion is to be considered a form of adequate protection, courts in the Ninth Circuit and around the country have consistently held that it cannot be based on speculation or conjecture. <u>See</u>, <u>e.g.</u>, <u>In re YL West 87th Holdings I LLC</u>, 423 B.R. 421, 443 (Bankr. S.D.N.Y. 2010) (finding equity cushion too speculative to permit secured lender to be primed by DIP financing); <u>In re Stoney Creek Techs., LLC</u>, 364 B.R. 882, 893 (Bankr. E.D. Pa.

LATHAM&WATKINS LLP   CH\1224480.14
ATTORNEYS AT LAW
LOS ANGELES

8

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431   Doc# 125   Filed: 03/02/11   Entered: 03/02/11 15:00:06   Page 12 of 26

2007) (finding that alleged equity cushion did not adequately protect creditor where equity cushion was derived from a valuation completed for purposes of real estate valuation); In re Stoecker, 114 B.R. 980, 986 (Bankr. N.D. Ill. 1990) ("Payment of hard cash is possibly the best and most substantial form of adequate protection while the ephemeral concept of an equity cushion is often the most speculative, uncertain and questionable form of adequate protection which can evaporate entirely, if not substantially diminish over time . . ."); In re High Sky, Inc., 15 B.R. 332, 336 (Bankr. M.D. Pa. 1981) ("The valuation process through which an equity cushion is determined, at best, is inexact. In establishing an amount for the cushion, the Court must consider estimates and approximations founded on opinions and assumptions . . . the value determination cannot be based on conjecture and mere speculation."); see also In re Swedeland, 16 F.3d at 567 ("Congress did not contemplate that a creditor could find its priority position eroded and, as compensation for the erosion, be offered an opportunity to recoup dependent upon the success of a business with inherently risky prospects. We trust that in the future bankruptcy judges in this circuit will require that adequate protection be demonstrated more tangibly than was done in this case.").

The Debtors' alleged $10 million equity cushion is at best highly speculative, particularly at this early stage in these cases, and thus fails to provide any measure of adequate protection to the Prepetition Lenders. The sole "evidence" the Debtors offer to prove the existence of this alleged equity cushion is the ESOP Valuation[7] and two non-binding acquisition proposals received by the Debtors months prior to the Petition Date. See Omnibus Declaration ¶¶ 26-27. This evidence – to the extent admissible and relevant to Petition Date Collateral valuation at all – in fact conclusively demonstrates the highly speculative nature of the alleged equity cushion.

First, the $45 million ESOP Valuation principally relied on by the Debtors to establish the alleged equity cushion is woefully out-dated to the point of being irrelevant. The effective date for the ESOP Valuation was December 31, 2009 – more than ***fourteen months*** prior to the

---

[7] The Debtors have not attempted to introduce the ESOP Valuation into evidence but instead rely solely on inadmissible hearsay about what it says. The Agent and Prepetition Lenders object to that hearsay under Federal Rule of Evidence 802. For the avoidance of doubt, the Agent and Prepetition Lenders also note their belief that the ESOP Valuation itself would not be admissible if offered as evidence.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

9

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 13 of 26

Petition Date.  See id. ¶ 12; Agent Declaration ¶ 8.  Even more damning to the Debtors' equity

cushion argument, during this fourteen month period the Debtors' actual financial performance

fell far short of the projections upon which the ESOP Valuation was based.  In particular, ESOP

Valuation relied on projected 2010 EBITDA to reach the estimated $45 million enterprise value.

See Agent Declaration ¶ 9; Omnibus Declaration ¶¶ 22-23.  The ESOP Valuation report stressed

the importance of the financial projections to the valuation analysis.  See Agent Declaration ¶ 9.

However, the Debtors readily admit that their actual 2010 revenue of $112 million as well as

their actual 2010 EBITDA of approximately $5 million were each roughly 50% below the

projections used in the ESOP Valuation.  See id.; Omnibus Declaration ¶¶ 22-23.  The Debtors

cannot credibly dispute that the ESOP Valuation would have been substantially less than $45

million without these overly-bullish projections.  The fact that the ESOP Valuation does not take

into account any adverse financial impact resulting from the Debtors' bankruptcy filing or

apparent desire to pursue a contested bankruptcy against the Prepetition Lenders and other

constituencies only makes such valuation less relevant and the Debtors' equity cushion argument

even more spurious.  These undisputed facts preclude the Debtors from carrying their burden of

proving the existence of any equity cushion, let alone one substantial enough to adequately

protect the Prepetition Lenders' interests against unlimited cash collateral use for an indefinite

period of time.[8]

