1  KAROL K. DENNISTON (Bar No. 141667)
   kdenniston@bhfs.com
2  JULIA W. BRAND (Bar No. 121760)
   jbrand@bhfs.com
3  BRENDAN P. COLLINS (Bar No. 260260)
   bpcollins@bhfs.com
4  **BROWNSTEIN HYATT FARBER SCHRECK, LLP**
   2029 Century Park East, Suite 2100
5  Los Angeles, CA  90067
   Telephone:    (310) 500-4600
6  Facsimile:    (310) 500-4602

7  Proposed Counsel for the Official Committee of
8  Unsecured Creditors

9                     UNITED STATES BANKRUPTCY COURT

10                    NORTHERN DISTRICT OF CALIFORNIA

11                          OAKLAND DIVISION

   In re                          | Case Nos.  11-bk-41431-RLE-11
12                                 |
   ROUND TABLE PIZZA INC.          | (Jointly Administered with Case Nos. 11-41432-
13                                 | RLE, 11-41433-RLE, and 11-41434)
                   Debtor.         |
14                                 | Chapter 11
15                                 | **THE OFFICIAL COMMITTEE OF
                                   | UNSECURED CREDITORS' RESPONSE
16                                 | TO DEBTORS' MOTION FOR ORDER
                                   | AUTHORIZING USE OF CASH
17                                 | COLLATERAL**
18                                 | Date**:**     March 11, 2011
                                   | Time**:**     10:30 A.M.
19                                 | Place:      United States Bankruptcy Court
                                   |             1300 Clay Street, 2nd Floor
20                                 |             Oakland, California
                                   | **Judge:     The Hon. Roger Efremsky**
21

22

23          The Official Committee for Unsecured Creditors (the "Committee") respectfully submits the

24  following Response to the Debtors' Motion for Order Authorizing Use of Cash Collateral (the

25  "Cash Collateral Motion" (Dkt. # 6)).

26

27

28

# I. INTRODUCTION

Since its appointment the Committee has reached out to the Debtors, the Debtors' secured lender ("Lender") and various landlords and their respective counsel to try to bridge a variety of disputes that arise under and relate to the Debtor's use of cash collateral. After multiple telephone conversations with these parties and their counsel and a lengthy meeting with the Debtors and their counsel, it is the Committee's position that the parties are in need of serious reality testing. The Committee does not want to see this case default into litigation, there is simply not enough liquidity for a prolonged cash collateral dispute or protracted disputes with creditors or landlords.

First and foremost, any decision on a final cash collateral order should to be delayed until the Debtors have produced sufficient information for the Committee to determine whether and what cash collateral may be subject to the secured creditor's lien. The Committee has started this review, but has not completed it. Moreover, neither the Debtors nor the Lender have produced financial evidence to establish whether the Lender is adequately protected or not. At this juncture the Committee is unable to make any determination on this issue because the financial analysis has not been provided by either party.

Second, the Debtors have advised the Committee of volatility with its initial projections ranging from 10% to 300%. This suggests that the Debtor's budgeting process needs to be reviewed and explored so that any final cash collateral order that is entered is one which the Debtors have a reasonable chance of complying with on an ongoing basis. In any event, there is a significant amount of work that must to be done to establish whether the Debtors have provided reasonable and necessary information to provide for final cash collateral use.

Third, and more importantly, the Debtors conducted an extensive sale process prior to the filing of this case. The Debtors created a due diligence e-room for potential buyers which contains the bulk of the information the Committee and the Lender need to determine whether and what agreements can and should be made as to cash collateral, stub rent, lease rejections and contract assumption. None of these decisions can be made in a vacuum and this is exactly the situation that the Committee is facing at this point. The Committee has requested that the Debtor either open the due diligence e-room or provide the Committee with the non-privileged information in the e-room

so the Committee and it's financial advisor can review and provide the support to the Debtors that the Committee would very much like to be in a position to provide. Despite verbal assurances that the Debtors will provide this information, the Debtors have not agreed to provide access to the due diligence e-room or provide the Committee with non-privileged documents. The Committee has offered to set up an e-room accessible to parties in the case and to work with both the Debtors and the Lender to efficiently manage the exchange of information this case requires. It is the Committee's desire that this case proceed on an efficient basis with the parties working together to determine the best exit for the Debtors. As of the filing of this response, the Lender has agreed to work on a cooperative basis with the Committee on the gathering and exchange of financial and operating information, the Debtors have not.

