MCNUTT LAW GROUP LLP
SCOTT H. MCNUTT (CSBN 104696)
SHANE J. MOSES (CSBN 250533)
MARIANNE M. DICKSON (CSBN 249737)
188 The Embarcadero, Suite 800
San Francisco, California 94105
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

MICHAEL ST. JAMES (CSBN 95653)
ST. JAMES LAW, P.C.
155 Montgomery Street, Ste. 1004
San Francisco CA 94104
Telephone: (415) 391-7566
Facsimile: (415) 391-7568

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>Round Table Pizza, Inc.,<br><br>Debtor. | Case No. 11-41431 RLE<br><br>(Jointly Administered with Case Nos. 11-41432 RLE, 11-41433 RLE, and 11-41434 RLE)<br><br>Chapter 11<br><br>**MOTION TO SELL EQUIPMENT FROM STORE NO. 101 OUTSIDE ORDINARY COURSE OF BUSINESS**<br><br>[No Hearing Unless Requested] |

Round Table Pizza, Inc., Round Table Development Company, The Round Table Franchise Corporation, and Round Table Pizza Nevada LLC, the jointly administered debtors and debtors-in-possession in the above captioned Chapter 11 reorganization cases (collectively, "Round Table" or the "Debtor"), hereby moves (the "Motion") for the entry of order authorizing the Debtor to sell the equipment from its recently closed location, Store No. 101 outside the ordinary course of business, to Round Table's franchisee, Bay Restaurants Management Group, Inc. ("BRMG").

## I. JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O). Authority to approve a sale exists pursuant to 11 U.S.C. § 363.

## II. FACTUAL BACKGROUND

**A.   Debtor's Background**

Round Table's first restaurant opened in Menlo Park, California in 1959. Over the past 50 years, Round Table has grown to dominate the Northern California market for pizza to become a major West Coast chain with nearly 500 stores in seven States, and to engage in international franchise development.

During the same period, Round Table diversified from acting exclusively as a franchisor to also operating company owned stores, ultimately acquiring and developing 140 company-owned stores and increasing its employee base from 70 to a peak of more than 3,000 employees.

During the decade prior to the Great Recession, Round Table enjoyed tremendous growth. Between 1997 and 2006, revenues grew from $15 million to $120 million per year, and operating profits grew from $4.3 million to $10.5 million. In February of 2007, Round Table obtained a new credit facility. Although Round Table restructured its business to adjust to the Great Recession, the terms of the credit facility could not be met by that restructured business. Efforts to renegotiate the terms of the credit facility were unsuccessful.

A fuller presentation of Round Table's background, the circumstances which led to the instant Chapter 11 filing, and Round Table's expectations regarding its reorganization is set forth in the DECLARATION OF J. ROBERT MCCOURT IN SUPPORT OF FIRST DAY MOTIONS filed on February 9, 2011 [Docket No. 13].

In connection with Round Table's Employee Stock Option Plan (the "ESOP"), an independent appraiser valued Round Table at $45 million approximately one year ago. Round Table engaged in marketing efforts immediately prior to the Petition Date, which confirmed a value in that range. General Electric Capital Corporation / Prudential Insurance of America

("GECC / Prudential") are owed $30 million in the aggregate, suggesting that Round Table should generate a significant recovery to creditors, and potentially a recovery to the ESOP which holds its equity as well.

**B.      Intended Reorganization**

There are two core aspects to Round Table's business: acting as a franchisor to independent third party owner-operators, and operating company-owned stores.

There are currently 355 franchised stores, with 148 franchisees. The franchise base is highly diversified: 91% of the franchisees own five stores or less, and only two franchisees own 20 to 25 stores. Management believes that the franchise segment of Round Table's business is sound, produces stable profits, and does not require material reorganization.

Round Table operates 128 company-owned stores. Although most of them are profitable, a number of the stores have been unable to operate profitably in the current economic environment, generating significant losses. Over the first four to six months of its Chapter 11 case, Round Table intends to close unprofitable stores and to renegotiate leases with respect to its marginal stores. Within four to six months, Round Table expects that its remaining base of company-owned stores will be stable and profitable.

