1 MCNUTT LAW GROUP LLP
SCOTT H. MCNUTT (CSBN 104696)
2 SHANE J. MOSES (CSBN 250533)
188 The Embarcadero, Suite 800
3 San Francisco, California 94105
Telephone: (415) 995-8475
4 Facsimile: (415) 995-8487

5 MICHAEL ST. JAMES (CSBN 95653)
ST. JAMES LAW, P.C.
6 155 Montgomery Street, Ste. 1004
San Francisco CA 94104
7 Telephone: (415) 391-7566
Facsimile: (415) 391-7568

9 Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>Round Table Pizza, Inc.,<br><br>Debtor. | Case No. 11-41431 RLE<br><br>(Jointly Administered with Case Nos. 11-41432 RLE, 11-41433 RLE, and 11-41434 RLE)<br><br>Chapter 11<br><br>**MOTION FOR ORDER EXTENDING EXCLUSIVE PERIOD IN WHICH ONLY THE DEBTOR MAY FILE A PLAN**<br><br>Judge: Hon. Roger Efremsky<br>Date: July 28, 2011<br>Time: 10:00 a.m.<br>Crtrm.: 1300 Clay Street<br>Courtroom 201<br>Oakland, California |

Round Table Pizza, Inc., The Round Table Franchise Corporation, Round Table Development Company, and Round Table Pizza Nevada LLC, the jointly administered debtors and debtors-in-possession in the above captioned Chapter 11 reorganization cases (collectively "Round Table" or the "Debtor"), hereby jointly move this Court for an order extending the time in which the Debtor has the exclusive right to file a plan of reorganization pursuant to 11 U.S.C. § 1121(d) (the "Motion"). In support of the Motion, Round Table respectfully represents as follows:

## I. JURISDICTION

This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper pursuant to 28 U.S.C. § 1408 and 1409. The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C §§ 157(b)(2)(A)(L) and (O). Authority for the relief requests exists pursuant to 11 U.S.C. §§ 105 and 1121.

## II. FACTS

**A. Debtor's Background**

Round Table's first restaurant opened in Menlo Park, California in 1959. Over the past 50 years, Round Table has grown to dominate the Northern California market for pizza to become a major West Coast chain with nearly 500 stores in seven States, and to engage in international franchise development.

During the same period, Round Table diversified from acting exclusively as a franchisor to also operating company-owned stores, ultimately acquiring and developing 140 company-owned stores and increasing its employee base from 70 to a peak of more than 3,000 employees.

During the decade prior to the Great Recession, Round Table enjoyed tremendous growth. Between 1997 and 2006, revenues grew from $15 million to $120 million per year, and operating profits grew from $4.3 million to $10.5 million. In February of 2007, Round Table obtained a new credit facility. Although Round Table restructured its business to adjust to the Great Recession, the terms of the credit facility could not be met by that restructured business. Efforts to renegotiate the terms of the credit facility were unsuccessful, leading to the instant Chapter 11 filing.

A fuller presentation of Round Table's background, the circumstances which led to the instant Chapter 11 filing, and Round Table's expectations regarding its reorganization is set forth in the DECLARATION OF J. ROBERT MCCOURT IN SUPPORT OF FIRST DAY MOTIONS filed on February 9, 2011 [Docket No. 13].

In connection with Round Table's MOTION TO APPROVE (1) APPOINTMENT OF DISCRETIONARY, INDEPENDENT, AND INSTITUTIONAL ESOP TRUSTEE (2) AMENDMENTS TO ESOP AND TRUST AGREEMENT ORGANIZATIONAL DOCUMENTS, AND (3) TO AFFORD ADMINISTRATIVE EXPENSE STATUS TO THE FEES AND COSTS OF THE ESOP TRUSTEE [Docket No. 380], Round Table demonstrated that its value likely exceeds all secured and unsecured claims, such that this case should generate a recovery to the ESOP which holds its equity as well.

**B.    Intended Reorganization**

There are two core aspects to Round Table's business: acting as a franchisor to independent third party owner-operators, and operating company-owned stores.

There are currently 355 franchised stores, with 148 franchisees. The franchise base is highly diversified: 91% of the franchisees own five stores or less, and only two franchisees own 20 to 25 stores. Management believes that the franchise segment of Round Table's business is sound, produces stable profits, and does not require material reorganization.

Round Table operated 128 company-owned stores. Although most of them are profitable, a number of the stores have been unable to operate profitably in the current economic environment, generating significant losses. Over the first four months of its Chapter 11 case, Round Table has closed unprofitable stores and renegotiated leases with respect to its marginal stores. The results of this effort have been dramatically favorable. Round Table has largely concluded its business reorganization, with the exception of a few stores whose leases may be rejected if suitable lease modifications are not finalized. Round Table expects that its remaining base of company-owned stores will be stable and profitable.

