1  LATHAM & WATKINS LLP
   Gregory O. Lunt (CA Bar No. 173297)
2  355 South Grand Avenue
Los Angeles, California 90071-1560
3  Telephone: (213) 485-1234
Facsimile: (213) 891-8763
4  gregory.lunt@lw.com

5  BINGHAM McCUTCHEN LLP
   William Bates (CA Bar No. 063317)
6  1900 University Avenue
East Palo Alto, CA 94303-2223
7  Telephone: (650) 849.4400
Facsimile: (650) 849.4800
8  bill.bates@bingham.com

9  *Attorneys for General Electric Capital Corporation,*
*as Agent*
10

11  **UNITED STATES BANKRUPTCY COURT**

12  **NORTHERN DISTRICT OF CALIFORNIA**

13  **OAKLAND DIVISION**

| 14 | In re | CASE NO. 11-41431 (RLE) |
|----|-------|--------------------------|
| 15 | **ROUND TABLE PIZZA, INC.,**[1] | Chapter 11 (Jointly Administered) |
| 16 | | **OBJECTION OF GENERAL ELECTRIC** |
| 17 | | **CAPITAL CORPORATION, AS AGENT ON BEHALF OF THE PREPETITION** |
| 18 | Debtors. | **SECURED LENDERS, TO MOTION FOR ORDER EXTENDING EXCLUSIVE PERIOD** |
| 19 | | **IN WHICH ONLY THE DEBTOR MAY FILE A PLAN** |
| 20 | | |

| | | |
|---|---|---|
| 21 | Date: | July 28, 2011 |
| | Time: | 10:00 a.m. |
| 22 | Place: | U.S. Bankruptcy Court |
| | | 1300 Clay Street, Ctrm. 201 |
| 23 | | Oakland, CA |
| | Judge: | Hon. Roger L. Efremsky |

24

25

26

27

---

28  [1] The Debtors in these chapter 11 cases are Round Table Pizza Inc., Round Table Development Co., The Round Table Franchise Corp. and Round Table Pizza Nevada, LLC.

Case: 11-41431   Doc# 705   Filed: 07/27/11   Entered: 07/27/11 23:42:33   Page 1 of 22

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. PRELIMINARY STATEMENT .............................................................................. 1

III. FACTUAL BACKGROUND .................................................................................. 3

    A. General Background ..................................................................................... 3

    B. The Secured Lenders' Proposed Plan ........................................................... 6

IV. ARGUMENT ......................................................................................................... 7

    A. The Debtors Cannot Show "Cause" ............................................................. 8

        1. The Size And Complexity Of The Cases Do Not Merit An Extension Of Exclusivity ..................................... 9

        2. The Amount Of Time Elapsed Does Not Support An Extension ........................................................................... 11

        3. The Debtors Have Failed To Make Good Faith Progress And Lack Reasonable Prospects For Filing A Viable Plan ............................................................... 11

        4. The Debtors Are Not Paying Their Debts As They Come Due ............................................................................ 14

        5. The Debtors Are Seeking To Extend Exclusivity In Order To Pressure The Secured Lenders .................................... 15

        6. No Unresolved Contingencies Exist ........................................... 16

        7. The Totality Of The Circumstances............................................. 16

    B. The Lender Plan Will Facilitate A Fair and Expeditious Conclusion To The Cases .............................................................. 17

V. CONCLUSION..................................................................................................... 18

LATHAM&WATKINS LLP LA\2285336.5
ATTORNEYS AT LAW
LOS ANGELES

OBJECTION TO DEBTORS' MOTION FOR
AN EXTENSION OF ECLUSIVE PERIODS

Case: 11-41431     Doc# 705     Filed: 07/27/11     Entered: 07/27/11 23:42:33     Page 2 of
22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Century Glove, Inc. v. First American Bank*,
    860 F.2d 94 (3rd Cir. 1988) ............................................................................. 18

*In re Adelphia Communications Corporation*,
    352 B.R. 578 (Bankr. S.D.N.Y. 2006) ...................................................... 9, 10, 16

*In re All Seasons Industries, Inc.*,
    121 B.R. 1002 (Bankr. N.D. Ind. 1990) ................................................ 8, 9, 15, 18

*In re Curry Corporation*,
    148 B.R. 754 (Bankr. S.D.N.Y. 1992) ................................................................. 9

In re Davis,
    262 B.R. 791, 794 (fn. 5) (Bankr. D. Ariz. 2001) ............................................. 18

*In re Dow Corning Corp.*,
    208 B.R. 661 (Bankr. E.D. Mich. 1997) ..................................................... 10, 17

*In re Express One International, Inc.*,
    194 B.R. 98 (Bankr. E.D. Tex. 1996) ......................................................... 10, 12

*In re Gibson & Cushman Dredging Corp.*,
    101 B.R. 405 (E.D.N.Y. 1989) ............................................................................ 7

*In re Grossinger's Associations*,
    116 B.R. 34 (Bankr. S.D.N.Y. 1990) ................................................................ 19

*In re Henry Mayo Newhall Memorial Hosp.*,
    282 BR 444 (9th Cir. Bap. 2002) ............................................................... 10, 17

*In re Lake in the Woods*,
    10 B.R. 338 (E.D. Mich. 1981) ......................................................................... 16

*In re McLean Industries, Inc.*,
    87 B.R. 830 (Bankr. S.D.N.Y. 1987) ................................................................. 8, 9

*In re Parker Street Florist & Garden Center, Inc.*,
    31 B.R. 206 (Bankr. D. Mass. 1983) .................................................................. 9

*In re Public Service Company of New Hampshire*,
    88 B.R. 521 (Bankr. D.N.H. 1988) ............................................................... 8, 12

*In re Public Service Company of New Hampshire*,
    99 B.R. 155 (Bankr. D.N.H. 1989) .................................................................. 19

LATHAM&WATKINS LLP   LA\2285336.5
ATTORNEYS AT LAW
LOS ANGELES

OBJECTION TO DEBTORS' MOTION FOR
AN EXTENSION OF ECLUSIVE PERIODS

*In re R.G. Pharmacy, Inc.,*
    374 B.R. 484 (Bankr. D. Conn. 2007) ................................................................. 15

*In re Sharon Steel Corporation,*
    78 B.R. 762 (Bankr. W.D. Pa. 1987) .................................................................. 16

*In re Southwest Oil Company of Jourdanton, Inc.,*
    84 B.R. 448 (Bankr. W.D. Tex. 1987) ........................................................ passim