Second, the ESOP Valuation should be given little, if any, evidentiary weight because of

its limited purpose and potential bias.  The ESOP Valuation was commissioned by the equity

holders (through the ESOP trustee) for a limited purpose and for a particular audience.  See

Agent Declaration ¶ 8.  By its express terms, the ESOP Valuation cannot be used to prove the

existence of an equity cushion for purposes of adequate protection.  In addition, the ESOP

Valuation may be biased in favor of a high enterprise value because, as the Debtors' CEO

concedes in the Omnibus Declaration, the higher the ESOP Valuation, the higher the amounts

eligible for distribution to the very equity holders who commissioned the report.  See Omnibus

---

[8]   Because the Debtors have the burden of proof with respect to adequate protection issues, the Agent and
Prepetition Lenders fully reserve their rights with respect to the value of their Collateral and the consequences
thereof at any given point in time.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Declaration ¶ 12. Taken together, these facts further undermine the Debtors' use of the ESOP Valuation to prove the existence or amount of any alleged equity cushion for purposes of adequate protection.

Third, the Debtors' prepetition marketing efforts offer no proof of an equity cushion, and in fact, further demonstrate that the $45 million ESOP Valuation is substantially overstated. According to the Motion, "Round Table engaged in marketing efforts immediately prior to the Petition Date, which confirmed an enterprise value in that range [of the $45 million ESOP Valuation]."[9] See Motion at 5. This assertion is simply false. The Debtors go to great effort in the Motion and Omnibus Declaration to convince the Court that they conducted a comprehensive sale process spanning over eight months with the assistance of a highly competent investment banker. See Omnibus Declaration ¶¶ 25-28; Motion at 5. Yet, as of the Petition Date, the only acquisition proposals received by the Debtors – many of which were oral – were non-binding expressions of interest that were based on the Debtors' significantly overstated 2010 EBITDA projection and were subject to a multitude of broad conditions, including completion of legal and financial diligence, renegotiation of the ESOP, and rolling the Prepetition Lenders' debt or securing senior debt financing. See Agent Declaration ¶ 11. In particular, the two proposals that the Debtors allege contemplated a purchase price in excess of the Prepetition Lenders' debt included an additional condition that the Prepetition Lenders either roll their debt or themselves provide the financing required to consummate the transaction. See Omnibus Declaration ¶ 27; Agent Declaration ¶ 16. There is no dispute that the Debtors' actual 2010 EBITDA was significantly below projections, none of the express transaction conditions were satisfied and none of these proposals ever progressed to the point of a binding commitment. Rather, as the Debtors' CEO concedes in the Omnibus Declaration, all of the potential acquirers ultimately withdrew from the process except for one "contingent opportunistic offer" delivered to the Debtors on the eve of bankruptcy that contemplated a purchase price substantially below the

---

[9] The Debtors have not moved for admission of any documents in support of this assertion into evidence. The Agent and Prepetition Lenders object to the admissibility of any such documents at the Final Hearing or otherwise. To the extent the Debtors attempt to use such documents to prove the value of the company, it is hearsay not subject to any exception and, therefore, inadmissible. See Federal Rules of Evidence 801(c); 802.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

11

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 15 of 26

existing senior debt owed to the Prepetition Lenders.  <u>See</u> Omnibus Declaration ¶¶ 27-28.  The Debtors also concede in the Motion that *any* sale of the company is highly speculative at this point, stating that "problems in the economy and the credit industry" may make it "impossible to realize an appropriate value for the company this year. . . ."  <u>See</u> Motion at 6; Omnibus Declaration ¶ 34.  For all of these reasons, the existence of these proposals and the potential values referenced therein are of no evidentiary value whatsoever with respect to proving up an equity cushion for adequate protection purposes.

**B.**     <u>**The Debtors' Projected Absence of Diminution in Cash During the Initial Budget Period Offers No Protection of the Prepetition Lenders' Interests Because the Budget Is Inaccurate, Freely Modifiable and Does Not Limit the Debtors' Proposed Cash Collateral Use.**</u>

While difficult to ascertain from the Motion, it appears the Debtors are also arguing that the Prepetition Lenders' interests are adequately protected because the Budget contemplates no diminution in cash during the first thirteen weeks of these cases.  <u>See</u> Motion at 7.  As demonstrated below, any purported "protection" offered by the Budget is illusory, and thus, cannot possibly constitute adequate protection under Section 363(c) of the Bankruptcy Code.