Finally, as noted in various pleading, the Debtor does not yet have a plan to exit this case. The Debtor vaguely states that it will either reorganize or initiate a sale process. While the Committee appreciates that the exclusivity period will remain in place until June 9, 2011 this Debtor's cash flows and the current disputes regarding cash collateral mandate that the Debtor, the Committee and the Lender gather sufficient operating and valuation information as quickly as possible to determine whether it is even realistic for the Debtor to pursue a reorganization or whether it is in the best interest of this estate to prepare for and pursue sale under section 363.

Indeed, the need for accurate and complete disclosure of financial and operating information is evident in the Debtors' request to use cash collateral. In the Debtors' Reply (Dkt. #149), the Debtors admit that there are wide variances on a weekly basis between their projections and actual operating results (Reply, p.10). The Committee needs the opportunity to review the projections and the assumptions underlying the projections with respect to this variance. In addition, there is a broad disagreement between the Debtors and the Lender on the value of the business and the existence of an equity cushion. No evidence of value has been presented on this issue. The Committee needs the opportunity to investigate these issues and the Court requires competent evidence before any determination on value or the existence of an equity cushion can be made. As a result, the Committee requests that the Court order the continued use of cash collateral on an interim basis for a six week period on the same terms as provided in the prior interim orders to

1  allow the Committee and its professionals to investigate these issues and work with the other

2  constituencies in the case to attempt to reach a negotiated resolution of the cash collateral issues or,

3  if necessary, to allow for an evidentiary hearing on the issue of value.

4  II.      USE OF CASH COLLATERAL SHOULD BE AUTHORIZED ON AN INTERIM BASIS

5          The Lender has objected to use of cash collateral and has demanded additional adequate

6  protection in the form of (i) cash adequate protection payments equal to accrued interest and

7  attorneys' fees; (ii) replacement liens on all post-petition assets, including the proceeds of leases;

8  (iii) termination of the use of cash collateral on April 3, 2011; (iv) compliance with the budget; (v)

9  access and reporting requirements as provided in the interim orders entered by the Court; (vi)

10  termination of use of cash collateral upon violation of the terms of the Court's order; and (vii)

11  restriction on the Debtors' ability to use proceeds of the sale of assets outside the ordinary course of

12  business.  The Committee objects to the Lender's request for adequate protection payments of

13  interest and attorneys' fees.  The Court has not made a determination as to the extent or value of the

14  Lender's collateral and, indeed, neither the Debtors nor the Lender have presented evidence as to

15  such value and the existence or non-existence of an equity cushion.  To the extent this is an issue, an

16  evidentiary hearing will be required.  For the same reason, it is inappropriate at this time to extend

17  the replacement lien beyond that provided in the interim order to assets in which the Lender did not

18  previously have a lien.  Further, no adequate protection payments should be made on account of the

19  attorneys fees of the Lender as the Lender has not provided any evidence as to the amount or

20  reasonableness of their claim.  The Lenders are represented by two firms notwithstanding the fact

21  that GE Capital Corporation is the agent under the Debtors' Credit Facility and is empowered to act

22  on behalf of the Lenders pursuant to that facility.  Thus, to the extent such fees should be payable at

23  all, which the Committee opposes at this time, the estate should not be paying for two sets of

24  counsel for the Lenders.

25          The Committee believes that it is appropriate for the Debtors to comply with their Budget

26  during the term of the use of cash collateral and the Committee requests that the Order provide that

27  the Committee be provided with the same reporting that is provided to the Lender.  The Committee

28  believes that it is appropriate to extend the use of cash collateral for six weeks to enable the

1  Committee and its financial advisors to obtain information from the Debtors to analyze the Debtors'

2  financial position and to work with the Debtors and the Lender to reach agreement on a business

3  solution to the case.

4

5  Dated:  March 9, 2011                    **BROWNSTEIN HYATT FARBER SCHRECK, LLP**

6

7                                   By:     /s/ Julia W. Brand
                                            KAROL K. DENNISTON
8                                           JULIA W. BRAND
                                            BRENDAN P. COLLINS
9                                           *Proposed* Counsel for the Official Committee of
                                            Unsecured Creditors

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28