Round Table expects to have maximized the value of the chain through store closings and lease renegotiations by the conclusion of the initial phase of its reorganization, after which it intends to complete its reorganization.

Round Table believes that problems in the economy and the credit industry make it impossible to realize an appropriate value for the company this year. Round Table has therefore proposed a Plan of Reorganization which restructures its debt so that it can operate successfully for a period of perhaps five years, by the conclusion of which it would expect to sell the business or refinance the debt. *See*, SUBMISSION OF INITIAL PLAN OF REORGANIZATION, Docket No. 401. (the "Initial Plan of Reorganization"). Round Table intends to finalize its Plan of Reorganization by early June, at which time it will embark on the Reorganization process. October 1, 2011 is Round Table's target Effective Date. Further information about Round Table's intended reorganization is presented in the Explanatory Statement accompanying its Initial Plan of

Reorganization, Docket No. 401.

**C.     Equipment Debtor Seeks to Sell**

Since the filing of it voluntary Chapter 11 petitions on February 9, 2011, Round Table has closed 21 of its company-owned stores and surrendered the premises to the landlords. Among these locations was Store No. 101, located in Albany, California. Round Table's franchisee, BRMG desires to re-open the store and purchase Store No. 101's furniture, fixtures, equipment, leasehold improvements, and the location's goodwill (the "Assets to be Sold") for $40,000. As the seller, Round Table will be subject to a $500 escrow fee, leaving a net amount of $39,500 for the estate. A list of the equipment as part of the Assets to be Sold to BRMG is attached hereto as **Exhibit A** (the "Equipment"). In addition to the sale proceeds, the transaction will result in a new franchised location that will bring additional income to the estate in the form of franchise royalties.

On average, the value of each store's equipment ranges from about $15,000 to $35,000 and factors that affect the value include age, condition, and whether or not the equipment is sold as a package. To remove and transport a store's equipment from a closed location on average about $5,000. If Round Table is unable to sell the Assets to be Sold to BRMG, then it would expect incur costs in removing and transporting the Equipment from Store No. 101 and at best may receive $30,000 in net proceeds from the sale of the Equipment.

### III.  RELIEF REQUESTED

Through this Motion, Round Table seeks authority to sell the Assets to be Sold outside the ordinary course of business to BRMG in the amount of $40,000.00.

### IV.  LEGAL AUTHORITY

Section 363(b) of the Bankruptcy Code empowers a debtor-in-possession to "sell . . . other that in the ordinary course of business, property of the estate." *See* 11 U.S.C. § 363(b). In addition, courts that have addressed the issue of a sale of all assets outside the ordinary course of business generally apply standards for court approval of such a sale. Most courts require a

"business justification" for the transaction.  In re Equity Funding Corp. of America, 492 F.2d 793 (9th Cir.), *cert. denied*, 419 U.S. 964 (1974) (sale of assets approved for "cause shown"); Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 19 (9th Cir. B.A.P. 1988) (there must be some articulated business justification for using, selling or leasing the property outside of the ordinary course of business).

"Bankruptcy court should have wide latitude in approving even private sale of all or substantially all of the estate assets not in ordinary course of business under [11 U.S.C.] § 363(b). However, each such proposed sale must be examined from its own facts to determine whether approval is justified." In re Ancor Exploration Co., 30 B.R. 802, 808 (N.D. Okla. 1983).

There is a sound business justification for the proposed sale. The purchase price is $40,000, which is materially in excess of the otherwise realizable value of the equipment. This sale will benefit the estate in bringing a higher than average sale price for the equipment, saving Round Table the cost of removing the equipment, and adding a new franchised location. Since the equipment is being sold in place and at a premium over market values, it is not likely that competitive bidding could be obtained. For the foregoing reasons, the sale of the Assets to be Sold to BRMG is in the best interests of the estate and its creditors.

## V. **CONCLUSION**

WHEREFORE, Round Table respectfully requests the Court for an order approving the sale of the Assets to be Sold outside the ordinary course of business to BRMG in the amount of $40,000.00 and any further relief the Court deems appropriate under the circumstances.

DATED: May 13, 2011                    McNUTT LAW GROUP LLP


By:         */s/ Marianne M. Dickson*
            Marianne M. Dickson
            Attorneys for Debtor