Round Table believes that it would be impossible to realize an appropriate value for the company this year. Round Table has therefore proposed a Plan of Reorganization which restructures its debt so that it can operate successfully for a period of five years, by the conclusion

of which it would expect to sell the business or refinance the debt. *See*, PLAN OF REORGANIZATION, DATED JUNE 9, 2011, Docket No. 523 (the "Plan"). Further information about Round Table's intended reorganization is presented in the DISCLOSURE STATEMENT TO ACCOMPANY PLAN OF REORGANIZATION DATED JUNE 9, 2011, Docket No. 524 (the "Disclosure Statement"). Approval of Round Table's Disclosure Statement was set for hearing on July 28, 2011. *See* NOTICE OF HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT, Docket No. 525.

At an unrelated hearing on July 13, 2011, the Court ruled that the Disclosure Statement hearing would be taken off calendar. Shortly thereafter, the principal parties in the case (the Debtor, GECC/ Prudential, the Creditors Committee, and the ESOP Trustee) commenced a judicially-supervised mediation to attempt to reach agreement on the terms of a consensual plan of reorganization.

### III. SUMMARY OF RELIEF SOUGHT

Through this Motion, Round Table seeks an extension, pursuant to § 1121(d), of the time period within which it has the exclusive right to file and seek authorization of a plan of reorganization. Debtor seeks an extension of the exclusivity period by 90 days, to November 6, 2011.

### IV. LEGAL AUTHORITY

**A. 11 U.S.C. § 1121(d) Permits This Court To Extend Debtors Exclusivity Period**

There is no question that this Court has discretion to extend the time in which Round Table has the exclusive right to seek acceptance of a plan. The Bankruptcy Code provides a debtor-in-possession under Chapter 11 with the initial exclusive right to propose a plan of reorganization. *See* 11 U.S.C. § 1121. Only the debtor may file a plan until 120 days after the date of the petition.[1] 11 U.S.C. § 1121(b). If the debtor files a plan within 120 days, the debtor's right to exclusivity continues to 180 days after the petition, in order to allow the debtor time to seek

---

[1] Although § 1121 refers to the date of the "order for relief," the filing of a voluntary petition constitutes the order for relief, pursuant to § 301(b) of the Bankruptcy Code.
218305.1  Case: 11-41431   Doc# 685   Filed: 07/22/11   Entered: 07/22/11 14:47:18   Page 4 of 11
4
MOTION FOR ORDER EXTENDING EXCLUSIVITY

acceptance and confirmation of its proposed plan. *See* 11 U.S.C. § 1121(c)(3). Thus, if the debtor has filed a plan within 120 days, another party in interest may file a plan only if: "the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan." Id.

These 120- and 180-day periods may be extended on the request of any party in interest. 11 U.S.C. § 1121(d). The operative portion of § 1121(d) reads: "…on request of a party in interest made within the respective periods specified… and after notice and a hearing, the court may for cause reduce or increase the the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d).

Although § 1121 provides that the exclusivity period may be extended "for cause," the Bankruptcy Code does not define "cause" or provide any specific standard. The legislative history of § 1121(d), however, reflects a Congressional intent to allow a debtor to remain in control of the bankruptcy process, while recognizing the legitimate interest of creditors in the debtor's case. *See* H.R. REP. NO. 95-595, 95th Cong. 1st Sess. 406 (1977); S. REP. NO. 95-989, 95th Cong. 2d Sess. 118 (1978). Thus, an extension should be based on some showing of probable success in confirming a plan. S. REP. NO. 95-989, 95th Cong. 2d Sess. 118 (1978).

The Courts have further interpreted the "cause" standard of § 1121(d) as a broad standard that allows the Court "maximum flexibility to suit various types of reorganization proceedings." In re Public Service Co. of New Hampshire, 88 B.R. 521, 534 (Bankr. D.N.H. 1988); *see* Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297 (W.D. Tenn. 1987) ("[t]he hallmark of [§ 1121(d)] is flexibility"). The courts have highlighted numerous factors that can be considered in evaluating whether to extend the exclusivity period. These include: (1) the size and complexity of the case; (2) the amount of time that has elapsed in the case; (3) the existence of good faith progress; (4) whether the debtor is paying its bills as they become due; (5) whether the debtor has demonstrated reasonable prospects of filing a viable plan; (6) the necessity of sufficient time for the debtor to negotiate a plan; (7) whether the debtor has made progress in negotiation with its creditors; (8) whether the debtor is seeking an extension in order to pressure creditors to submit to the debtor's reorganization demands; and (9) whether an unresolved contingency exists. In re

Express One International, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *see also* In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997). The Ninth Circuit Bankruptcy Appellate Panel has held that the one "transcendent" consideration is whether an extension of the exclusivity period will facilitate moving the case forward, and toward a fair and equitable resolution. In re Henry Mayo Newhall Memorial Hosp., 282 B.R. 444, 453 (9th Cir. B.A.P. 2002).