*In re Timbers of Inwood Forest Association, Ltd.,*
    808 F.2d 363 (5th Cir. 1987), *aff'd*, 484 U.S. 365 (1988) ............................... 8, 18

*In re Tony Downs Food Company,*
    34 B.R 405 (D. Minn. 1983) ............................................................................. 19

*In re Tripodi,*
    2005 Bankr. LEXIS 1981 (Bankr. D. Conn. Feb. 18, 2005) ............................. 15

*In re Washington-St. Tammany Electric Cooperative, Inc.,*
    97 B.R. 852 (E.D. La. 1989) ............................................................................. 12

**STATUTES**

11 U.S.C. § 1121 ............................................................................... 7, 8, 11, 17

11 U.S.C. § 1121(a) ..................................................................................... 7

11 U.S.C. § 1121(b) ............................................................................... 5, 11

11 U.S.C. § 1121(c)(3) ................................................................................. 7

11 U.S.C. § 1121(d) ..................................................................................... 8

**RULES**

Bankruptcy Rule 3016(b) ............................................................................. 1

Local Bankruptcy Rule 9014-1(c) ................................................................. 1

**OTHER AUTHORITIES**

H.R. Rep. No. 95-595 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963 ............................ 7

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
LOS ANGELES

LA\2285336.5

iv

OBJECTION TO DEBTORS' MOTION FOR
AN EXTENSION OF ECLUSIVE PERIODS

Case: 11-41431   Doc# 705   Filed: 07/27/11   Entered: 07/27/11 23:42:33   Page 4 of 22

# I.     INTRODUCTION

Once again, these Debtors can't follow the rules. In April, they filed a plan without a proposed disclosure statement, violating Bankruptcy Rule 3016(b). On July 1, they filed an *ex parte* application to have an examiner appointed, violating Local Bankruptcy Rule 9014-1(c). Now they have filed their *Motion for Order Extending Exclusive Period in which Only the Debtor May File a Plan* [Docket No. 685] (the "Motion") on six days' notice, without requesting an order shortening time.[2]

The Committee (defined below) requested a continuance of the hearing on the Motion. The Debtors have refused that request. See Exhibit B hereto. General Electric Capital Corporation, the agent (the "Agent") for the Debtors prepetition secured lenders (the "Secured Lenders"), therefore addresses below the Motion on the merits.

An introductory word is in order because the Agent's motion to appoint an examiner is set for hearing on the same calendar as the Motion. The Agent filed its motion over a month ago, and the Debtors' exclusivity period then had concomitantly longer to run. Exclusivity is now about to lapse, and the Agent believes it should not be extended. If it is not extended, the Agent intends to present its own plan to move these cases toward an exit. The Agent believes that road, unavailable earlier, will lead most efficiently to an exit. Therefore, the Agent asks that the Court take up its examiner motion only if it decides to extend exclusivity. In that case, the need for an external benchmark against which to test the Debtors' continued insistence that their businesses cannot be sold (and therefore should not be valued by the market) will be as great as it ever was.

# II.     PRELIMINARY STATEMENT

The Debtors have squandered their exclusive right to obtain acceptances to a plan of reorganization. They have used their exclusivity, not to foster consensus around an appropriate exit, but as a sword to try and stifle the Secured Lenders' involvement in the outcome of these cases:

---

[2]   The Debtors' reliance on section 105(d) for failing to comply with the notice requirements of the Local Bankruptcy Rules is misplaced. Section 105(d) does not provide a basis for parties to file a motion requiring notice and a hearing (see 11 U.S.C. § 1121(1)(1)) on shortened time without first obtaining leave of the court.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

- they filed a plan before having any discussions with their primary creditor constituencies;

- they refused to budge from the general framework of that plan notwithstanding opposition from both the Secured Lenders and the Official Committee of Unsecured Creditors appointed in these cases (the "Committee");

- they have not made any interest payments to the Secured Lenders or reimbursed any of their costs during these chapter 11 cases and lack the cash resources to pay such amounts on the anticipated effective date of their proposed plan (as a result, they propose to convert accrued interest and costs into principal);

- despite repeated requests from both the Secured Lenders and the Committee to consider a sale, the Debtors adamantly refused even to hire outside financial advisors or engage with the numerous prospective purchasers that have expressed an interest in acquiring the Debtors' business since the Petition Date;

- they used the filings accompanying the two plans that they have filed to date to attack and disparage the Secured Lenders and, to a lesser extent, the Committee, rather than to provide information to their creditors so that they could make an informed and independent decision about the plans;

- they filed a disclosure statement that was so far below the required standard that the Court vacated the hearing on it;

- they filed a self-serving motion for an examiner on an *ex parte* basis in direct violation of notice and hearing requirements for such relief; and

- they have adamantly insisted upon a recovery for equity even though they have provided no credible evidence of valuation.

The Debtors' actions have driven the parties further apart and threaten a contentious confirmation process with an outcome that is at best uncertain and which, if unsuccessful, could leave these estates administratively insolvent.

The Debtors had a reasonable and fair opportunity to formulate and negotiate a confirmable plan, and they wasted that opportunity. They now seek a "do over." Yet, they still intend to try to force through a plan that crams down the Secured Lenders. See *Debtor's Status Conference Statement* [D.I. 700] (the "Debtors' Statement"). The Secured Lenders should not be held hostage under the guise of exclusivity any longer.

The Secured Lenders are prepared to file their own plan, the major terms of which are described in Exhibit A. Allowing exclusivity to lapse so that the Secured Lenders can file their own plan will restore balance to these cases. The Debtors would still be free to pursue their new plan, but the Secured Lenders would no longer be prevented from proposing an alternative.

Stakeholders would have a real choice in determining the appropriate exit in these cases. At a minimum, competing plans would provide greater certainty of an expeditious conclusion to these cases since there would be a ready backup if one of the plans proved to be unconfirmable.

It is time that these cases move forward in a balanced and constructive manner. The Debtors had their shot to formulate and confirm a plan. It is time to give the Secured Lenders – the most significant economic stakeholder in these cases[3] – a similar opportunity. Accordingly, the Court should deny the Motion.