First, the Debtors' Prayer For Relief requires only that the Debtors use the Prepetition Lenders' cash collateral "generally as contemplated by the Budget as it is from time to time amended, and as otherwise contemplated by such Orders as the Court may hereafter enter."  <u>See</u> <u>id</u>. at 11.  Consequently, if the Court were to grant such relief, the Debtors would be free to, among other things: (i) expend cash in ways, and in amounts, that are not actually included in the Budget so long as such expenditures were "generally as contemplated" by the Budget; (ii) use cash collateral without any limitation and for an indefinite period of time following the initial thirteen week period covered by the Budget; (iii) use cash for any purpose later approved by the Court without any ability of the Prepetition Lenders to receive further adequate protection for such use; and (iv) amend the Budget in any manner whatsoever in their sole discretion without any need for further Court order or consent of the Prepetition Lenders.  In other words, the Debtors are asking this Court to authorize an unlimited use of the Prepetition Lenders' existing and future cash collateral, including cash proceeds of other Collateral, for an indefinite period of time without any

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 16 of
26

Budget controls whatsoever and without any need to provide any adequate protection to the Prepetition Lenders other than the meaningless "protections" described in the Motion.[10]  Because the Budget is meaningless to the Debtors' proposed cash collateral usage, its projections cannot constitute adequate protection even if they prove to be accurate and complete (which they are not, as explained below).

Second, the cash projections contained in the Budget that purport to show no diminution in cash during the first thirteen weeks of these cases are grossly overstated.  The Budget as written shows almost no change in cash collateral between week one and week thirteen.  See Budget (comparing "Change in Cash Collateral" of $635,947 for week ending February 13, 2011 to "Change in Cash Collateral" of $834,718 for week ending May 8, 2011); Motion at 7.  However, these cash projections include $525,000 of proceeds from future sales of the Prepetition Lenders' other Collateral.  See Budget ("Asset Sale Proceeds" line item for weeks ending March 20, 2011, April 3, 2011 and April 24, 2011, respectively).  These cash proceeds are highly speculative at best given that the Debtors (i) have not obtained, or even sought, Court approval for the sales, and (ii) would not be permitted to expend such proceeds in any event without the consent of the Prepetition Lenders or further Court order approving such use and granting additional adequate protection to the Prepetition Lenders.  See, e.g., In re Los Gatos Hotel Corp., Case No. 10-63135 (Bankr. N.D. CA Jan. 11, 2011) (debtor not permitted to use cash collateral derived from the sale of assets outside of the ordinary course of business); In re Tripath Technology, Inc., Case No. 07-50358 (Bankr. N.D. CA Mar. 28, 2007) (segregating proceeds of sales outside of the ordinary course of business and holding that liens on such proceeds attach in the same order that liens attached to assets sold).  After subtracting out the $525,000 in asset sale proceeds, the Budget shows a cash diminution of $326,229.  See Budget (subtracting $525,000 from $834,718 ending "Change in Cash Collateral," then subtracting that difference from the $635,947 beginning "Change in Cash Collateral" figure).

---

[10]  The Prepetition Lenders have been kept in the dark with respect to the exact terms of the relief that the Debtors will seek at the Final Hearing.  Despite repeated requests from the Agent, the Debtors have not circulated a proposed form of Final Order, in violation of Bankruptcy Rule 4001(b)(1)(A).

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 17 of 26

Notwithstanding the Debtors' assertion that the Prepetition Lenders have an equity cushion in excess of $10 million, the Budget also does not include any adequate protection payments or payments of postpetition interest or fees to the Agent and Prepetition Lenders. See Budget ("Interest Payments to Lenders" line item showing total of zero). The Prepetition Lenders' right to receive such payments is mandated by Section 506(b) to the full extent of any equity cushion. See 11 U.S.C. § 361 (permitting cash payments to satisfy the requirements of Section 363(c)); id. § 506(b) ("To the extent that an allowed secured claim is secured by property the value of which, after recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or Statute under which such claim arose."). The Debtors' monthly interest cost at the default rate specified in the Prepetition Credit Agreement (which is the same rate that was charged prior to the Petition Date) is roughly $304,000 and the Agent's monthly professional costs will likely be in excess of $100,000 given the Debtors' apparent desire to pursue a fully contested bankruptcy. See Agent Declaration ¶ 4. If you add the roughly $1.2 million of interest and fees that are payable during the first thirteen weeks of the cases, the Budget would then show an aggregate cash diminution of over $1.526 million over such period. See id.