**B.    The Requested Relief Falls Within the Statutory Time Limits**

Round Table filed its Plan and Disclosure Statement on June 9, 2011, within the 120 days provided by § 1121(b). Round Table's exclusivity period therefore expires 180 days after the petition date, or August 8, 2011, unless modified by the Court.

In order to allow all parties ample time for review and comment, Round Table set the hearing for approval of its Disclosure Statement on July 28, 2011. Realistically, a hearing on confirmation of the Plan could not occur prior to early September 2011. Consequently, Round Table is seeking an extension of the exclusivity period for 90 days, to November 6, 2011. This date is well within the twenty month limitation set forth in § 1121(d)(2)(B), which would expire sometime in October 2012.

**C.    Good Cause Exists To Extend the Debtor's Exclusivity Period**

An evaluation of the factors identified above clearly shows that cause exists for extension of the exclusivity period.

   1.    Size and Complexity of the Case

Round Table believes that the size and complexity of this case clearly support an extension of exclusivity. While this is not a massive bankruptcy, it is large, with significant complexities. Courts have recognized that a colossal bankruptcy estate is not a prerequisite to justify an extension of the exclusivity period based on size and complexity. *See* In re United Press Int'l., 60 B.R. 265, 270 (Bankr. D.D.C. 1986) (granting an extension of the exclusivity period for a $40 million company); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 296 (W.D. Tenn. 1987) (finding that a case was sufficiently large to justify an extension where there were approximately 100 creditors holding 225 claims against the estate).

The size and complexity of the instant case supports the limited extension of exclusivity requested here. The Debtor's claims register lists approximately 1,200 creditors. The value of the company is discussed in detail in the Disclosure Statement, but is clearly sufficiently large to support the necessity of the relief.

The substantial number of creditors is indicative of the nature of the Debtor's business. Round Table has approximately 148 franchisees, who operate more than 350 franchised stores. Round Table operates more than 100 company-owned stores. In addition, the Debtor has established relationships with numerous vendors, suppliers, contractors, and service providers. Such connections are the primary basis for the complexities in administering the Debtor's estates as they necessitate review and analysis of numerous claims.

2. <u>Amount of Time Elapsed in the Case</u>

Fewer than five months have elapsed since Round Table filed is voluntary petitions, in which time it filed its Plan and Disclosure Statement. This is the Debtor's first request for an extension of exclusivity. The requested relief would extend exclusivity to November 6, or approximately nine months from the petition date. This is less than half of the maximum limit on exclusivity provided by the Bankruptcy Code. *See* 11 U.S.C. § 1121(d)(2)(B) (twenty month maximum).

3. <u>Existence of Good Faith Progress</u>

Round Table has made extensive progress in the case to date. At the time of its petition, Round Table operated 128 company-owned stores. Over the first four months of its Chapter 11 case, Round Table has closed unprofitable stores and renegotiated leases with respect to its marginal stores. The results of this effort have been dramatically favorable. Round Table has largely concluded its business reorganization. Round Table expects that its remaining base of company-owned stores will be stable and profitable. Management believes that the franchise segment of Round Table's business is sound, produces stable profits, and does not require material reorganization.

Further, Round Table has proposed a Plan and Disclosure Statement which provide for payment in full of all creditors. While Round Table's Disclosure Statement hearing has been taken

off calendar, good faith progress continues.  The Debtor has commenced a judicially-supervised mediation with the principal parties in the case to attempt to reach agreement on the terms of a consensual plan of reorganization.  This clearly represents substantial good faith progress in the case.

Finally, Round Table has consistently lived within its cash budget, and has filed is monthly operating reports in a timely fashion.

### 4. The Debtor Is Paying Its Post-Petition Bills as They Become Due

Round Table is consistently paying its post-petition bills as they come due.  The Debtor also remains current with its fees to the United States Trustee.  There is no question that this factor is satisfied.

### 5. The Debtor Has Demonstrated Reasonable Prospects of Filing a Viable Plan

There should be no question as to Round Table's ability to propose a viable plan.  Round Table has already filed its Plan.  As set forth in the Plan and Disclosure Statement, the Debtor has sufficient assets and cash flow to pay all creditors in full over time and still preserve some value for Round Table's ESOP.  The Plan and Disclosure Statement demonstrate that not only does the Debtor have reasonable prospects of filing a viable plan, but it already has done so.