## III.    FACTUAL BACKGROUND

### A.    General Background

The Debtors filed these chapter 11 cases on February 9, 2011 (the "Petition Date"). Thereafter, the Debtors embarked on their "business reorganization," which encompassed closing certain unprofitable stores and renegotiating leases. See *Disclosure Statement to Accompany Plan of Reorganization Dated June 9, 2011* [Docket No. 524] (the "Disclosure Statement"), at 9:21-10:6. The Debtors largely completed this business reorganization during the first 8 weeks of the cases (i.e. by mid-April 2011). See *Submission of Initial Plan of Reorganization* [Docket No. 401] (the "Submission"), at 7:2-3.

The Debtors have not made any debt service payments to the Secured Lenders since November 2010. Nearly $3 million in interest has accrued on the loans, including more than $1.5 million since the Petition Date alone. Interest continues to accrue at approximately $300,000 a month. Thus, an additional $1.2 million will accrue between now and November 6, 2011, the date they propose for their extended exclusivity. The Debtors also are not paying any of the Lenders' reimbursable costs, including professional fees. These unreimbursed costs presently exceed $1 million, and will only increase in the coming months, particularly if there is a contested confirmation process. Based on the Debtors' own cash forecast, they would not have

---

[3]    Based on the Debtors' speculative and wholly unsubstantiated opinion that their value could be between $50 million and $60 million (see Disclosure Statement (defined below) at 10:20-22), the Secured Lenders' economic stake would be between 60% and 77% of the Debtors' total valuation (assuming the Secured Lenders' claims are between $36 million and $38.5 million). If the Debtors' valuation is less than $50 million, then the Secured Lenders' economic stake is greater, perhaps materially so. By way of comparison, under the Debtors' calculations, the Secured Lenders' claims are nearly five times greater than the aggregate estimated allowed unsecured claims. See Disclosure Statement at 13:16-22; 23:25-24:1.

1  sufficient cash to exit bankruptcy if they were required to pay these accrued amounts on the

2  effective date of a plan.[4]

3       On April 25, 2011, the Debtors filed their *Initial Plan of Reorganization* [Docket No.

4  401-1] (the "Initial Plan").  The Debtors filed the Initial Plan before having any discussions with

5  the Secured Lenders or the Committee regarding a potential exit strategy in the cases.  See

6  *Declaration of Gregory O. Lunt in Support of Motion of General Electric Capital Corporation,*

7  *as Agent, for Order Directing Appointment of Examiner Pursuant to 11 U.S.C. §§ 1104(c) to*

8  *Investigate a Sale of the Debtors' Business* [Docket No. 576] (the "Lunt Decl.") at ¶¶ 3, 4.  In

9  fact, the Debtors had told the Secured Lenders that such discussions would be premature until

10  after the Debtors had completed their business reorganization and prepared a cash forecast

11  through the end of 2011.  Id at ¶ 3.  Yet, the Debtors filed the Initial Plan three days before

12  providing the Secured Lenders with that cash forecast.  Id.  The Debtors also failed to provide

13  their unsupported five-year projections to the Secured Lenders prior to including them in the

14  Submission.

15       The Initial Plan proposed, among other things, a restructuring and five-year extension of

16  the Debtors' prepetition secured debt (including capitalizing accrued and unpaid interest, fees

17  and costs as of the plan effective date) at a below-market interest rate, payment of unsecured

18  claims over time without any definite payment schedule, retention of all equity in the Debtors by

19  the Debtors' employee stock ownership plan (the "ESOP") and payment of $866,000 in bonuses

20  to the Debtors' management on the plan effective date.  See Submission at 17:1-21:18; 26:13-14,

21  25-26; Initial Plan attached thereto.  The Debtors used the Submission, which was filed with the

22  Initial Plan,[5] to make a number of false, misleading and unsupported attacks on the Secured

23

24  --------------------------------

25  [4]  As of October 1, 2011, the Secured Lenders will be owed at least $5 million in accrued and unpaid interest and costs.  The Debtors' estimate effective date payments will be more than $3.6 million (not including proposed management bonuses).  See Disclosure Statement at p. 39 (Sched. A).  Thus, if the Debtors were to pay the

26  Secured Lenders accrued interest and costs on the effective date, the total amount of cash needed would be at least $8.6 million.  However, the Debtors' cash forecast shows that, before giving effect to any of these

27  payments, their cash balance will be $6.3 million (including $525,000 in sale proceeds that they have already agreed to turn over to the Lenders).  See Docket No. 418 at 3,4.

28  [5]  The Debtors failed to file a disclosure statement with the Plan in direct violation of Bankruptcy Rule 3016(b).

Case: 11-41431    Doc# 705    Filed: 07/27/11    Entered: 07/27/11 23:42:33    Page 8 of 22

Lenders.[6]  See Submission 3:25-5:7; 8:4-10:9; 11:11-15; 17:17-26.

Both the Secured Lenders and the Committee expressed deep concerns about the Initial Plan and requested that the Debtors explore other exit alternatives, such as a sale.  See Lunt Decl. at ¶¶ 6-7.  The Debtors refused those requests.  They also refused the Committee's repeated requests that they retain outside financial advisors.

The Debtors' initial exclusive period to file a plan under section 1121(b) of the Bankruptcy Code expired on June 9, 2011.  On that date, the Debtors filed the *Plan of Reorganization Dated June 9, 2011* [Docket No. 523] (the "Amended Plan") and the Disclosure Statement.  By filing the Amended Plan, the Debtors automatically extended their exclusive period to solicit acceptances of the Amended Plan (the "Exclusive Period") until August 8, 2011.

The Amended Plan made only limited and modest changes to the Initial Plan.  The Debtors used the Disclosure Statement to attack and disparage those opposed to the Amended Plan, including both the Secured Lenders and the Committee.[7]  See Disclosure Statement at 4:9-5:17, 7:14-9:18, 12:16-19, 12:27-13:14; 23:25-24:4.  The Secured Debtors, the Committee and the franchise owners' association objected to the Disclosure Statement.  See Docket Nos. 634, 635 and 636.  Among other things, they asserted that the Disclosure Statement described a plan that was inherently unconfirmable.[8]  Less than a week later, the Court vacated the hearing on the Disclosure Statement because the Disclosure Statement did not comply with the applicable statutory requirements.  See 7-14-2011 transcript at 10:12-12:30 (audio file).

Concerned about the status of these cases, the Court invited the Debtors, the Committee,

---

[6]  By way of example only, the Debtors failed to disclose in the Submission that they were in default under the pre-petition credit facility, that increases in interest rates and fees were made in response to the Debtors' deteriorating financial condition and their requests for amendments to the facility and that, even with the increases, the non-default interest rate was still less than the interest rate that was accruing on management's deferred compensation claims (11.89%) and the default interest rate was only 0.16% more than the interest rate on the deferred compensation claims.