Third, the Budget attached to the Motion does not necessarily reflect all of the disbursements that the Debtors intend to make during the first thirteen weeks of these Cases. The Debtors circulated a revised Budget on March 1, 2010 (the "**Revised Budget**").[11] See Agent Declaration ¶ 18. While the Prepetition Lenders have not had a chance to analyze fully the Revised Budget and their attempts to discuss it with the Debtors have thus far been rebuffed, the Revised Budget, among other things, lists expenses of approximately $240,000 for "Store Closure Costs" that were not listed in the original Budget. In addition, the Debtors increased, without explanation, their expected cash receipts during the thirteen week period from approximately $26.7 million in the Budget to approximately $28.9 million in the Revised

---

[11] For the avoidance of doubt, the Prepetition Lenders have not consented to any amendment to the Budget as required under the Interim Order and the Extension Order in the absence of express Court approval.

Case: 11-41431 Doc# 125 Filed: 03/02/11 Entered: 03/02/11 15:00:06 Page 18 of 26

Budget. At a minimum, the Revised Budget demonstrates the inherent speculative nature of the Debtors' budgeting.

For the foregoing reasons, the Debtors' projection of no cash diminution in the Budget is inaccurate, or at the very least is so highly speculative that it cannot constitute adequate protection under Section 363(c). As a bankruptcy court in this Circuit recently stated, "[t]he concept of adequate protection was designed to '*insure* that the secured creditor receives the value for which he bargained.'" See In re Pacific Lifestyle, 2009 Bankr. LEXIS 711 at *10. (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 53, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5839) (additional citations omitted) (emphasis in the original). The Debtors' Budget, which does not have to be complied with, can be freely modified by the Debtors in any event and significantly understates the Debtors' cash burn over the first thirteen weeks of these cases, cannot possibly provide the Prepetition Lenders the "insurance" against diminution in value required by Section 363(c).

## C. Replacement Liens on Only "Like-Kind" Collateral Do Not Provide Any Additional Protection of the Prepetition Lenders' Interests in Cash Collateral.

Surely recognizing the weakness of their other adequate protection arguments, the Debtors offer as an additional form of adequate protection replacement liens on Collateral generated from and after the Petition Date (except for causes of action arising under Chapter 5 of the Bankruptcy Code) solely to the same nature, extend, validity and enforceability as the Agent's prepetition liens on such Collateral. See Motion at 8; Omnibus Declaration ¶ 42. The purpose of adequate protection is to protect secured parties against diminution in the value of their collateral and to preserve the value for which they bargained prior to bankruptcy. See Swedeland, 16 F.3d at 564. Because the grant of security in favor of the Prepetition Lenders covers substantially all of the Debtors' assets and all proceeds thereof,[12] Section 552(b)(1) of the

---

[12] The Debtors acknowledge that the Prepetition Lenders' liens encumber substantially all of the assets of each Debtor. See Omnibus Declaration ¶ 40. The Guaranty and Security Agreement between the Agent and the Debtors, dated as of February 28, 2007, provides, in pertinent part, that the Agent has a lien on and security interest in substantially all assets of the Debtors "now owned or at any time hereafter acquired by a [Debtor] or in which a [Debtor] now has or at any time in the future may acquire any right, title or interest . . . and to the extent not otherwise included, all proceeds of the foregoing . . ."

LATHAM&WATKINS LLP CH\1224480.14
ATTORNEYS AT LAW
LOS ANGELES

15

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 19 of 26

Bankruptcy Code confirms that the Agent's prepetition liens extend to postpetition Collateral. See 11 U.S.C. § 552(b)(1) ("Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to the property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement . . . ."). Merely replacing the Agent's prepetition liens with postpetition liens on the very same Collateral provides no additional protection against diminution in the value of the Collateral subject to such prepetition liens. Offering a secured creditor what it is already entitled to does not constitute "adequate protection." See In re Pacific Lifestyle Homes, 2009 Bankr. LEXIS 711 at *29 (rejecting as adequate protection replacement liens on "like-kind" collateral); see also In re Swedeland, 16 F.3d at 565-67 (rejecting offers of continued personal guarantees and liens on sales proceeds as adequate protection where creditor was already entitled to such guarantees and liens).