Although various parties filed objections to its Plan and Disclosure Statement, Round Table submits that the existence of objections does not indicate an absence of reasonable prospects of filing a viable plan.  Indeed, the financial ingredients for a viable Plan have already been demonstrated, and the subject of the current mediation is simply the development of consensus around the treatment of the specific creditor classes.  Round Table submits that it is evident that a viable Plan can be filed.  *See* In re Express One, 194 B.R. at 100 (the factor is whether there is a reasonable prospect of filing a viable plan).

### 6. The Necessity of Sufficient Time for the Debtor to Negotiate a Plan

While Round Table has already filed its Plan and Disclosure Statement, additional time is necessary to allow time for both a confirmation hearing and negotiated solutions to any objections that are filed.  In order to allow all parties ample time for review and comment, Round Table set the hearing for approval of its disclosure statement on July 28, 2011.  Although the Court took that

hearing off calendar, the ensuing judicially-supervised mediation resulted in direct and constructive dialog and negotiations regarding the terms of a consensual Plan of Reorganization. It is appropriate that the Court extend exclusivity so that this dialog can lead to the submission of a revised Plan of Reorganization.

Round Table seeks a reasonable opportunity to solicit votes for its Plan and negotiate with objecting parties. Given the number of creditors, the size and complexity of Round Table's business and the course of the reorganization to date, there is clearly a need for adequate time to negotiate.

### 7. The Debtor Has Made Progress in Negotiations with Its Creditors

The Debtor has been actively involved in negotiations with GECC/Prudential and the Committee since the inception of its cases. The Debtor has recently provided extensive discovery to the Committee in response to a Rule 2004 request, and which information led to productive negotiations. Finally, the parties engaged in a full-day judicially-supervised mediation session on July 19, 2011, and the parties concluded that the effort was sufficiently constructive to warrant scheduling a second full-day session for July 26, 2011. Even where issues are contentious and progress slow, active involvement in negotiation supports extending exclusivity. *See* In re Dow Corning Corp., 208 B.R. at 665.

### 8. The Debtor Is Not Seeking an Extension In Order To Pressure Creditors

The requested extension of exclusivity is not for the purpose of improperly pressuring creditors. As discussed above, Round Table has filed its Plan within the time required, but the further exclusivity period is set to expire before Round Table could realistically obtain acceptance and confirmation of its Plan. There cannot be any reasonable contention that the extension is for the purpose of pressuring creditors.

### 9. There Are No Unresolved Contingencies

Generally speaking, the types of unresolved contingencies in question are those which are external to the case. *See* In re Dow Corning Corp., 208 B.R. at 665. Round Table is not aware of any such external contingencies. To the extent that the resolution of the pending motion to

1 appoint an examiner brought by GECC/ Prudential amounts to a contingency, it would arguably support a short extension of exclusivity. *See* id.

### D. The Requested Extension Will Facilitate Moving The Case Forward

The factors discussed above are all related to the "transcendent consideration" of whether extending Round Table's exclusivity will facilitate moving the case forward toward a fair and equitable resolution. *See* In re Henry Mayo, 282 B.R. at 453. This is not a case where the debtor has dragged its feet or failed to make meaningful progress. Rather, Round Table has made significant strides in reorganizing its business, which have culminated in filing a Plan and Disclosure Statement within 120 days of its petitions. The purpose of the relief requested is simply to allow Round Table reasonable time to seek acceptance of its Plan and negotiate with creditors, while protected from the interference of competing plans as contemplated by the Bankruptcy Code. *See* Matter of Homestead Partners, Ltd., 197 B.R. 706, 719 (Bankr. N.D. Ga., 1996) (Noting that "[t]he debtor's exclusive opportunity at plan formulation is a key element in the delicate balance struck by Congress to encourage the consensual development of reorganization plans.")

A key part of moving the case forward is allowing the Debtor adequate time to solicit votes and negotiate with creditors regarding its Plan. As the Second Circuit has stated: "In enacting the 1978 Code Congress… clearly indicated as one of its purposes that equity interests have a greater voice in reorganization plans-hence, the safeguards of disclosure, voting, acceptance and confirmation in present Chapter 11." *See* In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir.1983). Round Table does not believe that it is productive or appropriate for other parties to file competing plans before it has had a reasonable opportunity to negotiate consensual terms with its creditors, solicit votes for its Plan and present the Plan for confirmation. Round Table should have a reasonable time to solicit votes and negotiate with creditors without having the waters muddied by competing plans.

/ / /

/ / /

/ / /

## V. CONCLUSION

WHEREFORE, Round Table respectfully requests entry of an Order:

1. Granting the Motion;

2. Extending to November 6, 2011 (or such other date as the Court may hereafter order), the time during which the Debtor has the exclusive right to file a plan, pursuant to 11 U.S.C. § 1121.

3. For such other relief as the Court finds just and proper.

DATED: July 22, 2011                McNUTT LAW GROUP LLP

By:     /s/ *Shane J. Moses*
         Shane J. Moses
         Attorneys for Debtor