[7]  For responses to these attacks, please see (i) *Official Committee of Unsecured Creditors' Objection to Debtors' Disclosure Statement to Accompany Plan of Reorganization Dated June 9, 2011 and Request for Evidentiary Hearing* [Docket No. 635] (the "Committee Disclosure Statement Objection") at 9:12-10:23 and (ii) *Objection of General Electric Capital Corporation, as Agent on Behalf of the Prepetition Secured Lenders, to Debtors' Disclosure Statement to Accompany Plan of Reorganization Dated June 9, 2011* [Docket No. 634] (the "Agent Disclosure Statement Objection").

[8]  At a hearing on July 14, 2011, the Court also expressed its preliminary view that the Amended Plan was not confirmable.  See 7-14-2011 transcript at 10:19-30 (audio file).

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2285336.5

5

OBJECTION TO DEBTORS' MOTION FOR
AN EXTENSION OF ECLUSIVE PERIODS

Case: 11-41431    Doc# 705    Filed: 07/27/11    Entered: 07/27/11 23:42:33    Page 9 of 22

the Secured Lenders and the recently-appointed trustee for the ESOP (the "ESOT") to mediate their differences regarding an appropriate exit for these cases.[9]  The parties held full-day mediation sessions with Judge William Lafferty on July 19 and July 26, 2011.  These mediation sessions failed to result in a consensus as to the appropriate exit strategy for these cases.

On July 22, 2011, the Debtors filed the Motion seeking to extend their Exclusive Period.  On July 27, 2011, the Debtors filed the Debtors' Statement which outlined the proposed terms of a new plan of reorganization.  Under these terms, junior stakeholder and management would be paid before the Secured Lenders, the Secured Lenders' claims would be extended for 36 months and the Secured Lenders would receive a below-market rate of interest.  The Debtors' Statement does not set forth the proposed amortization schedule for the Secured Lenders' claims, but based on the payment terms proposed for unsecured creditors and the proposed increased capital expenditure spending, it would appear that at most only nominal amortization payments will be made to the Secured Lenders prior to maturity.  Thus, among all creditors (including insiders), the Secured Lenders will bear the greatest risk tied to the Debtors' performance and future valuation.

**B.      The Secured Lenders' Proposed Plan**

The Debtors assert that they would not be able to realize an adequate purchase price for their business until at least mid-2012, when they are able to provide buyers with a full year of operating results that reflect their store-closing and lease renegotiating initiatives.  See Disclosure Statement at 10:17-20, 17:18-19, 18:18-21.  The Secured Lenders believe that this position is wrong.  See Agent Disclosure Statement Objection, Exhibit A at p. 21. The Secured Lenders continue to believe that a bankruptcy sale now is a viable exit in these cases and worth consideration and investigation.  Nonetheless, for the sake of reaching agreement with certain constituencies, the Secured Lenders are willing to bear the risk of extending the maturity date of their loans on reasonable terms for a year after the effective date to give the Debtors a full year

---

[9]     The Debtors suggest that the "financial ingredients of a viable Plan have already been demonstrated, and the subject of the current mediation is simply the development of consensus around the treatment of the specific creditor classes."  Motion at 8:19-20.  The Secured Lenders disagree that the Debtors have already demonstrated a financially viable plan and that the subject of the mediation was so limited.

Case: 11-41431    Doc# 705    Filed: 07/27/11    Entered: 07/27/11 23:42:33    Page 10 of 22

of operating results reflecting their business reorganization before the sale process occurs. To that end, the Secured Lenders are prepared to file a plan of reorganization (the "Lender Plan"), the principal terms and conditions of which are summarized in Exhibit "A" hereto.

The Secured Lenders believe that the Lender Plan is confirmable and would provide for more certain and expeditious recoveries to creditors than the Amended Plan. Those recoveries would at least equal, and would likely exceed, the amounts that creditors would actually receive under the Amended Plan. At the same time, the Lender Plan would permit the ESOP to realize the value, if any, to which it is entitled. The Lender Plan would give the Debtors time to try to refinance the Secured Lenders and unsecured creditors if they truly believe that option is more advantageous to the ESOP than an orderly sale process. The Agent has had preliminary discussions with the Committee regarding the Lender Plan. Those discussions are ongoing.

Allowing the Secured Lenders to file the Lender Plan would not deprive the Debtors of the right to propose its new plan or negotiate the Lender Plan. It will, however, provide the Court and other creditors in these cases with an alternative and permit the most significant economic stakeholders to have a real say in the outcome of the cases.

# IV.  ARGUMENT

The Bankruptcy Code presumptively limits the period in which a debtor has the exclusive right to propose a plan of reorganization to 120 days after the petition date. See 11 U.S.C. § 1121(a),  If a debtor files a plan within that 120-days period, it has up until 180 days after the petition date to obtain acceptances to that plan. See 11 U.S.C. § 1121(a), (c)(3). Congress enacted section 1121 "to place limits on the debtor's exclusive right to propose a plan." In re Gibson & Cushman Dredging Corp., 101 B.R. 405, 409 (E.D.N.Y. 1989). It recognized that giving unlimited exclusivity to a debtor "gives the debtor undue bargaining leverage." H.R. Rep. No. 95-595, at 231 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6191. Thus, "Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors." In re Timbers of Inwood Forest Assoc., Ltd., 808 F.2d 363, 372 (5th Cir. 1987), aff'd, 484 U.S. 365 (1988); see also, e.g., In re Pub. Serv. Co. of N.H., 88 B.R. 521, 533 (Bankr. D.N.H. 1988) (holding that section 1121 gave "the debtor the exclusive

1  right during a limited period of time to present the creditor body with a proposed plan of

2  reorganization. Once the exclusivity period ends, competing plans may be proposed.").

3        Given the legislative purpose of section 1121, extensions of exclusivity are "not favored."

4  <u>In re Southwest Oil Co. of Jourdanton, Inc.</u>, 84 B.R. 448, 450 (Bankr. W.D. Tex. 1987).   "[A]

5  request to either extend or reduce the period of exclusivity is a serious matter.  Such a motion

6  should be granted neither routinely nor cavalierly."   <u>In re All Seasons Industries, Inc.</u>, 121 B.R.