In Pacific Lifestyle, the debtor proposed to use cash collateral to continue building homes, and offered the lenders current cash payments of interest and replacement liens solely on "like-kind" collateral as adequate protection for such use. See In re Pacific Lifestyle, 2009 Bankr. LEXIS 711 at *3. The court held that this adequate protection was insufficient because the lenders were already entitled to the funds from which the interest would be paid, the replacement liens did not provide any new liens on unencumbered assets, and the debtors' projections of financial health were speculative and unrealistic. Id. at 12-14. Here, like in Pacific Lifestyle, the Debtors do not propose to offer the Prepetition Lenders anything beyond what they already have under the Bankruptcy Code. Consistent with the requirements of Section 363(c) and the court's holding in Pacific Lifestyle, the Ninth Circuit and bankruptcy courts in this district have permitted replacement liens on assets which were not encumbered prepetition. See, e.g., In re Ctr. Wholesale, Inc., 759 F.2d 1440, 1450 (9th Cir. 1985) (finding that the debtor failed to prove that it adequately protected the creditor's interest, and noting that "the protection

LATHAM&WATKINSLLP CH\1224480.14
ATTORNEYS AT LAW
LOS ANGELES

16

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 20 of
26

probably would have consisted of granting [creditor] a replacement lien in **other** [debtor] property.") (emphasis added); <u>In re Pacific Metro LLC</u>, Case No. 10-55788(RLE) (Bankr. N.D. CA, Jul. 27, 2010) (granting prepetition secured creditor a replacement lien on "like-kind" collateral plus a replacement lien on all unencumbered assets behind liens of DIP lender); <u>In re San Jose Airport Hotel</u>, Case No. 09-51045(RLE) (Bankr. N.D.CA, Feb. 23, 2009) (granting a replacement lien on all of debtor's postpetition collateral, except real property, chapter 5 causes of action and equipment in which there is a prior lien); <u>In re Kirkland Knightsbridge, LLC</u>, Case No. 06-10628(AJ) (Bankr. N.D. CA, Dec. 15, 2006) (replacement lien on additional assets is valid to the extent that the replacement lien on "like-kind" collateral insufficient); <u>In re Kirkland Cattle Co.</u>, Case No. 06-10630(AJ) (Bankr. N.D. CA, Jan. 5, 2007) (same).

Because replacement liens solely on Collateral already subject to the Agent's prepetition liens provide the Prepetition Lenders no additional protection against diminution in value, the Debtors' proposed grant of such liens does not satisfy the adequate protection requirements of Section 363(c).

## II. __The Prepetition Lenders Are Entitled to Cash Payments as Adequate Protection.__

As discussed above, the adequate protection package proposed by the Debtors is entirely illusory and provides the Prepetition Lenders with no protection, let alone adequate protection, from diminution in the value of their collateral. Moreover, because the Prepetition Lenders already have liens on substantially all of the Debtors' assets, replacement liens in unencumbered assets alone will not provide the Prepetition Lenders with anything close to adequate protection, particularly if avoidance actions and presently unencumbered real estate leases are excluded from such liens. Finally, the Debtors can provide the Prepetition Lenders with no other adequate protection that would give them the indubitable equivalent of their cash collateral. Thus, periodic cash payments are the only other avenue available to the Debtors to provide adequate protection to the Prepetition Lenders. When equity cushions, replacement liens and other forms of adequate protection are insufficient to protect an oversecured creditor's interests, cash payments of interest may be required to adequately protect the creditor. See <u>In re First Barnstable Corp.</u>, 108 B.R. 372, 377 (Bankr. D. Mass. 1989) (finding the proposed equity

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

cushion was not sufficient adequate protection and stating that "a minimum offer of adequate protection would have been the monthly payment of interest at the contract rate."); In re Double Eagle Construction, Inc., 188 B.R. 406, 410 (Bankr. W.D. Miss. 1995) ("since there is no dispute that [the secured creditor's] collateral, by its very nature, is depreciating, [secured creditor] is entitled to adequate protection payments. 11 U.S.C. § 362(d)(1)."); In re Cavanaugh L.P., 2009 WL 1525992 at *12 (Bankr. D. Mont. 2009) (lifting automatic stay where equity cushion insufficient to adequately protect secured creditor and debtor refused to make adequate protection payments); see also In re Murel Holding Corp., 75 F.2d 941 (2d Cir. 1935) (Judge Learned Hand stating that adequate protection "must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference . . .").