7  1002 at 1004 (Bankr. N.D. Ind. 1990) (denying debtor's request for extension of exclusive

8  periods); quoting <u>In re McLean Industries, Inc.</u>, 87 B.R. 830 at 834 (Bankr. S.D.N.Y. 1987).

9        A court can extend section 1121's exclusivity periods only "for cause."  <u>See</u> 11 U.S.C.

10  § 1121(d).  The burden of demonstrating "cause" rests with the party seeking the extension.  <u>See</u>

11  <u>In re Curry Corp.</u>, 148 B.R. 754 at 755 (Bankr. S.D.N.Y. 1992) ("a debtor has the burden of

12  proving that cause exists"); <u>All Seasons</u>, 121 B.R. at 1004 (same); <u>McLean Industries</u>, 87 B.R. at

13  834 (same).  This burden requires an "affirmative showing of cause, supported by evidence."  <u>In</u>

14  <u>re Parker Street Florist & Garden Center, Inc.</u>, 31 B.R. 206, 207 (Bankr. D. Mass. 1983).[10] "A

15  decision to extend . . . exclusivity for cause is within the discretion of the bankruptcy court, and

16  is fact-specific."  <u>In re Adelphia Commc'ns Corp.</u>, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006).

17        Given the unique facts of these cases, the Debtors cannot carry their statutory burden of

18  proving that cause exits for an extension of the Exclusive Period.

19  **A.**     **<u>The Debtors Cannot Show "Cause"</u>**

20        In determining whether "cause" exists to extend the exclusivity periods under Section

21  1121(d), courts generally consider the following factors: (1) the size and complexity of the case;

22  (2) the amount of time which has elapsed in the case; (3) the existence of good faith progress

23  toward reorganization; (4) whether the debtor is paying its bills as they come due; (5) whether

24  the debtor has demonstrated reasonable prospects for filing a viable plan; (6) the necessity of

25  sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate

26  information; (7) whether the debtor has made progress in negotiations with its creditors;

27

28    [10]   The Agent notes that the Debtors have not submitted any declarations or other evidence in support of the
      Motion.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2285336.5

8

OBJECTION TO DEBTORS' MOTION FOR
AN EXTENSION OF ECLUSIVE PERIODS

Case: 11-41431   Doc# 705   Filed: 07/27/11   Entered: 07/27/11 23:42:33   Page 12 of
22

(8) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (9) whether unresolved contingencies exist. See In re Dow Corning Corp., 208 B.R. 661, 664-65 (Bankr. E.D. Mich. 1997); In re Henry Mayo Newhall Mem'l Hosp., 282 BR 444, 452 (9th Cir. Bap 2002); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996).

While the Dow Corning factors do not prohibit consideration of other relevant factors, "they nevertheless cannot be ignored." In re Adelphia Communc's Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006). In making its decision, a court does not rely upon a "mere toting up of the factors." Dow Corning, 208 B.R. at 670. Rather, "the primary consideration should be whether or not [adjusting exclusivity] would facilitate moving the case forward." Id. Therefore, "affirmative answers to a number of the inquiries listed in Dow Corning and Express One [will] not necessarily favor extending exclusivity." Mayo, 282 B.R. at 452.

**1.  The Size And Complexity Of The Cases Do Not Merit An Extension Of Exclusivity**

The size and complexity of these cases do not support an extension of exclusivity beyond the statutorily presumptive period. The Debtors substantially completed their business reorganization and filed the Initial Plan more than three months ago. See Submission at 7:23; Initial Plan. They filed the Amended Plan nearly seven weeks ago. See Amended Plan. At the same time, they submitted their unsupported financial projections that they assert establish the feasibility of the Amended Plan. See Submission at pp. 13-16; Disclosure Statement at pp. 41-44. Thus, neither the size nor complexity of these cases prevented the Debtors from completing their business reorganization, preparing their financial projections and filing first the Initial Plan and then the Amended Plan within 120 days of the Petition Date. The challenge for the Debtors has not been the size or complexity of these cases, but rather their unyielding effort to force through a plan that had little to no creditor input and faced widespread creditor opposition. Any "complexity" that this has caused the Debtors is of their own making and does not support extending their Exclusive Period.

Moreover, while the Debtors might have 1,200 creditors (see Motion at 7:1-2), there have

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

Case: 11-41431   Doc# 705   Filed: 07/27/11   Entered: 07/27/11 23:42:33   Page 13 of 22

1   been only four creditor constituencies that have been at all active in these cases.[11]  One of these

2   constituencies, the landlords, have had only limited involvement in the cases since the first

3   couple of months.  The Debtors have attempted to limit significantly the involvement of the

4   second constituency, their franchisees.  As a practical matter, the Debtors have had to deal with

5   only the Secured Lenders and the Committee.  Thus far these two creditor constituencies have

6   taken similar positions with respect to consideration of a sale and the non-confirmability of the

7   Amended Plan. [12]  It is the Debtors who have been the odd man out.

8            The other facts offered by the Debtors to support the size and complexity of their

9   business and cases are irrelevant to the issue of exclusivity.  The numbers of franchisees,

10  franchised stores and company-owned stores that the Debtors have and their "relationships with

11  numerous vendors, suppliers, contractors, and service providers" (see Motion at 7:5-8) have not

12  caused any material delay in their business reorganization, the preparation of their projections or

13  the formulation of the Amended Plan.  The Debtors do not suggest that there are any unresolved

14  matters or other complexities with respect to their business operations or third-party relationships

15  that must be resolved before they can formulate or confirm a plan of reorganization.

16           Moreover, the Debtors have not suggested that any specific claim (let alone claims as a

17  whole) must be reviewed and analyzed before a plan can be formulated or confirmed.  Id. at 7:9-

18  10.  In fact, the opposite is true.  The Debtors have already filed the Amended Plan, and its

19  Disclosure Statement does not state that confirmation of the Amended Plan is contingent on the

20  resolution of any particular claim or class of claims.

21           Finally, the Debtors' assertion that the "value of the company . . . is clearly sufficiently

22  large to support" an extension of exclusivity is supported by neither fact nor law.  Legislative

---

11   Within the past month, the Court has approved the appointment of First Bankers Trust Services, Inc. ("FBTS") as the independent trustee for the ESOP.  Since its appointment, FBTS has become active in these cases. However, both the Initial Plan and the Amended Plan predate FBTS's appointment.