The Debtors assert that they have sufficient cash to make such payments. See Motion at 7; Budget. The Prepetition Lenders are willing to agree that such payments would be made on a provisional basis: that they would be applied to the payment rights set forth in Section 506(b) of the Bankruptcy Code only if the Prepetition Lenders are ultimately found to be oversecured by the Court; otherwise the payments would be recharacterized as principal repayments.

### III. The Debtors' Use of the Prepetition Lenders' Cash Collateral Should Be Conditioned Upon the Prepetition Lenders Receiving Adequate Protection Provided in the Prepetition Lenders' Proposed Form of Order.

For the reasons stated above, the Debtors' proposed adequate protection package does not satisfy the requirements of 11 U.S.C. § 363(c). However, the Agent and Prepetition Lenders are willing to consent to the use of their cash collateral in accordance with the following material terms and conditions, all of which will be incorporated into the Prepetition Lenders' Proposed Order.

Monthly cash adequate payments equal to accrued interest and fees. The Agent and Prepetition Lenders request adequate protection payments in an amount equal to interest on the obligations owed by the Debtors under the Prepetition Credit Facility on a monthly basis at the non-default contract rate, as well as the reasonable fees and expenses of the counsel and advisors for the Agent and Prepetition Lenders. The Prepetition Lenders agree that such payments would

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

18

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 22 of 26

be made on a provisional basis: that they would be applied to the payment rights set forth in Section 506(b) of the Bankruptcy Code only if the Prepetition Lenders are ultimately found to be oversecured by the Court; otherwise the payments would be recharacterized as principal repayments. The Prepetition Lenders will provide monthly invoices for payment of the reasonable fees, costs and expenses of the Prepetition Lenders and their professionals and, if no parties object after 15 days from receipt of such invoice, the Debtors will pay such invoice in a timely manner. The Agent and Prepetition Lenders reserve all rights with respect to the accrual, allowance and payment of the default rate of interest set forth in the Prepetition Credit Agreement and/or any compounding of interest permitted or required under the Prepetition Credit Agreement. See 11 U.S.C. § 506(b).

Replacement liens on all postpetition assets. The Agent, for the benefit of the Prepetition Lenders and the other "Secured Parties" under, and as defined, in the Prepetition Credit Agreement, request postpetition replacement liens on all prepetition and postpetition assets of the Debtors, exclusive of causes of action arising under Chapter 5 of the Bankruptcy Code and the Debtors' leases (but, for the avoidance of doubt, the replacement liens shall extend to proceeds of such leases). See, e.g., In re Pacific Lifestyle Homes, 2009 Bankr. LEXIS 711 at *29 (rejecting as adequate protection replacement liens on like-kind collateral because the debtor failed to "offer[] other unencumbered property that could be used to provide "an additional or replacement lien" to the Lenders."); In re San Jose Airport Hotel, LLC (providing replacement liens on all postpetition collateral, other than certain excluded collateral); In re Kirkland Cattle Company (providing replacement liens on all postpetition collateral to the extent of any diminution in value of the lenders' prepetition collateral); In re Kirkland Knightsbridge (same).

Termination of use of cash collateral. The Debtors' right to use cash collateral should terminate on April 3, 2011, unless extended upon the proper written consent of the Agent and Prepetition Lenders or by further order of this Court after notice and hearing. See, e.g., In re Pacific Metro LLC (ordering that use of cash collateral terminates on expiration of the budget unless continued by order of the court); In re San Jose Airport Hotel (ordering that use of cash collateral terminates on a set date and may be extended by order); In re Tripath Technology, Inc.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

19

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 23 of 26

(ordering that use of cash collateral terminates on expiration of the budget unless continued by order of the court).

    Compliance with Budget. The Debtors must comply with the Budget within a 10% variance from the Budget in the aggregate on a weekly basis, provided that for the line items for Debtors' counsel & advisors, committee counsel & advisors, asset sale proceeds, lease cure claims and ending cash balance, the Debtors may not exceed a 10% variance from the Budget on a weekly basis for each respective line item. See, e.g., In re Pacific Metro LLC (ordering that debtor may exceed any line item in the budget by 20% and may exceed the aggregate budget "for any period" by 10%); In re Asyst Technologies, Inc. Case No. 09-43246 (Bankr. N.D. CA May 21, 2009) (ordering that use of cash collateral permitted according to budget with 110% monthly variance from budget allowed, 115% weekly variance allowed, and unused amounts from a particular line item may roll over into the future for that line item); In re San Jose Airport Hotel, (ordering that cash may be used as set forth in order for two months after the petition date, and cash collateral may be used otherwise with the written consent of lender); In re Kirkland Knightsbridge, LLC (ordering that use of cash collateral subject to a budget with a 20% variance from certain line items, and aggregate expenditures may not exceed aggregate amount of budget without written approval by lender).