12   Thus, for example, while objecting to the Secured Lenders' motion seeking the appointment of an examiner to investigate a sale, the Committee stressed that "a sales process is important to assess the value of the Debtors' business and the viability of a sale as an exit that could result in substantial (and certain) recovery for creditors in a shorter term than proposed under the Debtors' plan."  *The Official Committee of Unsecured Creditors' Opposition to Motion of General Electric Capital Corporation, as Agent, for an Order Directing Appointment of Examiner Pursuant to 11 U.S.C. §§ 1104(c) to Investigate a Sale of the Debtors' Business* [Docket No. 639], at 6:18-7:1.

1  history indicates that Congress thought the exclusivity periods provided in Section 1121 would

2  be adequate in most cases.  <u>Southwest Oil</u>, 84 B.R. at 452.  There is nothing about these cases or

3  the Debtors that justifies a variance.[13]

4          **2.**        **The Amount Of Time Elapsed Does Not Support An Extension**

5         As noted above, the Debtors completed their business reorganization, prepared their

6  projections and filed the Initial Plan well within their exclusive period to file a plan under section

7  1121(b) of the Bankruptcy Code.  After filing the Initial Plan, they still had 45 days to negotiate

8  with creditors before the end of that exclusive period.  Thus, the Debtors have had an ample

9  opportunity to negotiate, formulate and file a viable plan of reorganization.  Their failure to do

10  that does not constitute cause for extending the Exclusive Period.

11         The fact that the Motion represents the Debtors' first request to extend the Exclusive

12  Period (<u>see</u> Motion at 7:13-14) does not constitute cause.  If it did, section 1121's presumptive

13  exclusivity periods would be a nullity.  Had Congress intended that the exclusivity periods be

14  extended merely upon request, it would have drafted the statute accordingly.  Similarly, the

15  Debtors' assertion that their requested extension is "less than half of the maximum limit on

16  exclusivity provided by the Bankruptcy Code" (<u>id.</u> at 7:15-17) is misplaced and unavailing.  The

17  presumptive period for soliciting plan acceptances is 180 days.  The fact that Congress put an

18  absolute deadline on how long that presumptive period might be extended for cause does not

19  alter the presumption.  The possibility of a longer period, upon a showing of cause, does not

20  constitute cause itself for an extension.

21          **3.**        **The Debtors Have Failed To Make Good Faith Progress And Lack**

22                    **Reasonable Prospects For Filing A Viable Plan**

23         The third, fifth, sixth and seventh factors (existence of good faith progress toward

24  reorganization, reasonable prospects for filing a viable plan, the necessity of sufficient time to

25  negotiate a plan and progress in negotiations with creditors, respectively) strongly weigh against

26

27  [13]  In any event, "size and complexity alone cannot suffice as 'cause' for a continuation of a debtor's plan exclusivity right."  <u>In re Pub. Serv. Co. of N.H.</u>, 88 B.R. at 537; <u>see</u> <u>also</u> <u>In re Express One Int'l, Inc.</u>, 194 B.R.

28  98, 100-01 (Bankr. E.D. Tex. 1996); <u>In re Washington-St. Tammany Elec. Coop., Inc.</u>, 97 B.R. 852, 854-55 (E.D. La. 1989).

Case: 11-41431    Doc# 705    Filed: 07/27/11    Entered: 07/27/11 23:42:33    Page 15 of 22

extending exclusivity. Instead, they favor affording the Secured Lenders the opportunity to move forward with the Lender Plan.

The following table sets forth the Debtors' assertions concerning these factors (see Motion at 7:19-8:6; 8:12-9:17), as well as the Agent's responses:

| Debtors' Assertion | Agent's Response |
|---|---|
| The Debtors have completed their business reorganization.[14] | The Debtors completed their business reorganization during the first eight weeks of the cases. See Submission at 7:2-3. After completing their business reorganization, the Debtors still had approximately two months of exclusivity remaining. During that two-month period, the Debtors filed two plans. Thus, the problem for the Debtors was not one of time but rather their decision to formulate plans without any creditor involvement and then try to force them through in the face of widespread creditor opposition. |
| The Amended Plan is viable and proposes to pay creditors in full. | The Amended Plan is not viable. It is inherently flawed. It puts creditor recoveries at risk in order to try to create value for the ESOP in the coming years. It also provides management with significant bonuses and other benefits to the detriment of the Debtors' economic stakeholders. See, e.g., Committee Disclosure Statement Objection; Agent Disclosure Statement Objection. |
| The Debtors have commenced a judicially-supervised mediation with the Committee and the Secured Lenders. | The Court invited the parties to mediate their disputes because of its concerns about the status of the cases. The idea of a mediation was first raised by Committee counsel as an alternative to the examiner being sought by the Secured Lenders. In making the suggestion, Committee counsel noted that she believed that the Amended Plan was unconfirmable and the Debtors had not been negotiating with creditors. The mediation is not evidence of the Debtors' progress towards a consensual plan, but rather the opposite. |
| The Debtors have lived within their cash budget and timely filed their monthly operating reports. | Compliance with the basic obligations required of debtors such as the filing of monthly operating reports does not constitute cause for extending the Debtors' exclusivity. See, e.g., Southwest Oil, 84 B.R. 451 (denying an extension of exclusivity even where debtor's operating reports reflected profits, payment of current liabilities and payments to secured creditors). |

---

[14]   In the Motion, the Debtors misleadingly suggest that their business reorganization took four months to complete. See Motion at 7:20-22. In fact, the Debtors' business reorganization was substantially completed within the first eight weeks of these cases. See Submission at 7:2-3.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2285336.5

12

OBJECTION TO DEBTORS' MOTION FOR
AN EXTENSION OF EXCLUSIVE PERIODS

| | |
|---|---|
| The Debtors have sufficient assets and cash flow to pay all creditors in full over time and still preserve value for the ESOP. | This assertion is pure speculation. As the Court has noted, it does not have any credible valuation evidence to determine whether equity is in the money. Moreover, the Debtors' ability to pay creditors under the Amended Plan or any new plan is the subject of significant dispute. |
| The Debtors have been actively involved in negotiations with the Secured Lenders and the Committee since the inception of these cases. | This statement is highly misleading and disingenuous. While the parties have negotiated a number of matters in these cases, including the Debtors' use of cash collateral, the Debtors did not even attempt to engage the Secured Lenders or the Committee in any negotiations concerning an exit in these cases before filing the Initial Plan. Rather, they filed the Initial Plan without even the courtesy of a telephone call. After filing the Initial Plan, the Debtors refused to discuss any restructuring alternatives that varied the basic framework set forth in the Initial Plan. |
| The Debtors provided significant discovery to the Committee in response to a Rule 2004 request. | Again, the Debtors' compliance with their obligations as debtors does not constitute cause for extending their exclusivity. |
| There are a number of creditors, and the Debtors' business and cases are large and complex. | Please see discussion at § III.A.1 above. These facts do not support an extension of exclusivity. |

Individually and cumulatively the Debtors' assertions do not support an extension of exclusivity. Rather, they demonstrate that the Debtors squandered their Exclusive Period.