    Access and reporting requirements. The Debtors will continue to provide to the Prepetition Lenders the reporting and access set forth in the Interim Order, including weekly delivery of reconciliations of actual expenditures compared to the budget and reasonable access to the Debtors' information, records and personnel. The Debtors shall also provide to the Agent and Prepetition Lenders copies of all written expressions of interest, offers, agreements and the like for asset sales outside the ordinary course of business, including for the sale of the company as a going concern. See, e.g., In re Pacific Metro LLC; In re Asyst Technologies, Inc.; In re Kirkland Cattle Co.; In re Kirkland Knightsbridge, LLC.

    Termination of use of cash collateral upon violation of terms of Final Order. Upon a violation of the terms of this order by the Debtors, the Debtors' use of cash collateral will automatically terminate, except for employee-related expenses, including payroll, payment of

LATHAM&WATKINS LLP CH\1224480.14
ATTORNEYS AT LAW
LOS ANGELES

20

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 24 of 26

withholding taxes and workers' compensation payments, unless the Debtors obtain an order of this Court permitting the Debtors' continued use of cash collateral. See In re Pacific Metro LLC (after an event of default, debtor may continue to use cash collateral for employee related expenses subject to the budget through the end of the payroll period in which the event of default occurs); In re Kirkland Knightsbridge, LLC (use of cash collateral immediately ceases upon an event of default, except that debtor may pay payroll, payroll taxes and workers' compensation after event of default); In re Kirkland Cattle Co. (same).

Sale proceeds. The Debtors shall be prohibited from using proceeds of sales outside of the ordinary course of business (in all cases also subject to notice, a hearing and Court approval) without the written consent of the Prepetition Lenders or further order of the Court. See In re Tripath Technology, Inc.; In re Los Gatos Hotel Corp. (requiring segregation of proceeds of a sale outside of the ordinary course of business, and liens on those proceeds to attach in the order that liens attached to the assets sold or disposed).

Reservation of rights. The Agent and Prepetition Lenders shall have the right to seek additional adequate protection by further order of this Court if they believe the foregoing adequate protection proves insufficient to protect against diminution in value of the Prepetition Lenders' interests in their cash collateral.

**IV.   Reservation of Rights**

The Agent is continuing to analyze the Budget, the Revised Budget, other materials provided by the Debtors and the allegations made by the Debtors in the Motion. In addition, the Agent is continuing to have discussions with the Debtors and other interested parties in an effort to reach a reasonable resolution regarding the continued use of cash collateral. The Agent therefore reserves the right to modify or supplement this Objection.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

21

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 25 of
26

<div align="center">

**CONCLUSION**

</div>

WHEREFORE, Agent, on behalf of the Prepetition Lenders and other "Secured Parties" under, and as defined in, the Prepetition Credit Agreement, respectfully requests that this Court deny the Debtors' Motion, enter the Prepetition Lenders' Proposed Order and grant such other and further relief as this Court deems appropriate.

Dated:  March 2, 2011                    Respectfully Submitted,

_/s/ Gregory O. Lunt_
Gregory O. Lunt (CA Bar No. 173297)
LATHAM & WATKINS LLP
355 South Grand Avenue
Los Angeles, California  90071-1560
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
gregory.lunt@lw.com

BINGHAM McCUTCHEN LLP
William Bates (CA Bar No. 063317)
1900 University Avenue
East Palo Alto, CA 94303-2223
Telephone: (650) 849.4400
Facsimile: (650) 849.4800
bill.bates@bingham.com

*Attorneys for General Electric Capital Corporation, as Agent*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CH\1224480.14

22

OBJECTION TO DEBTORS' MOTION FOR ORDER
AUTHORIZING USE OF CASH COLLATERAL

Case: 11-41431    Doc# 125    Filed: 03/02/11    Entered: 03/02/11 15:00:06    Page 26 of
26