The Secured Lenders have lost faith in management. They strongly disagree with management's projections and valuation views. They do not believe that management has a credible business plan that supports the projected performance, and that over time both the Debtors' performance and value will continue to deteriorate. The Secured Lenders believe that the Amended Plan and the new plan that the Debtors intend to propose subject their recovery to significant risk in order to obtain a recovery for the ESOP. The Secured Lenders' loss of faith has become more acute as a result of management's failure to negotiate with creditors before filing the Initial Plan, the Debtors' refusal to consider other plan alternatives, the Debtors' continuing campaign to disparage the Secured Lenders and the proposed treatment of the Secured Lenders under the Amended Plan as well as the new plan that the Debtors apparently intend to propose (including paying junior classes and millions of dollars in management bonuses and claims before payment of the Secured Lenders' claims).

LATHAM&WATKINS LLP LA\2285336.5
ATTORNEYS AT LAW
LOS ANGELES
13

OBJECTION TO DEBTORS' MOTION FOR
AN EXTENSION OF ECLUSIVE PERIODS

Case: 11-41431    Doc# 705    Filed: 07/27/11    Entered: 07/27/11 23:42:33    Page 17 of 22

The Secured Lenders' loss of faith in management supports not extending exclusivity. As one court stated:

> One of the reasons that the debtor and its major secured creditors have not been able to find common ground upon which to build a plan of reorganization is that these creditors have lost faith in the capability and perhaps the integrity of debtors' management. . . . While the court makes no finding as to whether or not this loss of faith is justified . . . for the purpose of the present motion [to extend exclusivity], it is only necessary to realize that a loss of confidence exists. This is a factor the court should and must consider in its determination.

All Seasons, 121 B.R. at 1006.

In addition, the Debtors' delinquency in pursuing negotiations in good faith and the "breakdown of negotiations between" the Debtors and the Secured Lenders are circumstances favoring the termination of exclusivity. See, e.g., In re R.G. Pharmacy, Inc., 374 B.R. 484, 488 (Bankr. D. Conn. 2007) (denying extension of exclusivity where "breakdown of negotiations between the debtor and the objecting creditors" made "extension unlikely to significantly improve progress toward an effective reorganization"); In re Tripodi, 2005 Bankr. LEXIS 1981, at *6-*7 (Bankr. D. Conn. Feb. 18, 2005) (denying extension of exclusivity where there had "been no progress negotiating with creditors" and a "consensual plan [was] nowhere on the horizon" because of "positions and continuing acrimony between the Debtors and their principal creditors").

### 4. The Debtors Are Not Paying Their Debts As They Come Due

The failure of a debtor to keep current on its post-petition liabilities is a factor strongly weighing against any extension of exclusivity. See Southwest Oil, 84 B.R. at 453 (denying exclusivity extension because, among other reasons, debtor's cash position is deteriorating and noting that although it would be possible for the debtors to reorganize, the "debtors are not servicing any other secured or unsecured debt except as required under the adequate protection order."); In re Sharon Steel Corp., 78 B.R. 762, 766 (Bankr. W.D. Pa. 1987) (denying exclusivity extension because, among other reasons, debtor made no progress toward reducing its interest burden). As described in section II.A. above, the Debtors are not current on their interest payments to the Secured Lenders and have not reimbursed them for their costs as required under

the credit agreement. The aggregate amount of these accruing obligation will be more than $5 million by October 1, 2011. Equity strongly disfavors keeping the Secured Lenders as hostages to a process when the Debtors are not even paying their current debt service and contractually due expenses.

**5.      The Debtors Are Seeking To Extend Exclusivity In Order To Pressure The Secured Lenders**

The Debtors are using exclusivity to force the Secured Creditors into agreeing to a plan that puts their recoveries at risk so that the Debtors can try to secure a recovery for equity years down the road. This factor weighs heavily in favor of denying the Motion. Extending exclusivity would unduly provide the Debtors with the upper hand in their dealings with the Secured Lenders. Courts have consistently held that extensions of exclusivity are not permissible if their purpose is to hold creditors hostage to the chapter 11 process. See, e.g., In re Lake in the Woods, 10 B.R. 338, 345-46 (E.D. Mich. 1981) (reversing extension of exclusivity that allowed debtor to pressure creditor into acceding to demands while creditors' "hands are tied"). Furthermore, extending exclusivity to confer undue leverage upon a prepetition equity holder is inappropriate. See In re Adelphia Communc's Corp., 336 B.R. 610, 677 (Bankr. S.D.N.Y. 2006) ("This Court, like other bankruptcy courts, has been quite willing to terminate exclusivity where a debtor . . . has inappropriately sought to favor equity.").

The Amended Plan was a vehicle for trying to leverage equity's recovery at the risk and expense of the Debtors' other constituents. The new plan the Debtors apparently intend to file is of the same ilk. Moreover, based on the Debtors' projections, the Debtors' management will receive millions of dollars in bankruptcy bonuses and the full payment of their prepetition deferred compensation a full year before the Secured Lenders are fully paid. See Debtors' Statement at 3:12-27; see also Disclosure Statement at 32:12-16, 32:26-33:10, 14:10-15:5; Round Table Pizza, Inc. Statement of Financial Affairs [Docket No. 186] at 11. The Debtors seek extended exclusivity so they can force the Secured Lenders to accept treatment that they find unsatisfactory. This is precisely the scenario in which such extensions should be denied. See Southwest Oil, 84 B.R. at 453 ("A debtor may not employ an extension as a tactical device

LATHAM&WATKINS LLP   LA\2285336.5
ATTORNEYS AT LAW
LOS ANGELES

15

OBJECTION TO DEBTORS' MOTION FOR
AN EXTENSION OF ECLUSIVE PERIODS

Case: 11-41431    Doc# 705    Filed: 07/27/11    Entered: 07/27/11 23:42:33    Page 19 of 22

1 to put pressure on parties in interest to yield to a plan they consider unsatisfactory.").

2 **6.     No Unresolved Contingencies Exist**

3        The Debtors concede that they are aware of no unresolved contingencies. Accordingly,

4 this factor weighs against granting the Motion.

5 **7.     The Totality Of The Circumstances**

6        For the reasons set forth above, the Debtors' request for an extension of exclusivity

7 should be denied. Granting such an extension will not facilitate progress in these Chapter 11

8 Cases. See Dow Corning, 208 B.R. at 670 ("When the Court is determining whether to terminate

9 a debtor's exclusivity, the primary consideration should be whether or not doing so would

10 facilitate moving the case forward."); see also In re Mayo, 282 B.R. at 453 ("We also agree with

11 the Dow Corning court that a transcendent consideration is whether adjustment of exclusivity

12 will facilitate moving the case forward toward a fair and equitable resolution."). There is

13 absolutely nothing to indicate that the Debtors have changed their spots; the next iteration of

14 their plan (as previewed in the Debtors' Statement) will be as objectionable as the one it follows.

15        These cases are at a standstill. Extending the Debtors' exclusivity will not break this

16 standstill. Rather, it will allow the Debtors again to try to push through a cramdown plan

17 without any consideration of alternatives.[15] "One of the most important reasons for extending

18 the debtor's period of exclusivity is to give the Chapter 11 process of negotiation and

19 compromise an opportunity to be fulfilled, so that a consensual plan can be proposed and

20 confirmed without opposition." All Seasons, 121 B.R. at 1006. Where, as here, "the debtor and

21 its primary opponents have a good faith difference of opinion about the future prospects of

22 debtor's business[,] . . . it would seem that such an extension would have the result of continuing

23 to hold creditors hostage to the Chapter 11 process and pressuring them into accepting a plan

24 they believe to be unsatisfactory." Id.

25

26

27 _____

[15] One court has stated that the 180-day exclusivity period "exists to allow a Debtor to obtain acceptances for a
28 consensual plan, not to confirm a cramdown plan." In re Davis, 262 B.R. 791, 794 (fn. 5) (Bankr. D. Ariz.
2001).

Case: 11-41431    Doc# 705    Filed: 07/27/11    Entered: 07/27/11 23:42:33    Page 20 of
22

1    Given the Debtors' articulated bases for "cause," and considering the totality of the

2    circumstances of these cases, the Debtors' request for an extension of exclusivity should be

3    denied.

4    **B.**     **The Lender Plan Will Facilitate A Fair and Expeditious Conclusion To The Cases**

5    Section 1121 "represents a congressional acknowledgement that creditors, whose money

6    is invested in the enterprise no less than the debtor's, have a right to a say in the future of that

7    enterprise." Timbers of Inwood Forest, 808 F.2d at 372. The Secured Lenders are prepared to

8    file an alternative plan that presents constituents with a competing vision for the future. The

9    Debtors would still be free to pursue their plan as well, providing stakeholders a true choice in

10   determining the appropriate outcome of these cases. "[T]he ability of a creditor to compare the

11   debtor's proposals against other possibilities is a powerful tool by which to judge the

12   reasonableness of the proposals. A broad exclusivity provision, holding that only the debtor's

13   plan may be 'on the table,' takes this tool from creditors." Century Glove, Inc. v. First American

14   Bank, 860 F.2d 94, 102 (3rd Cir. 1988); see also All Seasons, 121 B.R. at 1005 ("[d]enying [an

15   exclusivity extension] motion only affords creditors their right to file the plan; there is no

16   negative effect upon the debtor's co-existing right to file its plan."); In re Tony Downs Food Co.,

17   34 B.R 405, 407-08 (D. Minn. 1983) ) (citing legislative history and denying extension of

18   exclusivity because debtor may still file its plan after exclusive period expires). By denying a

19   request to extend exclusivity, "the Court does not prejudice the debtors' coexistent right, nor

20   dilute the debtors' duty to a file a plan. The other parties are simply allowed to protect their

21   interests by coming forward with alternative plans." Southwest Oil, 84 B.R. at 454; see also In

22   re Grossinger's Assoc's., 116 B.R. 34, 36 (Bankr. S.D.N.Y. 1990) ) (terminating exclusive

23   period and finding that "loss of plan exclusivity does not mean that the debtor is foreclosed from

24   promulgating a meaningful plan of reorganization, only that the right to propose a chapter 11

25   plan will not be exclusively with the debtor").

26   Courts have found that increased competition by other parties frequently helps, rather

27   than hurts, negotiations toward a consensual plan. See, e.g., In re Public Service Co. of New

28   Hampshire, 99 B.R. 155, 176 (Bankr. D.N.H. 1989) (denying extension of exclusivity because,

Case: 11-41431   Doc# 705   Filed: 07/27/11   Entered: 07/27/11 23:42:33   Page 21 of
22

1    among other reasons, termination of the exclusive period created a level playing field and

2    fostered the negotiation of a consensual plan of reorganization).  Thus, terminating exclusivity

3    can benefit both the Debtors and their creditors.

4                                        **V.    CONCLUSION**

5           For these reasons, the Secured Lenders respectfully request that the Exclusive Period be

6    permitted to expire so that they and other parties may file competing plans.  Termination of

7    exclusivity is, at this point, the surest way to ensure a level playing field and expedite a

8    successful conclusion to these cases.

9    Dated:  July 27, 2011                    Respectfully Submitted,

10                                              */s/ Gregory O. Lunt*
                                             Gregory O. Lunt (CA Bar No. 173297)
11                                            LATHAM & WATKINS LLP
                                             355 South Grand Avenue
12                                            Los Angeles, California  90071-1560
                                             Telephone: (213) 485-1234
13                                            Facsimile: (213) 891-8763
                                             gregory.lunt@lw.com
14
                                             BINGHAM McCUTCHEN LLP
15                                            William Bates (CA Bar No. 063317)
                                             1900 University Avenue
16                                            East Palo Alto, CA 94303-2223
                                             Telephone: (650) 849.4400
17                                            Facsimile: (650) 849.4800
                                             bill.bates@bingham.com
18
                                             *Attorneys for General Electric Capital Corporation,*
19                                            *as Agent*

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

LA\2285336.5

18

OBJECTION TO DEBTORS' MOTION FOR
AN EXTENSION OF ECLUSIVE PERIODS

Case: 11-41431    Doc# 705    Filed: 07/27/11    Entered: 07/27/11 23:42:33    Page 22 of
22